## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 11-22026-Civ-Cooke/Turnoff

DR. BERND WOLLSCHLAEGER, et al.

      Plaintiffs,

      v.

RICK SCOTT, in his official capacity as
Governor of the State of Florida, et al.

      Defendants,

and

NATIONAL RIFLE ASSOCIATION,

      Proposed Intervenor.

## PROPOSED INTERVENOR NATIONAL RIFLE ASSOCIATION'S MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... ii

STATEMENT .................................................................................................... 1

ARGUMENT ..................................................................................................... 2

   I.    THE NRA IS ENTITLED TO INTERVENE AS OF RIGHT ....................................... 2

       A.  The NRA's Motion is Timely ................................................................. 2

       B.  The NRA Has a Direct, Substantial and Legally Protectable
           Interest in this Litigation .................................................................. 4

       C.  The Disposition of this Case May Impair the NRA's Ability
           to Protect Its Interest ........................................................................ 6

       D.  The NRA's Interests Are Not Adequately Represented by
           the Existing Parties .......................................................................... 7

   II.   THE NRA MEETS THE REQUIREMENTS FOR PERMISSIVE INTERVENTION ..................... 10

CONCLUSION .................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) ...................................................2, 3, 4, 5, 6

*Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999)........................................................7, 8, 9

*Diamond v. Charles*, 476 U.S. 54 (1986) ...............................................................................6

*Didrickson v. United States Dep't of Interior*, 982 F.2d 1332 (9th Cir. 1992)..............................6

*Donaldson v. United States*, 400 U.S. 517 (1971) .......................................................................4

*Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
  983 F.2d 211 (11th Cir. 1993) ..........................................................................................2

*Georgia v. United States Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002) .............4, 10

*Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986)..................................................................10

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) .....................4, 5

*In re Lease Oil Antitrust Litig.*, 570 F.3d 244 (5th Cir. 2009).........................................................2

*Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996).......................................................................9

*Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471 (11th Cir. 1993), *overruled
  on other grounds by Dillard v. Chilton County Commission*, 495 F.3d 1324
  (11th Cir. 2007) ................................................................................................................6

*New York Public Interest Research Group, Inc. v. Regents of University of State of N.Y.*,
  516 F.2d 350 (2d Cir. 1975)...........................................................................................4, 5

*Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*,
  558 F.2d 861 (8th Cir. 1977) ..............................................................................................5

*Schulz v. Williams*, 44 F.3d 48 (2d Cir. 1994) .............................................................................6

*Sierra Club v. Glickman*, 82 F.3d 106 (5th Cir. 1996) ................................................................4

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .............................2

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ........................................................3

*Taft v. Pontarelli*, 100 F.R.D. 19 (D.R.I. 1983)..........................................................................5

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ............................................................7

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080 (8th Cir. 1999) ...............................2

*Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) ...............................................9

*Utahns for Better Transp. v. United States Department of Transportation*,
    295 F.3d 1111 (10th Cir. 2002) .................................................................................................4

*WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992 (10th Cir. 2009) ......................9

*Worlds v. Department of Health & Rehabilitative Services, State of Florida*,
    929 F.2d 591 (11th Cir. 1991) ..................................................................................................4

**Statutes and Regulations**

FED. R. CIV. P. 24 ..................................................................................................................2, 10

FLA. STAT. § 20.42 .....................................................................................................................8, 9

FLA. STAT. § 20.43 .....................................................................................................................8, 9

FLA. STAT. § 790.338 ..............................................................................................................1, 5, 6

**Other**

6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][a]
    (3d. ed. 2004) ............................................................................................................................2

7C C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE & PROCEDURE § 1908
    (2d ed. 1986) .............................................................................................................................5

Pursuant to Federal Rule of Civil Procedure 24, the National Rifle Association (NRA) moves this Court for an order allowing it to intervene in this case. A Proposed Order is attached as Exhibit A.

