# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### Case No. 11-22026-Civ-Cooke/Turnoff

DR. BERND WOLLSCHLAEGER, et al.,

      Plaintiffs,

v.

RICK SCOTT, in his official capacity as
Governor of the State of Florida, et al.,

      Defendants,

and

NATIONAL RIFLE ASSOCIATION,

      Proposed Intervenor.

## NATIONAL RIFLE ASSOCIATION'S BRIEF OPPOSING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND BACKGROUND ........................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      LEGAL STANDARD ............................................................................................... 2

II.     PLAINTIFFS CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF
SUCCESS ON THE MERITS. .................................................................................. 3

       A.     Plaintiffs Lack Standing to Challenge the Act. ................................................ 3

       B.     The Act Does Not Impose A Restriction on Protected Physician Speech. ............. 5

            § 790.338(2) ................................................................................................ 5
            § 790.338(1) ................................................................................................ 8
            § 790.338(5) ................................................................................................ 8
            § 790.338(6) ................................................................................................ 9

       C.     The Act Does Not Violate Physicians' (or Patients') Speech Rights. ................... 9

       D.     The Act Is Not Unconstitutionally Overbroad. ................................................ 15

       E.     The Act Is Not Unconstitutionally Vague. ...................................................... 16

            Relevant ...................................................................................................... 18
            Discrimination. ........................................................................................... 18
            Harassment. ................................................................................................ 18

III.    NONE OF THE OTHER FACTORS SUPPORTS AN INJUNCTION ......................... 19

       Plaintiffs Have Not Shown Irreparable Harm. ................................................... 19

       Neither the Balance of the Equities Nor the Public Interest Supports An Injunction. ....... 20

CONCLUSION .................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**                                                                                            **Page**

*Accountant's Soc'y of Virginia v. Bowman*, 860 F.2d 602 (4th Cir. 1988)..................................13

*ACLU v. Miami-Dade School Bd.*, 557 F.3d 1177 (11th Cir. 2009)................................................3

*American Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992).................................................4

*Asociacion de Empleados del Area Canaleria v. Panama Canal Comm'n*,
   453 F.3d 1309 (11th Cir. 2006).................................................................................................13

*Bloedorn v. Grube*, 631 F.3d 1218 (11th Cir. 2011)...........................................................3, 19

*Butler v. Thornburgh*, 900 F.2d 871 (5th Cir. 1990) .................................................................6

*C.G. Willis, Inc. v. Director*, 31 F.3d 1112 (11th Cir. 1994) ....................................................18

*California. State Bd. of Optometry v. F.T.C.*, No. 89-1190, 1989 WL 111595
   (D.C. Cir. Aug. 15, 1989)......................................................................................................20

*Carey v. Wolnitzek*, 614 F.3d 189 (6th Cir. 2010) ....................................................................5

*Clark v. Martinez*, 543 U.S. 371 (2005)...................................................................................6

*Coalition for Econ. Equity v. Wilson*, 122 F.3d 718 (9th Cir. 1997) ...........................................20

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)..................20

*Coleman v. DeWitt*, 282 F.3d 908 (6th Cir. 2002).....................................................................13

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) .............................................................13, 14

*Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320 (11th Cir. 2004) ......................3

*Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663 (11th Cir. 1984) ...................................6

*Dimmitt v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993) ................................................15

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975)............................................................14

*Florida Right to Life v. Lamar*, 273 F.3d 1318 (11th Cir. 2001)..................................................6

*Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279 (11th Cir. 2008) ...............................................13

*Gonzales v. Carhart*, 550 U.S. 124 (2007)..............................................................................17

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010) ..................................................18

*Horton v. City of St. Augustine*, 272 F.3d 1318 (11th Cir. 2001) ...............................................16

*Karlin v. Foust*, 188 F.3d 446 (7th Cir. 1999)........................................................................17

*Laird v. Tatum*, 408 U.S. 1 (1972)............................................................................................4

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)......................................................................4

*Lowe v. SEC*, 472 U.S. 181 (1985) .................................................................................12, 13

*Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) ................................................14

*Marks v. United States*, 430 U.S. 188 (1977) .......................................................................10

*Mock v. Bell Helicopter Textron, Inc.*, 373 Fed. Appx. 989 (11th Cir. 2010)...........................13

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2008).................................4

*Mullins Coal v. Director,* 484 U.S. 135 (1987) ........................................................................18

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345 (1977) .........................................20

*Nken v. Holder*, 129 S. Ct. 1749 (2009) ............................................................................19, 20

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville,*
    896 F.2d 1283 (11th Cir. 1990)..........................................................................................2

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992) ............................................9, 10

*Qwest Corp. v. FCC*, 258 F.3d 1191 (10th Cir. 2001) ................................................................6

*Regional Air, Inc. v. Canal Ins. Co.*, 639 F.3d 1229 (10th Cir. 2011)........................................6

*Rowan v. U.S. Post Office Dep't*, 397 U.S. 728 (1970) .............................................................14

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) ...................................................................19

*State v. Thomas*, 528 So. 2d 1274 (Fla. Dist. Ct. App. 1988) ....................................................6

*Tull v. United States*, 481 U.S. 412 (1987).................................................................................6

*Union Elec. Co. v. Consol. Coal*, 188 F.3d 998 (8th Cir. 1999) ................................................6

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) ...............4

*United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006) ..................................................18, 19

*United States v. Maria*, 186 F.3d 65 (2d Cir. 1999) ...............................................................5, 6

*United States v. Robinson*, 922 F.2d 1531 (11th Cir. 1991)......................................................5

*United States v. Rogers*, 14 Fed. Appx. 303 (6th Cir. 2001)......................................................7

*United States v. Salerno*, 481 U.S. 739 (1987)........................................................................16

*United Steelworkers v. Weber*, 443 U.S. 193 (1979) ................................................................18

*University of So. Florida v. Tucker*, 374 So. 2d 16 (Fla. Dist. Ct. App. 1979)............................6

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) ....................................................16

*Williams v. Taylor*, 529 U.S. 420 (2000)...............................................................................5, 7

*Wilson v. State Bar of Georgia*, 132 F.3d 1422 (11th Cir. 1998)................................................4

*Winter v. NRDC*, 129 S. Ct. 365 (2009) ...................................................................................2

*Wooley v. Maynard*, 430 U.S. 705 (1977)...............................................................................15

## **Constitutional and Legislative Materials**

42 U.S.C. § 1320d...................................................................................................................8

42 U.S.C. § 300aa-11 ...........................................................................................................18

46 U.S.C. § 3507 ........................................................................................................18

47 U.S.C. § 223(a)(1)(C) ...........................................................................................18

38 C.F.R. § 21.284 ....................................................................................................18

Fla. Stat.