## STATEMENT

The NRA is America's foremost and oldest defender of Second Amendment rights, and it was also a foremost supporter of the Florida bill entitled "An act relating to the  privacy of firearms owners" at issue in this litigation. *See* Declaration of Marion P. Hammer (Hammer Decl.) ¶ 5, Exh. B. A copy of that bill, hereinafter referred to as the Firearm Owners' Privacy Law, is reproduced at DE 20-1. On June 2, 2011, the Florida Governor signed that bill into law. The Firearm Owners' Privacy Law benefits NRA members by, among other things, establishing that patients may choose not to answer intrusive questions about gun ownership, discouraging health care practitioners and facilities from asking such questions in the first place, and protecting patients from discrimination simply because they choose to exercise their constitutional right to keep and bear arms. *See* FLA. STAT. §§ 790.338(2) & (4)-(5).

Plaintiffs in this action, individual doctors and professional organizations, filed their initial complaint on June 6, 2011. *See* DE 1. On June 24, they filed an amended complaint, naming as defendants, in their official capacities, Florida's Surgeon General and Secretary of Health Care Administration and members of the State's Board of Medicine (collectively, "State Defendants"). *See* DE 15. Plaintiffs claim that the Firearm Owners' Privacy Law violates the First and Fourteenth Amendments to the United States Constitution. They seek a declaration to that effect and preliminary and permanent injunctive relief prohibiting State Defendants from enforcing the law.

1

The NRA seeks to intervene to protect its members' interests in the Firearm Owners' Privacy Law against this spurious legal attack. For the reasons explained below, the NRA is entitled to intervene as of right under Rule 24(a) and, in the alternative, meets the requirements for permissive intervention under Rule 24(b).

## ARGUMENT

### I. THE NRA IS ENTITLED TO INTERVENE AS OF RIGHT

Under Federal Rule of Civil Procedure 24(a)(2), a district court "must allow [a party] to intervene" if "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). These requirements are construed liberally, and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors." *Federal Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993); *see also* 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][a] (3d. ed. 2004); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009); *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999). Because the NRA meets these requirements, it is entitled to intervene.

### A. The NRA's Motion is Timely

Four factors guide this Court's analysis of the timeliness of the NRA's intervention motion: (1) "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to

2

intervene"; (2) "[t]he extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case"; (3) "[t]he extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied"; and (4) "[t]he existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

Consideration of these factors demonstrate that the NRA has sought to intervene in a timely fashion. As an initial matter, because this suit was only filed on June 6, 2011, just three weeks have passed since the earliest date the NRA possibly could have known about its interest in this litigation. By seeking to intervene now, not only has the NRA acted in a timely manner, but it has "discharged [its] duty to act quickly." *Id.* at 267 ("By filing their petition [to intervene] less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly."). Furthermore, given the embryonic stage of this lawsuit we cannot fathom any prejudice the existing parties will face by failure of the NRA to act even faster than it did. *See Chiles*, 865 F.2d at 1213 (holding that "[n]one of the parties already in the lawsuit could have been prejudiced" by timing of intervention motion "filed only seven months after [the plaintiff] filed his original complaint, three months after the [defendant] filed its motion to dismiss, and before any discovery had begun"). Denying the NRA's motion to intervene, on the other hand, would deny the NRA the ability to represent the substantial interests its members have at stake in this litigation.

We are not aware of any "unusual circumstances" that would counsel against a finding of timeliness here. Moreover, undersigned counsel for the NRA contacted counsel for plaintiffs on

June 17 and informed him that NRA intended to intervene.  And the NRA has moved to

intervene within one business day of the filing of the amended complaint.