    § 381.026(4)(b)(3) ...............................................................................................10

    § 381.026(4)(b)(8)–(11) ..................................................................................1, 10

    § 381.026(4)(b)(9) .................................................................................................3

    § 456.053(5)(a) ....................................................................................................10

    § 456.0575 ...........................................................................................................10

    § 456.072(1)(mm) .................................................................................................1

    § 458.305(3) .........................................................................................................10

    § 458.327(1)(a) ....................................................................................................10

    § 790.338 ...............................................................................................................1

    § 790.338(1) ...........................................................................................1, 3, 8, 16

    § 790.338(2) ...............................................................................1, 3, 5, 7, 15, 16

    § 790.338(3) ......................................................................................................7, 8

    § 790.338(4) ....................................................................................................3, 15

    § 790.338(5) ..................................................................................................2, 3, 8

    § 790.338(6) ............................................................................................2, 3, 9, 16

    § 790.338(7) ...........................................................................................................3

## Other

AAP, Comm. on Injury and Poison Prevention, *Firearm-Related Injuries Affecting the Pediatric Population*, 105 Pediatrics 888 (2000) .......................................11

ACP, *Firearm Injury Prevention:  Position Summary*, *at* http://www.acponline.org/pressroom/guncontrol.htm .......................................11

Audio CD: Regular Session House Floor Debate on HB 155, held by the Florida House of Representatives (Apr. 26, 2011) .......................................................11

Black's Law Dictionary 784 (9th ed. 2009)........................................................19

Committee Hearing on HB155, held by the Criminal Justice Subcommittee (Mar. 8, 2011)
(*available at*
http://www.myfloridahouse.gov/sections/Committees/committeesdetail.aspx?SessionId
=70&CommitteeId=2614) ...................................................................................................10

Committee Hearing on HB155, held by the Judiciary Committee (Apr. 12, 2011) (*available at*
http://www.myfloridahouse.gov/sections/Committees/committeesdetail.aspx?
SessionId=70&CommitteeId=2594) (Rep. Brodeur) ...........................................................15

Health & Human Servs. Comm. Report (April 7, 2011).................................................................1

MERRIAM-WEBSTER DICTIONARY, www.merriam-webster.com/dictionary/refrain.......................5

## <u>INTRODUCTION AND BACKGROUND</u>

Plaintiffs seek a preliminary injunction barring enforcement of a recently enacted statute, entitled "An Act Relating to the Privacy of Firearms Owners," CS/CS/HB 155, codified at FLA. STAT. §§ 790.338; 381.026(4)(b)(8)–(11); 456.072(1)(mm) ("Firearms Privacy Act" or "the Act"). The Act regulates the practice of medicine in Florida by providing for "medical privacy concerning firearms" and by addressing "discrimination" against, and "harassment" of, those individuals who choose to exercise their fundamental constitutional right to keep and bear arms. DE 20-3, Health & Human Servs. Comm. Report (April 7, 2011) at 1.  It was enacted following a number of incidents (identified in the legislative history) in which doctors refused to respect their patients' legitimate privacy interests and the exercise of their Second Amendment rights. On at least one occasion, "a pediatrician asked a patient's mother" during "a routine doctor's visit" if "there were firearms in the home." *Id*. at 1-2.  The mother "felt that the question invaded her privacy" and when she "refused to answer, the doctor" terminated the doctor-patient relationship and told the mother "that she had 30 days to find a new pediatrician." *Id*. at 2.

There are several provisions of the Act at issue here:  Section 790.338(1) protects the privacy of patients by barring licensed health care practitioners and health care facilities from "intentionally enter[ing] any disclosed information concerning firearm ownership into the patient's medical record *if the practitioner knows that such information is not relevant to the patient's medical care or safety, or the safety of others.*" (Emphasis added.)

Section 790.338(2) provides that practitioners "shall respect a patient's right to privacy and *should refrain* from making a written inquiry or asking questions concerning the ownership of a firearm or ammunition by the patient or by a family member of the patient, or the presence of a firearms in a private home or other domicile. . . . *Notwithstanding this provision, a health*

1

*care practitioner or health care facility that in good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others, may make such a verbal or written inquiry.*" (Emphasis added.)

Section 790.338(5) provides that practitioners "may not discriminate against a patient based solely upon the patient's exercise of the constitutional right to own and possess firearms."

Section 790.338(6) provides that a practitioner "shall respect a patient's legal right to own or possess a firearm and *should refrain* from unnecessarily harassing a patient about firearm ownership during an examination." (Emphasis added).

The plain language of these provisions imposes no restriction on health care practitioners' speech. Rather, the statute recommends that practitioners "should refrain" from asking questions about firearms unless related to medical care or safety. And even if the statute did restrict speech, Supreme Court precedent makes clear that the state can regulate doctor-patient speech as part of its power to regulate the practice of medicine, especially where, as here, doctors retain unfettered discretion to discuss the medical care and safety of their patients.

## ARGUMENT

## I.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 129 S. Ct. 365, 376 (2009). "Preliminary injunctions of legislative enactments … must be granted reluctantly and only upon a clear showing that the injunction … is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). A movant must "clearly establish all of the following requirements: (1) … a substantial likelihood of success on the merits; (2) irreparable

injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011) (citations omitted).  "Failure to show any of the four factors is fatal," *ACLU v. Miami-Dade School Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009), but in any event plaintiffs cannot meet any of the requirements.