**B.     The NRA Has a Direct, Substantial and Legally Protectable Interest in this Litigation**

"[A] party is entitled to intervention as a matter of right if the party's interest in the

subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. United*

*States Army Corps of Engineers*, 302 F.3d 1242, 1249 (11th Cir. 2002); *see also Donaldson v.*

*United States*, 400 U.S. 517, 531 (1971) (Rule 24(a)(2) requires a "significantly protectable

interest.").  Courts' "inquiry on this issue is a flexible one," *Chiles*, 865 F.2d at 1213-14

(quotation marks omitted), with the interest test serving "primarily [as] a practical guide to

disposing of lawsuits by involving as many apparently concerned persons as is compatible with

efficiency and due process," *Worlds v. Department of Health & Rehabilitative Services, State of*

*Florida*, 929 F.2d 591, 594 (11th Cir. 1991).

Because the subject matter of this case directly and substantially implicates the legally

protectable interests of NRA members, the NRA has an interest sufficient to entitle it to

intervene in this case.  As an initial matter, it is well-established that membership organizations

such as the NRA may represent their members' interests in federal litigation, *see Hunt v.*

*Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), and federal courts

have thus frequently allowed membership organizations to intervene to defend their members'

interests, *see, e.g., Utahns for Better Transp. v. United States Department of Transportation*, 295

F.3d 1111, 1116 (10th Cir. 2002); *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996);

*New York Public Interest Research Group, Inc. v. Regents of University of State of N.Y.*, 516

F.2d 350, 352 (2d Cir. 1975).

4

The NRA is particularly well-suited to represent its members' interests in this case. Not only is the NRA America's foremost and oldest defender of Second Amendment rights, but the NRA was also a foremost supporter of the Firearm Owners' Privacy Law. *See* Hammer Decl. ¶ 5; *cf. Hunt*, 432 U.S. at 343 (associational standing requires that "the interests [an organization] seeks to protect are germane to the organization's purpose"). And the NRA's defense of the Firearm Owners' Privacy Law against plaintiffs' challenge for declaratory and injunctive relief will not require participation of individual NRA members in a way that would preclude the NRA from representing its members' interests. *Cf. id.*

Furthermore, the NRA has members with a direct, substantial, and legally protectable interest in the subject matter of this litigation. The Firearm Owners' Privacy Law protects NRA members from intrusive, irrelevant questioning by health care practitioners and from discrimination on account of their exercise of Second Amendment rights. NRA members have a direct and substantial interest in defending these legal protections from constitutional attack.[1]

Indeed, NRA members in Florida have experienced intrusive questioning about gun ownership and possession when visiting the doctor's office. *See* Hammer Decl. ¶ 6. The Firearm Owners' Privacy Law establishes that patients do not have to answer such questions, and

---

[1] *See, e.g., New York Public Interest Research Group*, 516 F.2d at 352 (holding that pharmacists who benefited from a regulation had interest sufficient to support intervention as of right to defend it); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 869-70 (8th Cir. 1977) (holding that organization and individuals interested in ensuring that abortion clinics did not negatively impact property values had an interest sufficient to support intervention as of right to defend a local ordinance imposing a moratorium on building abortion clinics); *Taft v. Pontarelli*, 100 F.R.D. 19, 20-21 (D.R.I. 1983) (holding that parents of children who attended religiously affiliated schools and allegedly benefited from federal education program had an interest sufficient to support intervention as of right to defend that program from First Amendment attack); *see also Chiles*, 865 F.2d at 1214 (" 'in cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention' ") (quoting 7C C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE & PROCEDURE § 1908, at 285 (2d ed. 1986)).