## II.   PLAINTIFFS CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.   Plaintiffs Lack Standing to Challenge the Act.

Plaintiffs allege that they do not ask patients about firearm ownership absent a good faith belief that such information is relevant to patients' medical care or safety, or the safety of others, let alone record such information in their patients' medical records despite knowing that it is irrelevant.  FLA. STAT. §§ 790.338(1)-(2).  *See* First Amended Complaint ¶¶ 41-42, 74, 76, 79, 83, 85.  And plaintiffs certainly do not allege that they discriminate against or unnecessarily harass their gun-owning patients.  §§ 790.338(5)-(6).[1]  Further, as demonstrated below in Part B, the sections of the Act that supposedly restrict speech are merely hortatory.  §§ 790.338(2), (6).  Accordingly, plaintiffs have no reason to fear discipline for speaking as they allege they wish.

Although plaintiffs claim that their speech is nonetheless chilled by the Act, it is well settled that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of

---

[1] Although plaintiffs seek an injunction of the Act in its entirety, *see* Pl.Br. 1 & Ex. A, they do not—and could not plausibly—allege any injury from subsections (3), (4), or (7) of section 1 of the Act, *see* Pl.Br. 4 n.6.  It is thus beyond dispute that they lack standing to challenge these provisions.  These provisions are among the Act's most important, for they establish that patients need not provide information about gun ownership and that insurers may not discriminate against gun owners.  *See* FLA. STAT. §§ 790.338(4)&(7), § 381.026(4)(b)(9).  This Court at a minimum should preserve these provisions.  *See Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1347 (11th Cir. 2004) ("federal courts have an affirmative duty to preserve the validity of legislative enactments when it is at all possible") (quotation marks omitted).

specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1,

13-14 (1972).[2]  As then-Judge Scalia explained:

> The harm of "chilling effect" is to be distinguished from the immediate threat of
> concrete, harmful action.  The former consists of present deterrence from First
> Amendment conduct because of the difficulty of determining the application of a
> regulatory provision to that conduct, and *will not by itself support standing*.  The
> latter—imminence of concrete, harmful action such as threatened arrest for
> specifically contemplated First Amendment activity—does support standing.

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984)

(Scalia, J.) (emphasis added).

> [I]f no credible threat of prosecution looms, the chill is insufficient to sustain the
> burden that Article III imposes.  A party's subjective fear that she may be
> prosecuted for engaging in expressive activity will not be held to constitute an
> injury for standing purposes unless that fear is objectively reasonable.

*Wilson v. State Bar of Georgia*, 132 F.3d 1422, 1428 (11th Cir. 1998) (quotation marks omitted).

Regardless how genuine or strong they may be,[3] plaintiffs' alleged fears of discipline are not

objectively reasonable, for the Act by its terms simply does not restrict the speech in which they

claim they wish to engage, and the State does not argue otherwise.  *See Lopez*, 630 F.3d at 788

("plaintiffs' claims of future harm lack credibility when the challenged speech restriction by its

terms is not applicable to the plaintiffs, or the enforcing authority has disavowed the applicability

of the challenged law to the plaintiffs").  Therefore plaintiffs lack standing and the complaint

should be dismissed.

---

[2] *See also, e.g.*, *Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602, 609 (6th Cir. 2008)
("absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of
speech, the federal courts routinely hold that no standing exists") (collecting cases).
[3] *See e.g.*, *Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) ("injury-in-fact does not turn on
the strength of plaintiffs' concerns about a law, but rather on the credibility of the threat that the
challenged law will be enforced against them"); *American Library Ass'n v. Barr*, 956 F.2d 1178,
1193 (D.C. Cir. 1992) ("[W]hether plaintiffs have standing . . . depends on how likely it is that
the government will attempt to use these provisions against them . . . and not on how much the
prospect of enforcement worries them.").

## B.    The Act Does Not Impose A Restriction on Protected Physician Speech.

The Firearms Privacy Act does not "prevent[] physicians and patients from discussing essential firearm safety guidance."  Pl.Br. 3.  The challenged provisions bar discrimination and urge—they do not compel—physicians to refrain from interrogating patients about firearms. Because these provisions are the legislature's recommendations—and not its commands—the Act does not restrict protected speech.  Plaintiffs identify four supposedly objectionable provisions of the Act, but in each case they simply misread the plain text of the statute.

**§ 790.338(2).**  First, Plaintiffs contend that § 790.338(2) "directs practitioners to 'refrain from making' " any inquiry concerning the presence of firearms in the patient's home.  Pl.Br. 4 (quoting the statute).  This is untrue.  Plaintiffs carefully omit the critical term from their quotation of Subsection (2): a "practitioner . . . *should refrain* from making" inquiries about firearms. (Emphasis added.)  The words of a statute must be given "their ordinary, contemporary, common meaning," *Williams v. Taylor*, 529 U.S. 420, 431 (2000), and "the common meaning of 'should' " does not command but merely "suggests or recommends a course of action." *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999).[4]  The Eleventh Circuit has held that a rule stating that a person " 'should withhold all further comment'… is precatory rather than mandatory," and therefore cannot be the basis for imposing disciplinary sanctions.  *United States v. Robinson*, 922 F.2d 1531, 1534 (11th Cir. 1991).  Ethical canons providing that elected judges " 'should not' " solicit campaign contributions are "hortatory," but canons saying they " 'shall not' " are mandatory.  *Carey v. Wolnitzek*, 614 F.3d 189, 206 (6th Cir. 2010).  The use of "should" merely "indicates a recommended course of action, but does not itself imply the

---

[4] The statute's use of the rather passive verb "refrain" also signals something less than a legislative command.  To refrain means to "keep oneself from . . . indulging in . . . a passing impulse."  *See* MERRIAM-WEBSTER DICTIONARY, www.merriam-webster.com/dictionary/refrain.