that health care practitioners and facilities cannot discriminate against them for exercising their constitutional right to own and possess firearms. FLA. STAT. §§ 790.338(4)-(5). It also discourages doctors from asking such intrusive questions in the first place. *Id.* § 790.338(2). Were the Law invalidated, NRA members would lose the benefit of these legal protections. Because NRA members are direct beneficiaries of the Firearm Owners' Privacy Law (and thus would be directly harmed if it were invalidated), they have "a direct stake in the outcome" of this case sufficient to establish their standing to defend it. *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quotation marks omitted); *see also id.* at 65 n.17 (a state legislature "has the power to create new interests, the invasion of which may confer standing").[2] While it is not necessary that the NRA establish Article III standing in order to intervene, *see Chiles*, 865 F.2d at 1213 ("a party seeking to intervene need not demonstrate that he has standing … as long as there exists a justiciable case and controversy between the parties already in the lawsuit"), having done so it follows *a fortiori* that the NRA has an interest sufficient to support intervention, *see Meek v. Metropolitan Dade County, Florida*, 985 F.2d 1471, 1480 (11th Cir. 1993), *overruled on other grounds by Dillard v. Chilton County Commission*, 495 F.3d 1324 (11th Cir. 2007) ("a movant who shows standing is deemed to have a sufficiently substantial interest to intervene").

**C.     The Disposition of this Case May Impair the NRA's Ability to Protect Its Interest**

"The nature of the [NRA's] interest and the effect that the disposition of the lawsuit will have on their ability to protect that interest are closely related issues." *Chiles*, 865 F.2d at 1214. Indeed, having established that the NRA has a direct, substantial, and legally protectable interest

---

[2] *See, e.g., Schulz v. Williams*, 44 F.3d 48, 52-53 (2d Cir. 1994) (holding that representative of political party that benefited from State election law had standing to defend the law); *Didrickson v. United States Dept. of Interior*, 982 F.2d 1332, 1339-40 (9th Cir. 1992) (holding that environmental organizations whose members allegedly benefited from federal regulation protecting sea otters had standing to defend the regulation).

in this litigation, there can be little doubt that the "disposition of the action, as a practical matter, may impede or impair [its] ability to protect that interest." *Id.* at 1213. Should the plaintiffs prevail in obtaining an injunction prohibiting enforcement of the Firearm Owners' Privacy Law, the NRA's members will lose the benefit of that law's protection and once again be placed in a position in which health care providers may act with impunity in interrogating them about their firearm ownership and discriminating against them on account of their exercise of Second Amendment rights.

### D.   The NRA's Interests Are Not Adequately Represented by the Existing Parties

Courts in the Eleventh Circuit apply a "weak" presumption of adequate representation "when an existing party seeks the same objectives as the would-be intervener[]." *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999). This presumption "merely imposes upon the proposed intervener[] the burden of coming forward with some evidence to the contrary." *Id.* Once this minimal burden is satisfied, "the court returns to the general rule that adequate representation exists" if, among other things, "the representative does not have or represent an interest adverse" to the proposed intervenor. *Id.* Showing inadequate representation, however, "is not difficult": "The 'requirement of the Rule is satisfied if the applicant shows that representation of his interest "may be" inadequate, and the burden of making that showing should be treated as minimal.' " *Id.* (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Even if the State Defendants share the NRA's "ultimate objective" of defending the Firearm Owners' Privacy Law from constitutional attack, it is nevertheless the case that the State Defendants represent interests other than and potentially adverse to the NRA's interest in protecting the rights of its members. Public officials charged with regulating the provision of

7

health care in the State of Florida must take into account the broad public interest, including the interests of all patients and physicians, not just the private interests of its members the NRA seeks to represent.  Defendant Farmer, for example, is sued in his official capacity as Florida's Surgeon General.  By operation of law, the State Surgeon General not only is required to "focus on … building collaborative partnerships with … health care practitioners," but is also required to be a licensed physician. FLA. STAT. § 20.43(2)(a).[3]  Defendant Dudek, for another example, is sued in her official capacity as Florida's Secretary of Health Care Administration.  Because the department she heads is "the chief health policy and planning entity for the state," FLA. STAT. § 20.42(3), the interests she represents in discharging her duties plainly extend beyond the interests the NRA seeks to represent here.  The State Defendants' defense in this case surely (and properly) will be shaped and influenced by the broad and potentially adverse interests they are charged with representing.  Indeed, even apart from any connection they have to the health care system, as public officials the State Defendants must be attuned to public opinion (and public finances) to a degree the NRA need not.  This too could play a role in the State Defendants' defense, particularly in light of the controversial nature of the subject matter of this case.