obligation associated with the word shall." *Qwest Corp. v. FCC*, 258 F.3d 1191, 1200 (10th Cir. 2001).  Of special import in interpreting the words of the Florida Legislature is the doctrine of the Florida Courts that "[u]se of the word 'should' indicates" that the rule "is discretionary rather than mandatory in nature." *University of So. Florida v. Tucker*, 374 So. 2d 16 (Fla.Dist.Ct.App. 1979).  *See also State v. Thomas*, 528 So. 2d 1274, 1275 (Fla.Dist.Ct.App. 1988) ("[S]hould . . . expresses mere appropriateness, suitability or fittingness.").[5]

The Legislature's use of the mandatory "shall" earlier in the very same sentence confirms that its use of the hortatory "should" was deliberate.  Under § 790.338(2), physicians "*shall* respect a patient's right to privacy and *should* refrain from making a written inquiry or asking questions" about firearms. (Emphasis added.)[6]  When "a legislature uses different terms in the very same statutory provision, [courts] take cognizance of that choice by presuming the legislature intended the different words to carry with them (their traditional) different meanings." *Regional Air, Inc. v. Canal Ins. Co.*, 639 F.3d 1229, 1238 (10th Cir. 2011).  The "common meaning of the term 'should' suggests or recommends a course of action, while ordinary understanding of 'shall' describes a course of action that is mandatory." *Maria*, 186 F.3d at 70. *See also Union Elec. Co. v. Consol. Coal*, 188 F.3d 998, 1001 (8th Cir. 1999) ("should" is "purely precatory" whereas "shall" is "mandatory language"); *Butler v. Thornburgh*, 900 F.2d

---

[5] Even if the Act were ambiguous, the Court would be obliged to adopt a reasonable interpretation that avoids constitutional questions.  *Florida Right to Life v. Lamar*, 273 F.3d 1318, 1326 (11th Cir. 2001); *see also Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 667 (11th Cir. 1984) ("Federal courts must be slow to declare state statutes unconstitutional"). "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail."  *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005); *see also Tull v. United States*, 481 U.S. 412, 417 (1987).  A hortatory reading of "should refrain"—a reading to which the text is readily susceptible—avoids any First Amendment issue.
[6] Plaintiffs do not contend that this general directive to "respect" patient privacy on firearms actually restricts physician speech in any way, nor could they.

871, 876-77 (5th Cir. 1990) (use of " 'should' not 'shall' … is precatory"). Thus, in *United States v. Rogers*, the Sixth Circuit held that "Congress's use of the mandatory 'shall' eight words before 'should' further indicates that Congress apprehended a distinction between the two terms," and that Congress meant the latter instruction to be merely "hortatory." 14 F. App'x 303, 305 (6th Cir. 2001). The same is true with respect to the hortatory recommendation about physician gun inquiries in § 790.338(2). The statute on its face merely makes a recommendation and does not purport to strip physicians of their professional discretion to make inquiries about firearms. It thus raises no First Amendment issue at all.

In keeping with § 790.338(2)'s *recommendation* that physicians "*should* refrain" from inquiring about guns, it expressly guarantees that they may make such inquiries: *"Notwithstanding this provision, a health care practitioner or health care facility that in good faith believes that this information is relevant to the patient's medical care or safety, or the safety of others, may make such a verbal or written inquiry."* (Emphasis added.) Plaintiffs concede that the statute thus explicitly carves out ample space for the speech they claim is restricted, but object that it "provides no guidance as to that standard's meaning." Pl.Br. 4. But no guidance is needed: words in a statute are given their "ordinary" meaning. *Williams*, 529 U.S. at 431, and this provision states that a doctor can ask about firearms if he believes in "good faith" that it is "relevant" to the patient's "safety, or the safety of others." § 790.338(2). Thus, this exception is limited not by an objective standard, but only by the physician's subjective "good faith." This unambiguous provision poses no danger to First Amendment freedoms.

Plaintiffs nevertheless insist that this section "prohibits such inquiries in routine preventative care" by physicians, and they point to another subsection, § 790.338(3). Pl.Br. 4-5. That provision, which Plaintiffs do *not* challenge (and would not have Article III standing to

challenge in any event), provides that emergency medical technicians ("EMTs") may also make "good faith" inquiries about firearms but, in contrast to doctors, EMTs may ask about guns only if "necessary to treat a patient during the course and scope of a medical emergency" or if "the presence or possession of a firearm would pose an imminent danger or threat to the patient or others." § 790.338(3). Plaintiffs reason that this exception somehow casts doubt on the breadth of the exception for physicians in § 790.338(2), but they have it backwards. A comparison of the two provisions actually confirms the unlimited breadth of the exception carved out for firearms inquiries by physicians. The text expressly recognizes—and preserves—the professional discretion that accompanies a physician's responsibility to care for a patient's health.

**§ 790.338(1).** Plaintiffs argue that this provision "prohibits practitioners from 'intentionally enter[ing]' any information about firearms disclosed by a patient " 'into the patient's medical record.' " Pl.Br. 4 (quoting the statute). In the first place, this provision does not even purport to be a restriction on physician speech; it regulates only medical record-keeping, which is subject to extensive regulation. *See, e.g.*, 42 U.S.C. § 1320d *et seq*. More importantly, as plaintiffs are forced to concede, this provision, just like § 790.338(2), provides a broad "exception[] for when a practitioner believes in good faith that the information is '*relevant to the patient's medical care or safety, or the safety of others*.' " Pl.Br. 4 (quoting § 790.338(1)) (emphasis added). Again, there is nothing ambiguous about this guarantee of the practitioner's professional discretion with respect to record-keeping about patient firearms.