The Eleventh Circuit has credited similar concerns in finding that proposed intervenors satisfied the requirement to show inadequate representation by public officials.  In *Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999), white voters sued Putnam County, Georgia and its commissioners to challenge the constitutionality of the county's voting plan under the Equal Protection Clause of the Fourteenth Amendment.  The district court denied six black voters' motion to intervene to defend that plan because it held that their interests were adequately

---

[3] *Cf.* Plaintiffs' PI Motion at 1 n.1 (DE 16 at 2 n.1) ("Many of the defendants are physicians who, in their individual capacities, are members of the plaintiff organizations and may personally agree with the Plaintiffs' positions in this case.").

8

represented by the county commissioners. *Id.* at 460. The black voters appealed, and the

Eleventh Circuit reversed, holding that there was "a sufficient divergence of interest between the

six black voters and the county commissioners to … entitle the six black voters to intervene." *Id.*

at 461. In support of this holding, the Court explained that the county commissioners claimed to

"represent the interests of all Putnam County citizens," including its black and white voters, and

that it could not "adequately represent the proposed defendants while simultaneously

representing the plaintiffs' interests." *Id.* The commissioners' "duty to consider the expense of

defending the [voting] plan out of county coffers" added "another component" to the distinction

between the interests of the commissioners and the proposed intervenors. *Id.* at 461-62

Furthermore, as elected officials, the county commissioners had "an interest in 'remaining

politically popular and effective leaders' " that could make them inadequate representatives of

the proposed intervenors' interests even though they "assert[ed] that they [would] defend the …

voting plan" at issue in the case. *Id.* at 462.[4] Other courts have likewise found public officials

charged with representing broad and potentially competing interests inadequate representatives

of the narrower interests sought to be protected by a proposed intervenor.[5]

---

[4] This reasoning also applies to appointed officials, particularly those like Florida's
Surgeon General and Secretary of Health Care Administration that serve at the pleasure of a
democratically elected Governor. *See* FLA. STAT. §§ 20.42(2); 20.43(2)(a).

[5] *See, e.g., WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 996-97
(10th Cir. 2009) (holding that a proposed intervenor's "showing [of inadequate representation] is
easily made when the party upon which the intervenor must rely is the government," because
"[i]n litigating on behalf of the general public, the government is obligated to consider a broad
spectrum of views, many of which may conflict with the particular interest of the would-be
intervenor") (quotation marks omitted); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255
(10th Cir. 2001) ("We have here also the familiar situation in which the governmental agency is
seeking to protect not only the interest of the public but also the private interest of the petitioners
in intervention, a task which is on its face impossible. The cases correctly hold that this kind of a
conflict satisfies the minimal burden of showing inadequacy of representation."); *Mausolf v.
Babbitt*, 85 F.3d 1295, 1303-04 (8th Cir. 1996) (acknowledging that "the Government cannot
always adequately represent conflicting interests at the same time," and holding that proposed

In sum, because the State Defendants represent broad public interests in Florida's health care system, including the interests of the physicians that are the plaintiffs in this case, the State Defendants are not adequate representatives of the interests the NRA seeks to defend in this litigation.

## II.   THE NRA MEETS THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

As the foregoing demonstrates, the NRA is entitled to intervene in this litigation as a matter of right.  Should this Court see things differently, however, the NRA asks in the alternative to be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).  "Upon timely application, … [p]ermissive intervention … is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *United States Army Corps of Engineers*, 302 F.3d at 1249-50.

With respect to timeliness, the same analysis is used for evaluating an application for intervention as of right and an application for permissive intervention.  *See Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986).  As we have already explained, this analysis demonstrates that the NRA's motion to intervene is timely.