**§ 790.338(5).** Plaintiffs object that this provision restricts physician speech with its supposedly "inscrutable" command that physicians "may not discriminate against a patient based solely upon the patient's exercise of the constitutional right to own and possess firearms." *See*

Pl.Br. 5.  This objection is frivolous: the statute on its face merely proscribes "discrimination" and does not even refer to speech, let alone restrict speech on the basis of content.[7]

**§ 790.338(6).**  Finally**,** plaintiffs claim that the Legislature has restricted speech on the basis of its content by barring physicians from " 'unnecessarily harassing a patient about firearm ownership during an examination.' "  Pl.Br. 5 (quoting § 790.338(6)).  In the first place, plaintiffs have again omitted from their quotation the key operative term:  the statute merely recommends that a doctor "*should* refrain from unnecessarily harassing a patient." § 790.338(6) (emphasis added).  Thus, for the reasons discussed above, the provision is purely precatory and does not even purport to restrict speech.  In any event, Plaintiffs do not even assert—much less explain why—*harassment* of patients ought to be protected by the First Amendment.

### C.    The Act Does Not Violate Physicians' (or Patients') Speech Rights.

1.  Plaintiffs' First Amendment argument begins from a mistaken premise:  that regulations of speech incidental to the practice of medicine are subject to strict scrutiny.  *See* Pl.Br. 6-7.  The Supreme Court, however, has held otherwise.  In *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992), petitioners challenged a Pennsylvania law requiring physicians to provide women with certain information before performing an abortion. They argued that because the law "compel[led]" doctors' speech it was "subject to exacting First Amendment scrutiny and [could] survive only if it [was] narrowly tailored to promote a compelling governmental interest."  Brief for Petitioners and Cross-Respondents, *Casey*, 1992 WL 551419, at *54 (No. 91-744) (quotation marks omitted).  The controlling opinion agreed that physicians' "First Amendment rights" were "implicated, but only as part of the practice of medicine, subject" not to strict scrutiny but "to *reasonable licensing and regulation by the*

---

[7] Part II.E. addresses plaintiffs' arguments that these provisions are unconstitutionally vague.

9

*State*." *Casey*, 505 U.S. at 884 (opinion of O'Connor, Kennedy, and Souter, JJ.) (emphasis added).[8]  There was thus "no constitutional infirmity" in the challenged provision.  *Id.*

Consistent with *Casey*, Florida heavily regulates speech incidental to medical practice. Practicing medicine without a license is a third degree felony.  FLA. STAT. § 458.327(1)(a). Individuals thus lawfully cannot engage in speech consisting of "diagnosis, treatment, operation, or prescription for any … physical or mental condition" without the State's prior permission.  *Id.* § 458.305(3).  Doctors are to provide patients with "information concerning diagnosis, planned course of treatment, alternatives, risks, and prognosis" – but not when patients "refuse this information."  *Id.* § 381.026(4)(b)(3).  Doctors must notify patients in person about harmful adverse incidents.  *Id.* § 456.0575.  Doctors generally cannot refer patients to entities in which they have an investment interest.  *Id*. § 456.053(5)(a).  We could multiply these examples.

The Firearms Privacy Act, which is codified in Florida's Patient's Bill of Rights and Responsibilities, FLA. STAT. § 381.026(4)(b)(8)-(11), is another reasonable regulation of medical practice.  It exhorts doctors to stick to *practicing medicine* when examining patients, and it protects patients from doctors who refuse to do so.[9]  The Legislature had ample reason to believe that some doctors *need* this encouragement in the context of Second Amendment rights.

---

[8] This opinion is controlling on this point because it represents the "position taken by those Members [of the Court] who concurred in the judgment[] on the narrowest grounds."  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quotation marks omitted).  Four other justices would have applied rational basis review to sustain the challenged provision.  *See Casey*, 505 U.S. at 967 (Rehnquist, C.J., concurring in the judgment in relevant part and dissenting in part, joined by White, Scalia, and Thomas, JJ.).  To the extent this differs from the "reasonable regulation" standard applied by the controlling opinion, it is even more deferential to the State.
[9] The legislative history reflects these concerns.  *See, e.g.*, Committee Hearing on HB155, held by the Criminal Justice Subcommittee at 37:30-38:00 (Mar. 8, 2011) (available at http://www.myfloridahouse.gov/sections/Committees/committeesdetail.aspx?SessionId=70&CommitteeId=2614) (Rep. Brodeur:  anti-gun "political agenda has been moved into the examination rooms of some of the doctors of our state").  And although it was incidents

The Act was not, as plaintiffs would have it, based on a "single incident." Pl.Br. 15.[10] Furthermore, some health care practitioners, and some medical professional societies, are openly hostile to firearms and to the constitutional right to keep and bear them. For example, the American Academy of Pediatrics (AAP)—whose Florida chapter is a plaintiff here—not only advocates "bans of handguns," but also exhorts pediatricians to "urge parents who possess guns to remove them, especially handguns, from the home." AAP, Comm. on Injury and Poison Prevention, *Firearm-Related Injuries Affecting the Pediatric Population*, 105 PEDIATRICS 888, 893 (2000). Indeed, in its briefs supporting the losing side in recent Supreme Court cases involving the Second Amendment, the AAP announced its goal of "removing handguns from homes and communities across the country." Brief of the AAP *et al*. as Amici Curiae in Support of Petitioners at 1, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (No. 07-290); Brief for Organizations Committed to Protecting the Public's Health as Amici Curiae in Support of Respondents at 1, *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) (No. 08-1521).[11] These groups and their members have every right, of course, to their views about firearms; but their patients have an equal right to hold contrary views and to be protected from harassment, discrimination and unwarranted invasions of privacy with respect to their views.

---

involving some doctors' anti-gun views that occasioned the Act, its reach is not limited to that viewpoint: its terms apply equally to a physician who would tout pro-gun policies.

[10] The legislative record contains multiple examples of incidents between patients and physicians involving firearms. *See, e.g.*, Audio CD: Regular Session House Floor Debate on HB 155, held by the Florida House of Representatives at 13:40 (Apr. 26, 2011) (on file with the Florida House of Representatives Office of the Clerk) (Rep. Brodeur) (recounting three such incidents); *id.* at 26:20 (Rep. Artiles) (recounting one); *id.* at 28:15 (Rep. Baxley) (same).