It is also plain that the NRA's defense and the "main action" present common legal questions.  Plaintiffs' claims and the NRA's defense both involve the constitutionality of the Firearm Owners' Privacy Law under the Federal Constitution: Plaintiffs seek a declaration that the law violates the Federal Constitution, and the NRA contends that the law complies with the Federal Constitution. *See* Answer of National Rifle Association to Plaintiffs' First Amended

---

intervenors had established inadequate representation because "the Government's interest in promoting recreational activity and tourism in [addition to conservation in Voyageurs National] Park …. may be adverse to the [proposed intervenor's] conservation interests").

Complaint, Exh. C.  These arguments present inextricably intertwined and completely overlapping questions of law.

Finally, intervention by the NRA will not unduly delay or prejudice the disposition of this litigation.  Indeed, because the NRA believes that plaintiffs' claims fail as a matter of law, it anticipates that its defense will be largely if not wholly legal in nature.  This defense should not add significant time or complexity to this case.

For these reasons, permissive intervention is appropriate in this case.  Indeed, the NRA in the past has been granted permissive intervention to defend a Florida law against constitutional attack in a case in which a defendant state official (in that case, the Attorney General of Florida) was vigorously defending the law.  *See* Order Granting Leave to Intervene – National Rifle Association, DE 17, *Florida Retail Federation, Inc. v. Attorney General of Florida*, Case No. 4:08-cv-00179-RH-WCS (N.D. Fla. June 1, 2008). Even if this Court denies intervention as of right, it should thus grant permissive intervention to the NRA to allow it to defend its members' substantial interests in this litigation.

## CONCLUSION

For these reasons, this Court should grant the NRA's motion to intervene.

## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues completely. In particular, counsel for defendants stated that defendants will not oppose this motion.  Counsel for plaintiffs stated that plaintiffs will oppose this motion, but that plaintiffs would not oppose the NRA filing an amicus brief as long as such amicus participation would not affect the timetable for consideration of any matters before the Court.

s/ Gregory M. Cesarano
Gregory M. Cesarano

12

Dated:  June 27, 2011

Respectfully submitted,

s/ Gregory M. Cesarano
Gregory M. Cesarano (Fla. Bar No. 217761)
gcesarano@carltonfields.com
CARLTON FIELDS
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel:  (305) 539-7417
Fax:  (305) 530-0055

Charles J. Cooper*
ccooper@cooperkirk.com
David H. Thompson*
dthompson@cooperkirk.com
Peter A. Patterson*
ppatterson@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Ave. NW
Washington, D.C. 20036
Tel:  (202) 220-9600
Fax:  (202) 220-9601

Brian S. Koukoutchos*
bkoukoutchos@gmail.com
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052

*Pro hac vice application pending

Counsel for Proposed Intervenor NRA

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ Gregory M. Cesarano</u>
Gregory M. Cesarano

## SERVICE LIST

Chesterfield Smith, Jr.
Chief, State Programs Litigation
Jason Vail
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Suite PL 01, The Capitol
Tallahassee, FL 32399

*Counsel for Defendants*
*via U.S. Mail*

Edward M. Mullins
Hal M. Lucas
ASTIGARRAGA DAVIS MULLINS &
GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131
Tel:  (305) 372-8282
Fax: (305) 372-8202
emullins@astidavis.com

Bruce S. Manheim, Jr.
Douglas H. Hallward-Driemeier
Augustine M. Ripa
Julia M. Lewis
ROPES & GRAY LLP
700 12th Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 508-4600
Fax: (202) 383-8332
Bruce.manheim@ropesgray.com

Jonathan E. Lowy
Daniel R. Vice
BRADY CENTER TO PREVENT GUN
VIOLENCE
Legal Action Project
1225 Eye Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 289-7319
Fax: (202) 898-0059
jlowy@bradymail.org

*Counsel for Plaintiffs*
*via Notice of Electronic Filing generated by*
*CM/ECF*