[11] The AAP is not alone in taking these positions. The American College of Physicians (ACP)—the Florida chapter of which is a plaintiff—"thinks that physicians must become more active in … community efforts to restrict ownership and sale of handguns." ACP, *Firearm Injury Prevention:  Position Summary, at* http://www.acponline.org/pressroom/guncontrol.htm.

Against this backdrop, it is apparent that the Act is designed to *foster*, not interfere with, the doctor-patient relationship.  Gun-owners can rest assured that doctors who ask them about the subject and record their answers are motivated by a good faith belief that the information is relevant to the patient's care and well-being, and not by an ideological or other non-medical agenda.  The Act clarifies that patients do not have to answer such questions and that doctors cannot discriminate against them on account of answers they give.[12]  Thus the Act regulates the practice of medicine by ensuring a doctor's ability to question a patient about firearms when the doctor believes in good faith that the information is relevant to medical care and safety, while at the same time discouraging practitioners from irrelevant inquiries about firearms and from harassing patients on the subject.  Physicians remain free to advocate gun control on their own time to whomever they please, whether at public assemblies or in neighborhood canvassing, even if some of their patients happen to be in that crowd or to reside in that neighborhood—they simply cannot proselytize in their examination rooms on their patients' time.

The Act is thus on the permissible side of the distinction between reasonable professional regulations and outright speech restrictions:  "One who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in light of the client's individual needs and circumstances is properly viewed as engaging in the practice of a profession. … [T]he professional's speech is incidental to the conduct of the profession."  *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (White, J., concurring in the result).  It is only when "the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, [that]

---

[12] Plaintiffs argue that patient privacy concerns are insubstantial because doctors' "communications with patients are *already* made confidential."  Pl.Br. 9.  But this does nothing to assuage the concerns of patients who do not wish to divulge such information to their doctors.

government regulation ceases to function as a legitimate regulation of professional practice with only incidental impact on speech." *Id.*; *see Accountant's Soc'y of Virginia v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) ("Justice White's concurrence provides sound, specific guidelines for determining" the "point at which a measure is no longer a regulation of a profession but a regulation of speech.") (quotation marks omitted).  Florida clearly has not crossed this line.

2.  Plaintiffs do not address *Casey*'s reasonableness standard and thus cannot show a likelihood of success.  But the argument they do make—that the Act fails strict scrutiny—is itself faulty.[13]  To begin, plaintiffs assert that the State's "sole interest" is "to protect the 'privacy of firearm owners.' "  Pl.Br. 9.  But this ignores the State's interest in encouraging doctors it licenses to practice medicine when examining patients.  And it gives short shrift to the State's interest in protecting patients' exercise of fundamental Second Amendment rights.  *See Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279, 1284 (11th Cir. 2008) (affirming speech restriction in light of State's interest in "advanc[ing] the protection of [other] constitutional rights"); *Coleman v. DeWitt*, 282 F.3d 908, 913 (6th Cir. 2002) ("Protecting the ability to exercise a fundamental right is a compelling state interest.").  Furthermore, because the Act neither amounts to a "prohibition against practitioners asking about gun ownership" nor "enforces a blanket ban" on such questions, plaintiffs' concerns about the Act's tailoring are misplaced.  Pl.Br. 10-11.

Indeed, the case plaintiffs cite that is closest in point cuts against them.  In *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), the Ninth Circuit held that the federal government's policy of taking adverse action against physicians for recommending medical marijuana violated

---

[13] Plaintiffs' passing assertion in a footnote that the Act would fail the commercial speech test does not suffice to sustain that argument.  *See* Pl.Br. 12 n.14; *Mock v. Bell Helicopter Textron, Inc.*, 373 Fed. App'x 989, 992 (11th Cir. 2010); *Asociacion de Empleados del Area Canaleria v. Panama Canal Comm'n*, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006).  At any rate, given that plaintiffs' strict scrutiny argument fails their argument that the Act would flunk the relatively relaxed commercial speech test necessarily fails as well.

13

the First Amendment.  But the Court distinguished *Casey* on the ground that there "physicians did not have to comply if they had a reasonable belief that the information [they were required to provide] would have a severely adverse effect on the physical or mental health of the patient," and thus physicians remained free to "exercise[] [their] medical judgment," while the federal policy at issue in *Conant* granted doctors no such freedom.  *Id.* at 638 (quotation marks omitted).  Here, plaintiffs' medical judgment is, if anything, granted *freer* rein than in *Casey*.[14]

3.  The captive audience doctrine also supports the Act.  The Constitution protects a "very basic right to be free from [undesired] sights, sounds, and tangible matter," *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728, 736 (1970), and States may take steps to protect persons from such matter when the "degree of captivity makes it impractical for the unwilling viewer or auditor to avoid exposure," *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 209 (1975).

Under *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994), patients undergoing medical examinations are sufficiently "captive."  *Madsen* upheld an injunction restraining pro-life demonstrators from loud protests "within earshot of the patients" inside an abortion clinic, reasoning that the "First Amendment does not demand that patients at a medical facility undertake Herculean efforts to escape the cacophony of political protests."  *Id.* at 772; *see id.* at 768 (the State has a strong interest in protecting both the "psychological" and "physical well-being of the patient held 'captive' by medical circumstance").  If States may take special cognizance in protecting patients at medical facilities from unwanted speech originating *outside* those facilities, surely they may do the same when the speech originates *from doctors themselves*.

Plaintiffs allude to the captive audience doctrine, but their misreading of the Act dooms their argument.  They acknowledge that "the State sometimes may have an interest in giving

---

[14] *Conant* also is "consistent with principles of federalism that have left states as the primary regulators of professional conduct."  *Id.* at 639.  Plaintiffs cannot say the same for their position.

14

effect to a would-be listener's *decision* not to hear a speaker's message," but they argue that "the State cannot restrict speech on the *assumption* that *all* would-be listeners do not wish to hear the message." Pl.Br. 10.  But the act does no more than "giv[e] effect to a would-be listener's decision not to hear a speaker's message"—or more precisely, not to respond to it.  For while the Act *encourages* doctors not to ask about firearms ownership, it gives patients a *right* not to answer such questions.  *See* FLA. STAT. §§ 790.338(2), (4).  And that right not to speak furthers important First Amendment values.  *See Wooley v. Maynard*, 430 U.S. 705, 714-15 (1977).

 4.  Plaintiffs claim that the Act violates patients' right to receive information, but it does not prohibit patients from receiving *anything*.  As the Act's sponsor explained, this is by design:

> One of the important provisions of this is that it does in no way prohibit a safety conversation.  And so in Florida where it is estimated that we have 8 million handguns, I hope that this bill actually increases the number of safety conversations because they'll no longer be conditioned upon [the patient answering "yes" to questions] about firearms ownership. . . .  [M]y view on this is everyone should . . . get the firearms lecture.[15]

The Act thus does nothing to infringe any right patients have to receive information from their doctors.  And plaintiffs' own conduct demonstrates that doctors are still able to provide whatever medical information they like to patients.  Pl.Br. 19 n.23.

## D. The Act Is Not Unconstitutionally Overbroad.

 The overbreadth doctrine exists "to enable persons who are themselves unharmed by [a claimed] defect in a statute nevertheless to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1571 (11th Cir. 1993) (quotation marks omitted).

---

[15] Committee Hearing on HB155, held by the Judiciary Committee at 41:35 (Apr. 12, 2011) (available at http://www.myfloridahouse.gov/sections/Committees/committeesdetail.aspx?SessionId=70&CommitteeId=2594) (Rep. Brodeur).

Plaintiffs cannot avail themselves of this doctrine here because they *do* contend to have been harmed by the Act.

Even if they could properly invoke overbreadth, plaintiffs would have no claim because the Act does not "gag" or "silence[]" any physician, let alone bar a physician from speaking to a patient about firearms with that patient's consent.  Pl.Br. 15, 19.  As explained above: (1) the statute's recommended limits on physician inquiries about firearms are hortatory, and (2) the statute preserves practitioners' discretion to inquire about firearms whenever they deem it "relevant to the patient's medical care or safety, or the safety of others."  § 790.338(1)&(2).

### E. The Act Is Not Unconstitutionally Vague.

Plaintiffs also claim that the Act is unconstitutionally vague on its face.  Pl.Br. 12-15.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Indeed, because their First Amendment and overbreadth claims fail, to succeed plaintiffs' must "demonstrate that the [Act] is impermissibly vague in all of its applications."  *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497 (1982).  Plaintiffs do not even come close to meeting this exacting standard and their challenge fails for several independent reasons.

*First,* in a facial challenge, a statute's prohibition must be clear enough to "enable[] the ordinary citizen to conform his or her conduct to the law."  *Horton v. City of St. Augustine*, 272 F.3d 1318, 1330 (11th Cir. 2001).  *But here there is no prohibition* to which anyone must "conform his or her conduct," because the law is merely hortatory:  it says only that physicians "should refrain" from asking about firearms or unnecessarily harassing patients on that subject.  *See* §§ 790.338(2)&(6).  These provisions *require nothing* and *compel nothing* and therefore

could not be unconstitutional even if they were vague.  There can be no chilling effect on speech where the law merely makes a recommendation that the speaker is not compelled to obey.

*Second,* as plaintiffs concede, even the hortatory recommendation to refrain from firearms inquiries is subject to a broad "exception[] for when a practitioner believes in good faith that the information is 'relevant to the patient's medical care or safety, or the safety of others.' " Pl.Br. 4 (quoting §§ 790.338(1)&(2)).  Thus discussing gun ownership and gun safety is entirely within a physician's good faith discretion—thus only *bad faith harassment* of a patient, unrelated to issues of medical care or safety, is covered by the law (and again, the statute merely recommends that physicians "should refrain" from such speech).  This scienter requirement eviscerates plaintiffs' claim because "scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149-50 (2007).  The "Act cannot be described as 'a trap for those who act in good faith.' "  *Id. See also Karlin v. Foust*, 188 F.3d 446, 473 (7th Cir. 1999) (holding that a statute under which "a physician may rely on his or her 'best medical judgment' [to comply] … provides fair warning of the conduct expected of physicians and is more than adequate to protect against any arbitrary enforcement of [the law] by state officials").[16]

Plaintiffs complain that the scope of the exception is unclear because the statute does not define what is "relevant" to the patient's medical care or safety, nor does it define "harassment" or "discrimination."  Pl.Br. 13-14.  "But 'perfect clarity and precise guidance have never been

---

[16] Plaintiffs object that reading the statutory exception to mean what it says "would render the statute largely meaningless and thus would not address the objected-to circumstances in Ocala." Pl.Br. 13.  That is untrue.  First, the Ocala incident (and others) merely *occasioned* the legislation, whereas the *meaning* of the legislation is controlled by its *actual text*.  That text unambiguously permits inquiries about firearms when, in the physician's judgment, they are relevant to medical care or safety.  Second, a statute is not meaningless because it is hortatory rather than mandatory; the legislature is just as free to recommend as to command.  Third, the exception shields only physicians who act in "good faith," not those who lecture their patients not to promote safety, but to further the physicians' ideological or other non-medical agenda.

required even of regulations that restrict expressive activity.' " *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010).  Plaintiffs feign confusion about the meaning of these words, but they are hardly obscure or unfamiliar.

**Relevant.**  The Act employs the term "relevant" or "relevance" six times, in each instance followed by the phrase "to the patient's medical care."  The concept of medical relevance is firmly embedded in the law.[17]

**Discrimination.**  It is hard to take seriously Plaintiffs' complaint that this familiar term is not defined in the Act.  Even the United States Code does not define "discrimination," although it employs the term nearly 700 times.  " 'It has been suggested that the concept of discrimination is vague.  In fact it is clear and simple and has no hidden meanings.  To discriminate is to make a distinction, to make a difference in treatment or favor.' " *United Steelworkers v. Weber*, 443 U.S. 193, 255 (1979) (quoting a Justice Department memorandum) (emphases omitted).[18]

**Harassment.**  In *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006), the Eleventh Circuit rejected a vagueness challenge to a federal statute that outlawed making "harassing" telephone calls.  47 U.S.C. § 223(a)(1)(C).  "[T]he telephone harassment statute provided sufficient notice of its prohibitions because citizens need not guess what terms such as 'harass' and 'intimidate' mean." *Eckhardt*, 466 F.3d at 944.  The meaning of such terms " 'can be

---

[17] *See, e.g., Mullins Coal v. Director*, 484 U.S. 135, 149-52 (1987) (regulations providing for the admissibility of "all relevant medical evidence" in black-lung claims); *C.G. Willis, Inc. v. Director*, 31 F.3d 1112, 1115 (11th Cir. 1994) ("relevant medical diagnosis" needed before employer can be held accountable); 38 C.F.R. § 21.284 (treatment available based on "relevant medical findings"); 42 U.S.C. § 300aa-11 (petitions under National Vaccine Injury Compensation program require "available relevant medical records"); 46 U.S.C. § 3507 (vessel owners required to "preserve relevant medical evidence" in cases of sexual assault).

[18] Plaintiffs complain that the Act eliminates a potential area of misunderstanding by specifying that "the statute does *not* alter the rule that a doctor is free to cease providing services to a patient for any reason." Pl.Br. 14 (citing § 790.338(4)) (original emphasis).  It is difficult to discern how the term "discrimination" is made unconstitutionally vague by the statute's express reservation to physicians of a privilege that does *not* constitute forbidden "discrimination."

ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning.' " *Id.* (quoting *United States v. Bowker*, 372 F.3d 365, 381 (6th Cir. 2004)). The same is true here. Thus the harassment from which physicians "should refrain" under § 790.338(6) includes "[w]ords, conduct, or action . . . directed at a specific person" that "annoys" that person "and serves no legitimate purpose." BLACK'S LAW DICTIONARY 784 (9th ed. 2009). "This type of speech is not constitutionally protected." *Eckhardt*, 466 F.3d at 944 (quotation marks and citation omitted).

## III.   NONE OF THE OTHER FACTORS SUPPORTS AN INJUNCTION.

"It is not enough that the chance of success on the merits be 'better than negligible.' " *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009). As we have shown, Plaintiffs' prospects are precisely that: negligible. Therefore this Court need not consider other factors. *Bloedorn v. Grube*, 631 F.3d at 1242. Nevertheless we address the remaining factors briefly.

**Plaintiffs Have Not Shown Irreparable Harm.** Invoking the First Amendment does not establish irreparable harm. The "assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits. Rather, it is the *direct penalization*, as opposed to incidental inhibition, of First Amendment rights which constitutes irreparable injury." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (*en banc*) (per curiam) (emphasis added, quotation marks, citation, brackets, and ellipses omitted). This rule has particular application here, where the plain words of the statute reveal that it imposes no penalty on speech, but merely offers non-binding legislative recommendations on the scope of physician inquiries about firearms— suggestions that physicians are free to ignore. This perhaps explains why a number of the individual physician-plaintiffs declare under oath that they will not be deterred by the Act and

will continue to question their patients about firearms.  Pl.Br. 17, 19 n.23.  Simply showing "some 'possibility of irreparable injury' … fails to satisfy the second factor," *Nken v. Holder*, 129 S. Ct. at 1761, and that—at the very most—is all that plaintiffs have managed to do here.

**Neither the Balance of the Equities Nor the Public Interest Supports An Injunction.**

These factors "merge when the Government is the opposing party." *Id.* at 1762.  Even if the Act did penalize protected speech, it would be balanced out by the harm to Florida: "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).  *See also Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (same); *California State Bd. of Optometry v. F.T.C.,* No. 89-1190, 1989 WL 111595, at *1 (D.C. Cir. Aug. 15, 1989).  Therefore, " 'either party will suffer an irreparable injury if [the court] rule[s] against it.' . . .  The irreparable-harm inquiry in the end does not strongly favor one party or another." *Coalition to Defend Aff. Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006).

## CONCLUSION

For these reasons, the motion for a preliminary injunction should be denied.

Dated:  July 5, 2011

Respectfully submitted,

s/ Gregory M. Cesarano
Gregory M. Cesarano (Fla. Bar No. 217761)
gcesarano@carltonfields.com
CARLTON FIELDS
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel:  (305) 539-7417
Fax:  (305) 530-0055

Charles J. Cooper*
ccooper@cooperkirk.com
David H. Thompson*
dthompson@cooperkirk.com
Peter A. Patterson*
ppatterson@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Tel:  (202) 220-9600
Fax:  (202) 220-9601

Brian S. Koukoutchos*
bkoukoutchos@gmail.com
28 Eagle Trace
Mandeville, LA 70471
Tel: (985) 626-5052

*Pro hac vice application pending

Counsel for National Rifle Association

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ Gregory M. Cesarano</u>
Gregory M. Cesarano

## SERVICE LIST

Jason Vail
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Suite PL 01, The Capitol
Tallahassee, FL 32399
Tel:  (850) 414-3300
jay.vail@myfloridalegal.com

*Counsel for Defendants*
*via Notice of Electronic Filing generated by*
*CM/ECF*

Edward M. Mullins
Hal M. Lucas
ASTIGARRAGA DAVIS MULLINS &
GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131
Tel:  (305) 372-8282
Fax: (305) 372-8202
emullins@astidavis.com

Bruce S. Manheim, Jr.
Douglas H. Hallward-Driemeier
Augustine M. Ripa
Julia M. Lewis
ROPES & GRAY LLP
700 12th Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 508-4600
Fax: (202) 383-8332
Bruce.manheim@ropesgray.com

Jonathan E. Lowy
Daniel R. Vice
BRADY CENTER TO PREVENT GUN
VIOLENCE
Legal Action Project
1225 Eye Street NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 289-7319
Fax: (202) 898-0059
jlowy@bradymail.org

*Counsel for Plaintiffs*
*via Notice of Electronic Filing generated by*
*CM/ECF*

23