```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                    CASE NO. 11-22026-CIV-COOKE

 3

    DR. BERND WOLLSCHLAEGER, et al,
 4
                    Plaintiffs,            Wednesday, July 13th, 2011
 5          vs.                                  10:21 a.m.
                                              Miami, Florida
 6  FRANK FARMER,
    In his official capacity as
 7  Surgeon General of the
    State of Florida, et al,
 8
                    Defendants.            Pages 1 through 54
 9

10

11              TRANSCRIPT OF EVIDENTIARY HEARING
              BEFORE THE HONORABLE MARCIA G. COOKE
12                 UNITED STATES DISTRICT JUDGE

13

14
    APPEARANCES:
15  For the Plaintiffs:       ROPES & GRAY, LLP
                              Douglas Hallward-Driemeier, Esq.
16                            Bruce Manheim, Esq.
                              700 12th Street, NW, Ste 900
17                            Washington, DC  20005-3948

18                            LEGAL PROJECT of the BRADY CENTER to
                              PREVENT GUN VIOLENCE
19                            Daniel R. Vice, Esq.
                              1225 Eye Street, NW, Ste 1100
20                            Washington, DC  20005

21                            WEISBERG & KAINEN
                              Dennis G. Kainen, Esq.
22                            1401 Brickell Avenue, Ste 800
                              Miami, FL  33131
23
                              ASTIGARRAGA DAVIS MULLINS & GROSSMAN
24                            Edward M. Mullins, Esq.
                              701 Brickell Avenue, 16th Floor
25                            Miami, FL  33131
```

STENOGRAPHICALLY REPORTED, COMPUTER-AIDED TRANSCRIPT

```
 1   For the Defendants:       ATTORNEY GENERAL OFFICE
                               DEPARTMENT OF LEGAL AFFAIRS
 2                             Jason Vail, AAG
                               The Capitol PL-01
 3                             Tallahassee, FL   32399

 4                             COOPER & KIRK, PLLC
                               David H. Thompson Esq.
 5                             1523 New Hampshire Avenue, NW
                               Washington, DC   20036

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

     Reported By:             Judith M. Shelton, CRR
23                            Official United States Court Reporter
                              400 N. Miami Avenue, Room 8N09
24                            Miami, FL  33128
                              (305)523-5294
25                            judy_shelton@msn.com
```

WEDNESDAY, JULY 13th, 2011

```
 1        (Court was called to Order.)
 2        COURTROOM DEPUTY:  Judge, we have our evidentiary
 3   hearing on this morning on Case Number 11-22026-CIV-COOKE.
 4        THE COURT:  There's been some change in the case
 5   captions, but I'll go through that in just a moment.  Our
 6   system isn't on.  There it goes.
 7        For the record, appearing on behalf of the plaintiff?
 8        MR. MANHEIM:  Your Honor, Ed Mullins from the law
 9   firm of Astigarraga & Davis.  I'm here with -- co-counsel will
10   introduce themselves.
11        MR. HALLWARD-DRIEMEIER:  Your Honor, Doug
12   Hallward-Driemeier from the law firm of Ropes & Gray.
13        MR. MANHEIM:  Your Honor, Bruce Manheim.  Also --
14        THE COURT:  A little bit slower, Counsel.  My ears
15   don't hear that fast.  Who was the second person?
16        MR. MANHEIM:  Bruce Manheim.  Ropes & Gray.
17        MR. VICE:  Daniel Vice with the Brady Center to
18   Prevent Gun Violence.
19        MR. KAINEN:  Dennis Kainen, Weisberg & Kainen.
20        THE COURT:  Okay.  And appearing on behalf of the
21   defendant.
22        MR. VAIL:  Jason Vail, Your Honor, for the defendant.
23        MR. THOMPSON:  Good morning, Your Honor, I'm David
24   Thompson of Cooper and Kirk for Amicus NRA.
25        THE COURT:  All right.  Counsel, you may be seated.
```

WEDNESDAY, JULY 13th, 2011

```
 1   I'm going to start with the plaintiffs first.  This is your
 2   motion for preliminary injunction.  Who will be arguing for
 3   plaintiff?
 4           MR. HALLWARD-DRIEMEIER:  I will, Your Honor, Doug
 5   Hallward-Driemeier.
 6           THE COURT:  If you would step forward to the
 7   microphone, please.
 8           MR. HALLWARD-DRIEMEIER:  Good morning, Your Honor.
 9   May it please the Court.
10           I think the state's own brief in opposition to the
11   motion for preliminary injunction validates the constitutional
12   challenge that the plaintiffs have brought in this case.
13           The government's brief confirms that the plaintiffs
14   have a reasonable fear of discipline if they continue engaging
15   in the very speech that they did engage in, and in some cases
16   still engage in before enactment of the law.
17           The state's brief confirms that the law is viewpoint
18   discriminatory, that it was enacted because some patients and
19   some legislators disagreed with what they regarded as doctors'
20   antigun speech.
21           THE COURT:  My question, then, would be, so?
22           MR. HALLWARD-DRIEMEIER:  Excuse me?
23           THE COURT:  So?  Just because we don't like it
24   doesn't make it unconstitutional.
25           MR. HALLWARD-DRIEMEIER:  That's exactly correct, Your
```

WEDNESDAY, JULY 13th, 2011

| | |
|---|---|
| 1 | Honor.  It's not the fact that the doctors disagree with the |
| 2 | law.  It's the fact that the law was enacted because the state |
| 3 | disagreed with the doctors' speech.  And that type of |
| 4 | viewpoint discriminatory restriction on speech is |
| 5 | impermissible absent -- |
| 6 | THE COURT:  It may have been that -- the initial idea |
| 7 | behind it.  The question is, does the legislature, resulting |
| 8 | from what you believe to be the discriminatory intent of the |
| 9 | Florida legislature, create a constitutional burden on speech? |
| 10 | And that's what I want to know.  You said that the |
| 11 | legislation is subject to a strict scrutiny standard because |
| 12 | it's content based, the state saying it's a reasonable |
| 13 | regulation of speech based upon regulating the medical |
| 14 | industry. |
| 15 | So let's go there.  You know, people can -- |
| 16 | reasonable minds can disagree about whether this was the |
| 17 | reasonable use of the state's resources, whether this was |
| 18 | something they should have engaged in. |
| 19 | What I need to determine is, is the legislation, |
| 20 | itself, an unconstitutional burden on speech. |
| 21 | MR. HALLWARD-DRIEMEIER:  Thank you, Your Honor.  And |
| 22 | you're correct that the defendants have relied on cases |
| 23 | relating to the state's permissible regulation of professions. |
| 24 | Importantly, those cases, including the *Locke* case in |
| 25 | the Eleventh Circuit which related to interior design |

1    individuals.  Or the *Lowe v. S.E.C.* case, the state relies on

2    the concurring opinion of Justice White there which related to

3    investment advisers, confirmed that that doctrine is

4    restricted in two different ways that make it inapplicable

5    here.

6           First of all, as Justice White made clear, as does

7    the *Locke* decision, those cases confirm that the state may

8    restrict access to a profession to ensure that those who

9    practice the profession are qualified to do so.

10          So it is a restriction on access to the profession

11   entry.  It is not -- those cases do not stand for the

12   proposition that the state may regulate the speech that those

13   professionals engage in, in the course of that dialogue

14   carrying out their profession.

15          Likewise, what the cases made clear is that the

16   restriction must be -- that the restriction on speech must

17   only be merely incidental to the state's other regulatory

18   purposes.

19          Here, the statute --

20          THE COURT:  So where would you put *Casey* in that?

21          MR. HALLWARD-DRIEMEIER:  Well, *Casey* is distinct,

22   Your Honor, because there *Casey* -- the legislature was

23   requiring that doctors provide truthful nonmisleading

24   information to their patients.  It was not a restriction or

25   prohibition on doctors engaging in truthful nonmisleading

1  speech, which is what we have here.

2          The closest case to this --

3          THE COURT:  What can't you do now that you could do

4  before?  What would be the restriction on your clients'

5  ability to that in a conversation with his or her patient?

6          MR. HALLWARD-DRIEMEIER:  Well, the first and foremost

7  is that, as recommend by national professional associations,

8  the AAP, the AMA, the ACP, the plaintiffs had, before

9  enactment of the law, routinely asked their patients to answer

10  a screening questionnaire that was meant to help to identify

11  and tailor the areas of relevant discussion for the doctor

12  with the patient and included asking the patients whether

13  there was a gun in the home.

14          And the doctors have ceased -- many of them have

15  ceased doing so.  That is --

16          THE COURT:  But given the exceptions in the law,

17  there would be no reason for the doctor to cease asking those

18  kind of questions when he or she has -- and I think there are

19  six or seven exceptions in the statute.

20          You think the person's mental health is affected; you

21  think there might be issues related to safety; you're a

22  paramedic and you respond to a situation and you want to make

23  sure you're not walking in where there's active gun play.

24          What -- what -- what's different now?

25          Is it just some general screening along with, you

```
 1   know, how many times I eat red meat with how many guns I own?
 2          MR. HALLWARD-DRIEMEIER:  Consistent with the
 3   recommendations of the national associations, doctors do
 4   engage in preventive medicine.  The first step of that is to
 5   find out from their patients what are the areas of concern.
 6   If a doctor --
 7          THE COURT:  But that -- if you are -- if you -- if
 8   it's appropriate for you to have a firearm, meaning you're not
 9   one of the precluded classes, you do everything you're
10   supposed to do.  On a regular medical visit, hi, I'm Marcia
11   Cooke.  I'm here to talk to you about my flu.  What's the
12   issue about the gun?
13          MR. HALLWARD-DRIEMEIER:  Well, Your Honor, what the
14   medical associations have determined is that the danger of an
15   improperly stored firearm in the home is a critical safety
16   concern to especially children, but also others in various --
17          THE COURT:  I am Marcia Cooke, I have a three-year-
18   old and I have a seven-year-old.  Well, Ms. Cooke, have you
19   thought about appropriate firearm safety?  That is when the
20   question would come.  Why would you have it as an initial
21   screening question?
22          MR. HALLWARD-DRIEMEIER:  Well --
23          THE COURT:  And why does that somehow affect your
24   client's ability to give adequate medical care across the
25   board?
```

WEDNESDAY, JULY 13th, 2011

1           And, given that, where is your content-based speech

2    being precluded?

3           MR. HALLWARD-DRIEMEIER:  Well, Your Honor, first of

4    all, let's -- I want to make sure that we're on same page.

5           That the state construes the statute to preclude

6    asking the question as part of that initial screening

7    questionnaire.  The state says that the law was intended to

8    prohibit the kind of incidents that gave rise to its

9    enactment.

10          They go through the legislative history in which

11   legislators point to the *Ocala* incident and some others.  And

12   then they say it's clear that the plaintiffs engage in this

13   very kind of speech because they --

14          THE COURT:  I understand what you're saying you think

15   might happen.  But I'm looking at paragraph one:

16          "A health care professional licensed under this

17   chapter may not intentionally enter any disclosed information

18   concerning firearm ownership into the patient's medical

19   record, if the practitioner knows that such information is not

20   relevant to the patient's medical care or safety, or the

21   safety of others."

22          So the information that you just described, parent

23   with small children, you'd be able to do that.  Reminding the

24   person, you have your guns under lock and key.  That seems to

25   be permissible.  And then you go through the other ones where

1   you're allowed.  Respect the patient's privacy and refrain

2   from making a written inquiry or concerning question -- the

3   ownership of a firearm -- notwithstanding this provision, a

4   health care professional that in good faith believes that the

5   information is relevant to the patient's medical care or

6   safety, or the safety of others, may make such verbal or

7   written inquiry.

8        MR. HALLWARD-DRIEMEIER:  Well, Your Honor, what I

9   understand from your question is that you and my clients are

10  in agreement.  That this type of inquiry is relevant.  And --

11  but the problem --

12       THE COURT:  Wait, wait, wait.  No.  If it's relevant

13  to the medical care.

14       MR. HALLWARD-DRIEMEIER:  If it's relevant to the

15  medical care, that preventative medicine is part of a doctor's

16  provision of medical care.  And so asking the question in

17  order to know whether to provide the very kind of advice that

18  Your Honor alluded to is relevant to the medical care that the

19  AMA --

20       THE COURT:  What's relevant about you asking me about

21  my gun when I come in because I had a cold?

22       MR. HALLWARD-DRIEMEIER:  Well, Your Honor, where it

23  typically arises is when patients -- when children are brought

24  in by their parents for well visits or other type of treatment

25  and the doctor goes through a variety of questions to ensure

WEDNESDAY, JULY 13th, 2011

1   that the patient is not exposed to unnecessary risk.

2       It's preventative care --

3       THE COURT:  Does that mean that you're going to give

4   them information about violent videos that you think might be

5   harmful to a child?  Are you going to ask them to disclose

6   whether or not -- how they store their power tools?  Where is

7   this going?

8       MR. HALLWARD-DRIEMEIER:  Well, the questionnaire

9   does, in fact, include a wide variety of questions, including

10  pools, poisons, child safety seats in cars.  There are any

11  number of areas in which doctors will inquire in order to

12  tailor and focus their --

13      THE COURT:  So what about --

14      MR. HALLWARD-DRIEMEIER:  -- discussions.

15      THE COURT:  -- this statute would prevent you from

16  asking the parent of minor children how you're storing

17  firearms?

18      MR. HALLWARD-DRIEMEIER:  As construed by the state,

19  by the defendants in this case, it's subsection 2 of Section

20  790338.

21      As Your Honor noted, there is an exception in that

22  provision for where the doctor in good faith believes it is

23  relevant to the provision of medical care.  The state,

24  however, does not construe that exception as encompassing the

25  type of inquiry that we've just been discussing.

```
1              And I would point the Court to the government's brief
2    on pages 7 and 8.  And if I could just sort of walk through
3    how it's clear from the government's brief that they view that
4    type of inquiry as prohibitive.
5              They say at the outset on the top of page 7 that the
6    Act's disciplinary provisions were intended -- would only
7    apply or were intended to apply in situations such as those
8    that animated the passage of the Act that are discussed below.
9              In the following two paragraphs, the state discusses
10   some of the incidents that were referenced in the legislative
11   history, both in the committee reports and in the core
12   speeches.
13             In particular, it cites the Ocala incident, quote,
14   unquote, but others as well, that are in many instances
15   indistinguishable from that type of inquiry.  Patient with a
16   child comes in.  The doctor asks, do you have a gun in the
17   home?  The patient objects to that question.
18             And then on page --
19             THE COURT:  And under the law, if the patient objects
20   to the question and doesn't answer, the inquiry goes on,
21   correct?  You continue to check the boxes.  And the only thing
22   the statute would say is that you, medical care professional,
23   can't refuse to treat that person because they won't engage in
24   that dialogue with you.
25             MR. HALLWARD-DRIEMEIER:  Well, two points, Your
```

1    Honor.  I don't think that that's correct in two regards.

2           First, is that the statute by its terms prohibits the

3    asking of the question.  The question cannot be asked if it is

4    not relevant.  And as the state construes that requirement of

5    relevance, it would not include the type of routine

6    preventative medicine screening questionnaire that we've been

7    discussing.

8           And that's clear on page 8 where the state says that

9    the plaintiffs' amended complaint confirms that these types of

10   incidents occur.  And that while some patients welcome

11   questions about firearm ownership and a discussion of firearm

12   safety, others find it unreasonable and intrusive.

13          And then they discuss in the next paragraph -- the

14   next sentence, rather, that plaintiffs assert that it is their

15   regular practice to ask about firearm ownership as a component

16   of educating patients about environmental hazards.

17          It's precisely that type of routine preventive

18   medicine questionnaire that the statute is intended to

19   prohibit the plaintiffs from engaging in.

20          THE COURT:  So maybe it's the other way around.

21   Maybe the questionnaire is overbroad and not the statute.

22          MR. HALLWARD-DRIEMEIER:  Well, Your Honor, the --

23   interestingly, the state starts by saying that the statute is

24   meant only to codify the accepted practice.  Well, the

25   accepted practice is that which is spelled out by the national

```
 1   medical associations, which is that preventative medicine --
 2   not just the treatment of an actual injury after it has
 3   occurred, but preventative medicine, making sure that patients
 4   understand the risks and avoid them is a critical part of a
 5   doctor's profession.
 6           And it relates, as I said, not only to firearms.  It
 7   relates to the risks of smoking, or -- as Your Honor mentioned
 8   before -- poisons, pools, a whole host of threats.
 9           The threat of firearms, however, is particularly
10   acute for children.  And if you read the declarations of the
11   plaintiffs, they go through in heart-wrenching detail some of
12   the stories where a child found the loaded gun that was kept
13   in the bedside stand for purposes of safety, and instead, it's
14   used to unintentionally kill a sibling.
15           Those types of risks to the health and welfare of
16   their patients are critical to doctors.  That is recognized by
17   national medical associations --
18           THE COURT:  But I don't understand why you wouldn't
19   be able to ask that question of a parent with small children
20   under the statute.
21           MR. HALLWARD-DRIEMEIER:  Well, Your Honor --
22           THE COURT:  What about the statute prohibits you from
23   engaging in that sort of speech?
24           MR. HALLWARD-DRIEMEIER:  It is the statute as
25   construed by the state.
```

WEDNESDAY, JULY 13th, 2011

1          We agree --

2          THE COURT:  But show me what -- where they construed

3  it that way.  It may have been --

4          MR. HALLWARD-DRIEMEIER:  It's on page 8.

5          THE COURT:  -- the incidents that may have caused

6  this to come to the state's attention.  But does anything in

7  their brief say these are the type of situations that we think

8  would result in a violation of this statute and expose the

9  practitioner or the facility to disciplinary action?

10         Because, unless I'm incorrect, other than

11  disciplinary action by the medical board, are there other

12  sanctions that the doctor or facility would be subject to if

13  they ask this --

14         MR. HALLWARD-DRIEMEIER:  It's discipline, which is

15  very significant.  It could lead to loss of license.  But

16  other types of discipline, even short of that, would be

17  devastating to the practice of a doctor.

18         So -- and if -- again, I'll go back to page 8, Your

19  Honor.  Because after the government points to these incidents

20  that gave rise to the legislation and the government has said

21  that it was -- that the purpose of the statute was that it

22  would apply in situations such as those incidents that gave

23  rise to the legislation, then on page 8, they clarify that the

24  conduct that the plaintiffs are engaged in, including asking

25  -- making it their regular practice to ask about firearm

1  ownership as a component of preventative medicine is what was

2  intended to be prohibited.

3      THE COURT:  So tell me what the doctors are saying it

4  would prevent them from doing?  And who are the people that

5  they would be unable to reach out to?

6      You've already said small children.  That seems to

7  fall under paragraph 2.

8      Where's this big category of patients that remain

9  underserved or exposing themselves to risk by virtue of a

10  doctor not saying or doing something?

11      MR. HALLWARD-DRIEMEIER:  Well, again, as I read the

12  paragraph on page 8, the government is saying -- perhaps the

13  government will clarify.

14      I think that one of the problems with this statute,

15  we've complained of from the outset, is its vagueness.  And

16  these terms are not defined in any way.  It's clear that the

17  legislators intended to prohibit precisely that type of

18  routine questionnaire with respect to children.

19      THE COURT:  That may have been what they talked

20  about, but what did they write?

21      MR. HALLWARD-DRIEMEIER:  Well, they -- they don't

22  write anything.  That's part of the problem.

23      THE COURT:  Well, the word "relevant" is used

24  throughout the statutes.  You don't have to -- that's not a

25  word that we routinely define in statutory construction,

1  relevant.  It's given its ordinary meaning.

2          MR. HALLWARD-DRIEMEIER:  Well, Your Honor, what we

3  have in the brief of the state is the construction that is

4  given it by the entity charged under state law with enforcing

5  it.  The Board of Medicine, the defendants against whom we ask

6  the Court to order that they cannot enforce this statute

7  against our -- our clients when they present that

8  questionnaire, that screening questionnaire to their patients.

9  The Board of Medicine has said that they view that as a

10 violation of the law.

11         THE COURT:  Counsel, I'm looking at page 6 of the

12 defendant's response.  And it says, "The only prohibition in

13 the Act against communicating or receiving information arises

14 when patients exercise their right to decline to answer

15 questions about their ownership possession of firearm.  The

16 act codifies the right of patients to decline to answer such

17 questions."

18         MR. HALLWARD-DRIEMEIER:  Well, Your Honor, that is --

19 simply cannot be square with the language of the statute,

20 which makes clear that not only --

21         THE COURT:  Well, they are citing from paragraph 4.

22         MR. HALLWARD-DRIEMEIER:  Certainly paragraph 4 does

23 establish that the plaintiff is free to ask the question, even

24 when the state would permit a doctor to ask it.  Even where

25 the state permits a doctor to ask question about firearm

1   ownership because the state deems it relevant, the patient is

2   still free to decline to answer and the doctor has to respect

3   that.

4          Now, notably, one point Your Honor suggested that the

5   doctor couldn't do would be to terminate the doctor-patient

6   relationship --

7          THE COURT:  On the basis of that question/answer

8   only.

9          MR. HALLWARD-DRIEMEIER:  In fact, the state makes

10  clear that the doctor can terminate the doctor-patient

11  relationship on the basis of refusal to answer that question.

12  That's codified in the statute in Section 4.  And the state

13  repeats that on several occasions, including on page 9, the

14  top of page 9.

15         THE COURT:  Well, doesn't it say in paragraph 5, a

16  health care professional licensed under this chapter may not

17  discriminate against a patient based solely upon the patient's

18  exercise of the constitutional right to own and possess

19  firearms or ammunition?

20         MR. HALLWARD-DRIEMEIER:  And, again, Your Honor, one

21  of the constitutional failings of the statute is it doesn't

22  tell us what kind of discrimination, what kind of conduct

23  would constitute the prohibited discrimination.  As you

24  assumed and I, likewise, assumed in light of the *Ocala*

25  incident that gave rise to the legislature's concern, one

1    thing I would have thought for sure that it would prohibit as

2    discrimination is terminating the doctor-patient relationship

3    on the basis of a refusal to answer.

4           But the state makes clear -- and this is in -- it's

5    the last sentence of subsection 4, immediately above.  The

6    patient's decision not to answer does not alter existing law

7    regarding a physician's authorization to choose his or her

8    patients.

9           And the legislative history, the committee reports

10   make clear, but, likewise, the statute's own brief at -- on

11   page 9 makes clear that because this is a private contractual

12   relationship, the doctor is free to terminate this

13   relationship with the patient on the basis of their refusal to

14   answer the question, as long as the doctor gives them at least

15   30 days, a reasonable period to find another caregiver.

16          So what we would have assumed --

17          THE COURT:  And that's permissible now under Florida

18   regulations of health care professionals?

19          MR. HALLWARD-DRIEMEIER:  Right.

20          THE COURT:  So what would this law change?

21          MR. HALLWARD-DRIEMEIER:  Well, part of the problem is

22   it's clearly intended to change something, but we don't know

23   what.  The antidiscrimination provision, the antiharassment

24   provision are nowhere spelled out what it is that they're

25   intended to prohibit.

WEDNESDAY, JULY 13th, 2011

1           The anti -- for the antiharassment provision, for

2    example, the state cites to statutory definitions of

3    harassment that are themselves inconsistent.  Is the

4    harassment in question what is perceived as harassment by the

5    patient?  Or what was intended as harassment by the doctor?

6    That question is unresolved.

7           At one point in its brief the state refers to

8    "harassing inquiries," making clear that on the state's view

9    asking the question in a situation that the state does not

10   regard as -- as relevant, is deemed harassment.

11          Well, that's not harassment under other statutory

12   definitions of the term.

13          THE COURT:  The person who would be enforcing this

14   legislation would be patients, correct?

15          MR. HALLWARD-DRIEMEIER:  The patients would initially

16   bring the complaint to the board, yes.

17          THE COURT:  Complaint.  And the health care

18   professional would be able to enumerate his or her reasons for

19   why they asked the question, correct, in front of a

20   disciplinary board?

21          MR. HALLWARD-DRIEMEIER:  Well, of course the doctor

22   has no idea what view the board will take of what is

23   harassment or what is discrimination or what is relevant

24   because those terms are not spelled out.

25          THE COURT:  And how is that different from any other

1   discipline that the board may take on an issue related to the

2   regulation of the profession?

3        MR. HALLWARD-DRIEMEIER:  Well, as the doctor's

4   declarations make clear, Your Honor, even the fact that one

5   would have been brought before the board could prevent the

6   doctor from getting any other job, could have effects on not

7   just their reputation, but their continued ability to practice

8   their profession.  Not, perhaps, as a legal matter, but

9   because they have to declare this in any application they

10  would make to a new job, insurance consequences of such a

11  complaint having been filed against them.

12       That itself is sufficient threat that the doctors are

13  self-censoring.  They're declining to engage in

14  constitutionally protected speech because the state is holding

15  this sword above their heads, but without any guidance as to

16  what these critical statutory terms mean.

17       And that is --

18       THE COURT:  So what would you have the state do?  Why

19  would this be different from other statutes that use the word

20  "relevant," "discriminate," "harassment"?

21       Why are these words not just subject to their

22  ordinary statutory meaning?

23       MR. HALLWARD-DRIEMEIER:  Well, as we pointed out,

24  terms such as "annoy," the Supreme Court has held in context

25  can be unconstitutionally vague because it seems to leave to

WEDNESDAY, JULY 13th, 2011

1  the listener subjective perception what is or is not annoying.

2        And likewise, here, the state acknowledges that some

3  patients welcome these inquiries because it gives rise to a

4  discussion that the patients find helpful to ensuring the

5  safety of their children.

6        THE COURT:  Is there anything about this statute that

7  would prevent a health care professional from ordering

8  brochures from a gun safety group and just putting it in his

9  or her lobby?  And if the patient wanted to pick it up, they

10  would have content information, I'm certain, given the harm

11  that you've described of the pediatric dangers of firearms.

12        That there must be some association or group within

13  the medical care community that's prepared pamphlets,

14  distributions, or things that can be given to parents so, hey,

15  take this home with you.  You don't have to engage in a

16  discussion.  You're not restricted.

17        If the parent has the brochure and they say, hey,

18  Dr. Smith, I picked up this brochure, I'm concerned about gun

19  locks.  Do you know who I could talk to?

20        MR. HALLWARD-DRIEMEIER:  Well, Your Honor, the

21  statute would not prohibit the provision of an undistinguished

22  brochure, just pick it up in the lobby or handing it to them.

23        But what it does prohibit is the effective

24  communication between the doctor and patient that is tailored

25  specifically to the patient's circumstances.  And that is

WEDNESDAY, JULY 13th, 2011

1 something that -- especially where that prohibition is adopted

2 precisely because of the viewpoint that the speaker is

3 perceived to have, is constitutionally impermissible.  The

4 First Amendment prohibits the state from relegating the speech

5 to a less effective means in that fashion.

6          THE COURT:  Counsel, how would your argument be

7 different if this legislation was ordered in a different way?

8 For example, that paragraphs 2, 3, 4, 5, and 6 -- 7 is another

9 interesting one, it relates to insurance -- that if those

10 paragraphs were there and paragraph 1 wasn't, how is that --

11          MR. HALLWARD-DRIEMEIER:  Well, I think that paragraph

12 1 and paragraph 2, likewise, inform and really to some extent

13 are what contribute to the vagueness and chilling effect of

14 subsections 5 and 6.  Because we know -- and the state

15 verifies in its response, here, that the antiharassment and

16 antidiscrimination provisions are really meant to get at and

17 preclude the doctor's speech; what the state refers to as

18 harassing inquiries.

19          So Provision One about recording the information for

20 the doctor's own future reference or for communication among

21 the doctors in a small practice, that communication, like the

22 communication between doctor and patient, even including a

23 willing patient, a patient who would welcome the inquiry and

24 the opportunity to engage in the discussion --

25          THE COURT:  But I don't see how that's precluded

WEDNESDAY, JULY 13th, 2011

1   under the language in paragraph 1.  I mean, the state can say

2   and do whatever it wants in terms of legislative hearing, but

3   that's not what they wrote.

4          MR. HALLWARD-DRIEMEIER:  Again, what subsection 1

5   prohibits is the recording of the information, which is

6   clearly communications --

7          THE COURT:  It doesn't prohibit it.  Only prohibits

8   it if it's not relevant to the medical care or safety.

9          MR. HALLWARD-DRIEMEIER:  Well, again, we get to the

10  ambiguity --

11         THE COURT:  And every situation you've described to

12  me relates to care and safety.

13         MR. HALLWARD-DRIEMEIER:  Well, I'm very heartened to

14  hear that Your Honor agrees with my patients -- my clients --

15         THE COURT:  Well, you've used -- the major one you've

16  used is a parent with children.

17         MR. HALLWARD-DRIEMEIER:  Right.  And we can talk

18  about others.  Many of the other plaintiffs and member of the

19  plaintiffs' organizations engage in this type of inquiry with

20  respect to their older patients who may be starting to suffer

21  some -- some decline in their --

22         THE COURT:  Parent safety.  You have a patient that

23  you think maybe -- some form of senior dementia or Alzheimer's

24  or some sort of mental health reason.  That would seem to be

25  captured by the statute.

```
1            MR. HALLWARD-DRIEMEIER:  One of the doctors
2   described, as well, he would ask the question when they start
3   to have some impairments in their mobility.  So they could, if
4   relevant, engage in discussions about handling of firearms for
5   hunting and the like.
6            THE COURT:  So wouldn't the question be, Mr. Jones,
7   I've seen that you've developed -- I'm going to use the
8   example Parkinson's, that may affect your ability to handle
9   firearms.  Do you have firearms at your home?  That seems to
10  be relevant to the patient's care.  And if the person says
11  listen, Doc, I don't want to talk to you about that, all you
12  have to do then is cease the conversation, right?
13            You've given the person the information, they've said
14  they're no longer a willing hearer.  You proceed to the rest
15  of his or her medical care.
16            MR. HALLWARD-DRIEMEIER:  I actually don't agree, Your
17  Honor.  It would certainly not be our position that the state
18  can force the doctor to cease the conversation at that point.
19  They --
20            THE COURT:  No.  I'm saying the patient has decided
21  that he or she wants to cease the conversation.
22            MR. HALLWARD-DRIEMEIER:  Well, the patient has
23  decided at that point that they don't care to provide
24  information.
25            What the state suggests in its brief and what
```

WEDNESDAY, JULY 13th, 2011

1  certainly the statute does nothing to dispel is that in the

2  perception of the hearer, a follow-up comment along the lines

3  of, well, the reason that I asked you that is because firearms

4  are -- are extremely dangerous if not stored properly in "X"

5  and "Y" conditions.

6        And that may be perceived, as the state rightly

7  points out, as harassment by some patients.  And, in fact,

8  some of the declarations discuss incidents in which patients

9  have reacted in fairly hostile ways to that type of follow-up

10 inquiry.

11        Clearly not harassment under a definition --

12        THE COURT:  But that's not the law's problem.  That's

13 the patient's -- that's the hearer's problem.

14        MR. HALLWARD-DRIEMEIER:  Well, no, Your Honor, that's

15 not true because harassment in the statute appears to be in

16 the eye of the beholder.  And that's the *Kahn* v. *Thomas* case

17 that the Court makes clear that that is a constitutional

18 infirmity.  Where the speaker has to self-censor because

19 they're concerned about how the listener might react to the

20 question.

21        In the *Sorrell* case in the Supreme Court, just last

22 month, *IMS v. Sorrell*, the state tried to defend its

23 prohibition on pharmaceutical marketing detailers discussing

24 with doctors their prescribing habit, that some doctors found

25 this to be harassing.

1        And the Supreme Court said that is not a permissible

2  justification under the First Amendment.  The state cannot --

3  certainly can't prohibit the conversation or the inquiry with

4  somebody who may well be willing and eager to have the

5  discussion simply because some people may find it offensive.

6  Nor can you, because of this self-censoring chilling effect,

7  tell a doctor, go ahead and ask the question, but do so at

8  your peril.  Because if there is a patient who finds it

9  offensive, they're going to be able to make a charge against

10  your license.

11        And doctors, rightly -- just testimony, my mother was

12  a nurse.  She retired from her profession because someone

13  filed a complaint against her license.  The declarations of

14  our plaintiffs demonstrate that they similarly fear complaints

15  against their licenses is the equivalent of the death knell of

16  their practice because of the harm to their reputation, the

17  harm to their professional standing, the fact that they

18  wouldn't necessarily be able to get another job.

19        And that's all because it's all in the eye of the

20  beholder whether it's regarded as harassing or not.  The state

21  can't put that power in the listener over the speech of the

22  doctors.

23        THE COURT:  Counsel, anything else before I hear from

24  the defendants?

25        MR. HALLWARD-DRIEMEIER:  I will reserve, I hope, some

```
 1   opportunity to respond to their comments.  But, thank you,
 2   Your Honor.
 3           THE COURT:  Okay.  Counsel for defendants.
 4           MR. VAIL:  Good morning, Your Honor.  This is Jason
 5   Vail from the attorney general's office on behalf of the
 6   defendant.
 7           THE COURT:  You, in your papers, specifically say
 8   that this is a licensing regulation requirement for which
 9   there is some lower standard of scrutiny.  But I am unable to
10   discern from your papers what that lower standard of scrutiny
11   might be.
12           MR. VAIL:  I believe --
13           THE COURT:  You're saying it's not strict.  It's this
14   regulation licensing requirement.  And where does that come in
15   the First Amendment pantheon of determining whether or not the
16   statute is an unconstitutional restriction of First Amendment
17   speech?
18           MR. VAIL:  Well, I apologize for not elucidating on
19   that issue, Your Honor.  We believe that it would be a
20   rational basis test.  Because this -- this Act simply
21   regulates professional conduct in the workplace.
22           It, as you've noted, does not prohibit the plaintiffs
23   from delivering their firearm safety message, nor does it
24   prohibit asking a question about firearm ownership the way the
25   statute is crafted.
```

WEDNESDAY, JULY 13th, 2011

```
 1            If there is any impact on speech at all, it is

 2   constitutionally permissible and it is de minimis as speech

 3   restrictions are permissible in federal antidiscrimination

 4   law.

 5            The object of the statute is three-fold.  First, it

 6   recommends to practitioners that they refrain from asking

 7   about firearm ownerships in most cases, but it does not

 8   prohibit it.  It reaffirms the patient's right to decline to

 9   answer.  And it prohibits discrimination.

10            THE COURT:  Was there anything that prohibited this

11   before?  What about prior practice of medical professionals

12   made the state think that somehow people weren't being --

13   receiving medical treatment or were being harassed by their

14   doctors because they were asked about firearms?

15            MR. VAIL:  Well, the Counsel for the plaintiffs has

16   mentioned the Ocala incident which the mother of a young child

17   went in for a well baby visit, was asked a screening question

18   by the physician about whether she owned firearms.  She

19   declined to answer the question.  She didn't want to reveal

20   that, as a matter of privacy, and the doctor basically fired

21   her as a patient.  Terminated the patient-doctor relationship

22   with her.  And that began the conversation in the legislature.

23   And they considered many different ways --

24            THE COURT:  But if that's the state's concern, that

25   people who answer a question or refuse to answer a question
```

1  are not going to have medical care available to them, this

2  statute doesn't prohibit that.

3      MR. VAIL:  Well, it doesn't prohibit the termination

4  of the relationship.  What it simply does is it reaffirms the

5  patient's right to decline to answer the question.  They

6  always have that right.  But the doctor-patient relationship

7  isn't necessarily one of equals.

8      THE COURT:  But now what you've done is -- oh, you've

9  made it one of equals because now you're saying in addition to

10  declining the question, you, the patient, can now haul the

11  lawyer (sic) up in front of the medical board.

12      MR. VAIL:  Well, in most cases.  The way the statute

13  is crafted --

14      THE COURT:  Let's look at the incident that you

15  describe in your brief.  If this individual was concerned

16  enough about he or she went to their state legislature and

17  managed to work hard enough to get a law passed, why wouldn't

18  this be the kind of individual subjectively that would take

19  his or her medical care professional in front of the state

20  board, causing that person possible loss of license,

21  insurance, ability to practice?

22      MR. VAIL:  Under the -- the legislature decided that

23  they didn't want to interfere with the rights of the

24  physicians to terminate the relationship with the patients if

25  there was a refusal to answer.

WEDNESDAY, JULY 13th, 2011

1          After much debate they decided they didn't want to do

2    that.  They wanted to craft a bill that took everybody's

3    interests into account and yet provide a protection for

4    patients who happen to own firearms from being discriminated

5    against in the medical setting, in the provision of medical

6    care.  That's what this statute is designed to do.

7          THE COURT:  So you may not have necessarily

8    restricted the ability of the individual health care

9    practitioner to speak, but you may have created consequences

10   so onerous that the health care professional chooses not to

11   speak, and isn't that the plaintiffs' argument?  By placing

12   this choice, this burden of saying I choose not to speak even

13   though you tell me I can, because the potential consequences

14   are so grave, I won't do it.

15         MR. VAIL:  Well, their fears have to be objectively

16   reasonable.  And if you read the statute and you understand

17   how it operates, their concerns about having their licenses

18   pulled or being subjected to disciplinary practices -- or

19   proceedings are not objectively reasonable.

20         This statute is carefully crafted so that it does not

21   interfere with the professional judgment of the practitioner.

22   As you noted, Your Honor, there are virtually no times when it

23   would be unreasonable for a practitioner somehow to answer the

24   question.  The standard is good faith.  It's a subjective

25   standard.  In order to subject the practitioner to discipline,

1   there would have to be a showing that that particular act by

2   the professional -- there was no likelihood that they acted in

3   good faith.  And that's so --

4           THE COURT:  Tell me why the rational basis test is

5   the appropriate analysis to use, as opposed to the strict

6   scrutiny test.

7           MR. VAIL:  Well, that's the test that was used in

8   *Locke*, and in the accountant's case, in *Wilson*, as well as

9   *Planned Parenthood v. Casey*, for example.

10          This is very similar to *Planned Parenthood v. Casey*.

11  In that case the physicians advocated a right not to speak

12  when a state statute required them to give certain

13  information.  The legislature mandated that they give that

14  information regardless of whether they wanted to or not.  And

15  the Supreme Court said that that was perfectly appropriate and

16  did not infringe upon their First Amendment rights.

17          Here we have the flip side of that.  We have simply

18  said -- if you read the statute at its most extreme -- and I'm

19  not saying this is how it's written, but this is how the

20  plaintiffs think it's written.  Even if it prohibited asking a

21  question about firearm ownership, that would be permissible

22  under *Casey*.  That's simply a fact that the legislature may

23  have said could not be obtained.

24          In fact, that particular prohibition is -- it's

25  common in federal antidiscrimination law.  You've got Title

1  VII, for example, where you've got hostile work environment

2  claims which are predicated, in part, often on speech.

3        THE COURT:  But that's a claim based upon telling a

4  person that they should not do something they should not be

5  doing in the first place, not a situation where you are

6  anticipating that the delivery of what could be positive

7  information for the benefit of the client can result in

8  disciplinary action against a speaker.

9        MR. VAIL:  Well, this -- assuming that it is a

10  prohibition, the prohibition against asking particular

11  questions is constitutionally permissible.  And you find it

12  embedded in federal antidiscrimination law.

13        For example, there is a -- I have a code section

14  here, C.F.R. code section, it's 29 C.F.R. 1604.7.  It deals

15  with sex discrimination in employment.

16        And the section says, in pertinent part, "Any

17  pre-employment inquiry in connection with the prospective

18  employment which expresses directly or indirectly any

19  limitation, specification, or discrimination as to sex shall

20  be unlawful unless based upon a bona fide occupational

21  qualification."

22        That particular section has been interpreted by the

23  Eighth Circuit, for one, as prohibiting questions about

24  pregnancy and child bearing in the employment context.  You

25  cannot ask a woman if she's pregnant.  You can't ask her about

1   child bearing questions.  You can't ask her if she plans to

2   have children.  The Eighth Circuit in *King v. Trans World*

3   *Airlines* considered that to be per se violation.

4           That's no different than the assumed effect of this

5   particular statute.  In the employment context, in the

6   workplace context, speech may be limited because it is through

7   speech that the professional delivers, in part, their services

8   to their patients.  Speech is behavior in that context.  And

9   because it is behavior, the courts have held that it could be

10  prohibited or curtailed in some way.

11          And here we have a very de minimis curtailment if it

12  is, in fact, a curtailment.  It's simply narrowly focused on

13  the gathering of a particular piece of information.  And yet

14  the way the statute is crafted, it does not prohibit the

15  firearms and safety conversation that the plaintiffs want to

16  have with their patients.

17          As you noted, Your Honor, in your questions, there

18  are many ways to get to that conversation.  And the patient

19  can have the conversation or not, and that's what the statute

20  is urging doctors to recognize, that the patients have a right

21  not to have this conversation.  That's all the statute's

22  really intended to do.

23          THE COURT:  Counsel, the plaintiffs make much of the

24  fact that the statute is overbroad and vague.  What would be

25  your arguments on that point?

1          MR. VAIL:  Well, as far as vagueness goes, I think

2    your questions pointed out very clearly that these terms that

3    are used in the statute are used all the time in law.  They

4    don't need to be defined.  Everyone knows what they mean.

5          The term "relevance" is understood by all lawyers and

6    all judges, and is easily understood by laymen, as well.

7          "Harass," itself, is a term that's commonly used.

8    There was a recent Eleventh Circuit case on harassment which

9    upheld the telephone -- federal telephone harassment statute.

10   That's *United States v. Eckhardt,* 466 F.3d 938.  And it said

11   that the telephone harassment statute provided sufficient

12   notices of its prohibitions because citizens need not guess

13   what terms such as "harass" and "intimidate" mean.

14         My colleagues have gone throughout U.S. code and

15   found at least 296 uses of the term "harass" and "harassment,"

16   so it's a commonly used term.

17         The same with discrimination.  I don't believe that

18   Title VII, for example, defines discrimination.  It simply

19   forbids it.  You have other discrimination statutes, as well

20   like the ADA, the rehabilitation act.  You have Florida

21   Statute 760 which prohibit discrimination in employment based

22   on race, color, religion.  And I think in our times, it's a

23   little odd to argue no one understands what discrimination

24   means.

25         The plaintiffs have argued that harassment or

WEDNESDAY, JULY 13th, 2011

1  discrimination is something in the eyes of the beholder.  I

2  think that's the question that has been confronted by the

3  federal courts, for example, in Title VII where the test is an

4  objective test.  You look at the facts and circumstances of

5  the behavior, say, in a hostile work environment claim and

6  determine whether the reasonable person would consider it to

7  be harassment, not the subjective feelings of the complainant.

8  And while the statute in question here does not specifically

9  call for such an interpretation, that is a perfectly plausible

10  one.  And I'm certain that the Florida courts would place such

11  an interpretation on the words as used in this statute.

12         As for overbreadth, this particular statute does not

13  reach a substantial amount of protected conduct, if at all, if

14  at all, when we don't --

15         THE COURT:  And -- but don't you think the issue and

16  what the -- what the plaintiffs are complaining of is that you

17  have chosen -- when I say "you," I'm meaning the royal you in

18  terms of the statute, not you personally -- that the statute

19  has chosen to single out a portion of a doctor's conversation

20  with a patient and to make that -- the potential of that

21  discussion the ability for this doctor to be facing

22  disciplinary proceedings?

23         MR. VAIL:  Well, the violation of practice acts --

24  the practice acts require physicians to do a lot of different

25  things.  That's so -- it would not potentially be unusual that

WEDNESDAY, JULY 13th, 2011

1  they would face professional discipline for the violation of

2  this statute.  But the way it's worded, it's intended to

3  provide the widest latitude possible to the professional

4  judgment of the medical practitioner.

5         As the -- for example, the interest of providing

6  information to children, asking the screening question to the

7  parents of children, we don't believe that would be

8  prohibited.  If that's what the plaintiffs want to do, if

9  that's what the associations recommend about the standard of

10  practice, I don't see how they do not have a good faith belief

11  that the question in that context is relevant.  And I do not

12  see how it would be relevant in most any other context.

13         THE COURT:  And how is that then communicated to the

14  disciplinary board such that you don't have the board thinking

15  that the doctor should be brought up on whatever is the

16  equivalent of charges for the board?

17         MR. VAIL:  Well, the board hasn't met to determine

18  how they want to interpret this statute.  When they do, I'm

19  sure we will discuss it.  The interpretation that we place

20  upon it in the attorney general's office.

21         THE COURT:  Do you think that given the fact that

22  there's been no actual board charges, and the board hasn't

23  promulgated any rules or guidance, that this lawsuit might be

24  premature?

25         MR. VAIL:  Well, I certainly think it is.  There are,

```
1    say -- there are certainly many different ways the board could
2    choose to interpret this statute.  Many of them which could be
3    constitutional.  And I think that if there is a problem with
4    their interpretation, it would have to come as applied
5    challenge, rather than as a facial challenge in this instance.
6            THE COURT:  Thank you, very much.
7            Let me hear a response from the plaintiff.
8            MR. HALLWARD-DRIEMEIER:  Thank you, very much, Your
9    Honor.  I think that there are a number of points I want to
10   make in response to defense counsel's argument.
11           And the first is, Your Honor asked the question about
12   the proper standard of scrutiny.  And I think that that really
13   does go directly to one of the critical issues here.
14           The Supreme Court has said that content-based and
15   certainly viewpoint-based restrictions on speech are
16   presumptively illegal and can only be sustained if they
17   satisfy the demanding requirements of strict scrutiny, a
18   compelling state interest, and no greater restriction on
19   speech than necessary to further that.
20           In the R.A.V. case, and again in the Sorrell case
21   last month, the Court confirmed that even speech that might in
22   other context be entitled to less first moment protection.  In
23   R.A.V., it was actually fighting words, which is otherwise not
24   protected at all under the First Amendment.  But where the
25   legislature singles out that speech because of its content and
```

WEDNESDAY, JULY 13th, 2011

1  viewpoint, that is presumptively illegal and subject to strict

2  scrutiny.

3       And because, similarly, this doctor's speech was

4  singled out because of its perceived viewpoint, it is subject

5  to that strict scrutiny.  And the state has not even attempted

6  to say that it satisfies that demanding test.

7       With respect to the professional speech cases, again,

8  I would call Your Honor's attention to Justice White's words

9  in his concurring opinion in the *Lowe* decision, in which he

10 says that the principle that the government may restrict entry

11 into professions and vocations through licensing schemes has

12 never been extended to encompassing the licensing of speech.

13      In other words, while the state may regulate who is

14 entitled to hold themselves out to practice a profession, once

15 they have been so licensed, the state cannot say, but don't

16 engage -- don't say that.  And we see a couple of Supreme

17 Court cases -- well, at least one Supreme Court case, but also

18 court of appeals cases that apply that in very analogous

19 circumstances to this case.

20      The *Velazquez* decision in which the court struck down

21 the restrictions on the speech that lawyers could engage in on

22 behalf of their clients that Congress had said that lawyers --

23 and that was even government-funded lawyers.  So there the

24 government probably had a lot greater latitude.  Here, we're

25 not talking about government-funded speech at all.  But even

1    in that context, the Court said that it was impermissible for

2    the legislature to single out and prohibit certain types of

3    speech.   In that case, it was a legal challenge to the welfare

4    laws.

5         In the *Conant* case, which is even more apropos to

6    this because it involved the speech between doctors and their

7    patients, the Ninth Circuit struck down a federal prohibition

8    on doctors counseling their patients with respect to the

9    possible medical benefits of marijuana use.

10        And that, again, the government tried to defend as

11   permissible regulation of the profession, that professionals

12   don't have as much right to speak.   And the Ninth Circuit

13   resoundingly rejected that.   They recognized the critical

14   importance of the honest and open dialogue between doctor and

15   patient and that the government could not limit that.

16        Even though, obviously, the government can restrict

17   entry into the profession there is no case that we are aware

18   of in which a powerful lobbying interest has been able to say

19   to doctors, just don't say that to your patients.   Or in this

20   case, don't start that discussion by asking the question to

21   determine whether it's a relevant subject of further

22   discussion.

23        If the Court were to uphold that, who knows what the

24   end is.   Is it the tobacco industry?   What other industries

25   that would lobby for similar prohibition?

1       THE COURT:  See, Counsel, what I'm hearing here is

2  not a constitutional nature of the statute, but how it came to

3  be.  And that may be something that some people may not like,

4  it just doesn't make it unconstitutional.

5       MR. VAIL:  In -- in the --

6       THE COURT:  And wait a minute.  Wait a minute.

7       There may be the case -- there may be the case that

8  some other group takes up a cause that might be an

9  unconstitutional -- and I haven't decided in this case,

10 obviously, that might be an unconstitutional intrusion on

11 speech.  But that alone, how it came to be in and of itself,

12 does not make it unconstitutional.

13      MR. HALLWARD-DRIEMEIER:  Well, there's no question

14 but that the statute singles out a particular class of

15 speakers and a particular -- speech of a particular content

16 for restriction.

17      Anyone else in the state of Florida can ask anyone

18 about their ownership or the presence of a gun in their home.

19 No one else is prohibited from doing so, only doctors.  And

20 they are only prohibited asking about this particular danger,

21 guns.  It is that content, that speech by that narrow group of

22 people, doctors, that are singled out for restriction.  And it

23 is precisely because of the content of that speech.

24      And it was -- and, again, it's in -- I mean, the

25 purpose of the legislation, as evident on its face, is to

1    prevent doctors from asking that question.

2          I wanted to go back to the structure of the statute

3    and whether the statute actually acts as a prohibition.

4    Because at one point I heard government counsel indicate that

5    subsection 2 is not a prohibition, but merely a

6    recommendation.

7          That cannot be squared with the language of the

8    statute.  The statute, although it employs the word "should,"

9    is clearly using that in a prescriptive manner.  Because --

10         THE COURT:  Where do you see that it's prescriptive?

11         MR. HALLWARD-DRIEMEIER:  Well, it's prescriptive

12   because if it were not prescriptive, the last sentence of

13   subsection 2 and the entirety of subsection 3 would be

14   superfluous.  Because the last sentence of subsection 2 and

15   the entirety of subsection 3 carve out exceptions to the

16   prohibition.

17         And so the last sentence of subsection 2 starts with

18   the words "notwithstanding this provision, a practitioner who

19   in good faith believes the information to be relevant may make

20   such a verbal or written inquiry."

21         And otherwise -- in other words, in the absence of

22   that belief in relevance to medical care, the doctor may not

23   make the inquiry.

24         And, likewise, with respect to subsection 3 --

25         THE COURT:  But how is that different from any other

1   thing related to the doctor-patient relationship?  Unless you

2   believe it's relevant to the patient's health care or the

3   safety of the patient or others, why would a doctor ask about

4   it?

5          MR. HALLWARD-DRIEMEIER:  And, again, our -- my

6   clients certainly believe that it is relevant to their

7   patient's care.  The problem is that the state has put, in the

8   eye of the beholder, the patient, because some patients may

9   regard this as intrusive and irrelevant, that those patients

10  can file complaints against my clients.

11         And, likewise --

12         THE COURT:  What about the state's argument -- I'm

13  interrupting, I know, but it is of a concern because this is

14  the end result that you say that makes this statute so bad for

15  your client.  What about the state's argument that this may

16  not be a facial constitutional attack, but an applied attack

17  based upon a particular doctor or health care facility?

18         MR. HALLWARD-DRIEMEIER:  Well, we know, Your Honor,

19  that the Board of Medicine has already taken certain steps to

20  render this provision enforceable against doctors.

21         At its meeting in June, the Board of Medicine

22  declared that it would be enforceable under the provisions

23  related to violation of a legal duty.

24         We also know that the Board of Medicine has sent out

25  a letter to all doctors in the state advising them that the

1   statute does prohibit the inquiry about gun ownership in

2   certain circumstances and that violation of that prohibition

3   is subject to discipline.

4        So there is a very real threat that violation of the

5   statute would be disciplined.  And we also know that the

6   disciplinary proceedings are triggered by complaints filed by

7   patients.  And we have declarations by our plaintiffs, our

8   clients, who indicate that given the hostile reaction that

9   they have had by some patients at just the perceived

10  effrontery of asking this question, that they are likely to be

11  brought before the Board of Medicine.  So we know that.

12       And we also know that this is ripe -- Your Honor

13  asked a question about ripeness at the end -- because the

14  plaintiffs are currently self-censoring.  And they're

15  self-censoring because they have a very reasonable and

16  objectively reasonable apprehension that the speech that they

17  engage in or would otherwise engage in would be prohibited

18  under the statute.

19       And, again, we know that the state's brief does

20  nothing to allay those concerns because the state's brief says

21  that precisely these types of routine inquiries are what the

22  statute was meant to prohibit.

23       THE COURT:  All right.  Thank you, Counsel.  Anyone

24  who wants to file any supplemental materials, I'm going to ask

25  that you do so by Tuesday, July 19th.  Tuesday, July 19.

WEDNESDAY, JULY 13th, 2011

1              Thank you, everyone.  Court's in recess until one

2    o'clock.

3         (Proceedings were adjourned at 11:24 a.m.)

4                            * * *

5              I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above matter.

7

8    Date: Thursday, July 14th, 2011

9

10                   s/ JUDITH M. SHELTON, CERTIFIED REALTIME REPORTER
                     Signature of Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**0**

**01 [1]** 2/2

**1**

**10:21 [1]** 1/5
**11-22026-CIV-COOKE [2]** 1/2 3/3
**1100 [1]** 1/19
**11:24 [1]** 45/3
**1225 [1]** 1/19
**12th [1]** 1/16
**13th [1]** 1/4
**1401 [1]** 1/22
**14th [1]** 45/8
**1523 [1]** 2/5
**1604.7 [1]** 33/14
**16th [1]** 1/24
**19 [1]** 44/25
**19th [1]** 44/25

**2**

**20005 [1]** 1/20
**20005-3948 [1]** 1/17
**20036 [1]** 2/5
**2011 [2]** 1/4 45/8
**29 [1]** 33/14
**296 [1]** 35/15

**3**

**30 [1]** 19/15
**305 [1]** 2/24
**32399 [1]** 2/3
**33128 [1]** 2/24
**33131 [2]** 1/24 1/25
**3948 [1]** 1/17

**4**

**400 [1]** 2/23
**466 [1]** 35/10

**5**

**523-5294 [1]** 2/24
**5294 [1]** 2/24
**54 [1]** 1/8

**7**

**700 [1]** 1/16
**701 [1]** 1/24
**760 [1]** 1/16
**790338 [1]** 11/20

**8**

**800 [1]** 1/22
**8N09 [1]** 2/23

**9**

**900 [1]** 1/16
**938 [1]** 35/10

**A**

**a.m [2]** 1/5 45/3
**AAG [1]** 2/2
**AAP [1]** 7/8
**ability [7]** 7/5 8/24 21/7 25/8 30/21 31/8 36/21
**able [6]** 9/23 14/19 20/18 27/9 27/18 40/18
**about [43]** 5/16 8/11 8/12 8/19 10/20 10/20 11/4 11/13 13/11 13/15 13/16 14/22 15/25 16/20 17/15 17/25 22/6 22/18 23/19 24/18 25/4 25/11 26/19 28/24 29/7 29/11 29/14 29/18 30/16 31/17 32/21 33/23 33/25 37/9 38/11 39/25 41/18 41/20 43/3 43/12 43/15 44/1 44/13

**above [3]** 19/5 21/15 45/6
**absence [1]** 42/21
**absent [1]** 41/6
**accepted [2]** 13/24 13/25
**access [2]** 6/8 6/10
**account [1]** 31/3
**accountant's [1]** 32/8
**acknowledges [1]** 22/2
**ACP [1]** 7/8
**across [1]** 8/24
**act [6]** 12/8 17/13 17/16 28/20 32/1 35/20
**Act's [1]** 12/6
**acted [1]** 32/2
**action [3]** 15/9 15/11 33/8
**active [1]** 7/23
**acts [3]** 36/23 36/24 42/3
**actual [2]** 14/2 37/22
**actually [3]** 25/16 38/23 42/3
**acute [1]** 14/10
**ADA [1]** 35/20
**addition [1]** 30/9
**adequate [1]** 8/24
**adjourned [1]** 45/3
**adopted [1]** 23/1
**advice [1]** 10/17
**advisers [1]** 6/3
**advising [1]** 43/25
**advocated [1]** 32/11
**AFFAIRS [1]** 2/1
**affect [2]** 8/23 25/8
**affected [1]** 7/20
**after [3]** 14/2 15/19 31/1
**again [11]** 15/18 16/14 18/20 24/4 24/9 38/20 39/7 40/10 41/24 43/5 44/19
**against [13]** 17/5 17/7 17/13 18/17 21/11 27/9 27/13 27/15 31/5 33/8 33/10 43/10 43/20
**agree [2]** 15/1 25/16
**agreement [1]** 10/10
**agrees [1]** 24/14
**ahead [1]** 27/7
**Airlines [1]** 34/3
**al [2]** 1/3 1/7
**all [17]** 3/25 6/6 9/4 25/11 27/19 27/19 29/1 34/21 35/3 35/5 35/6 36/13 36/14 38/24 39/25 43/25 44/23
**allay [1]** 44/20
**allowed [1]** 8/24
**alluded [1]** 10/18
**alone [1]** 41/11
**along [2]** 7/25 26/2
**already [2]** 16/6 43/19
**also [6]** 3/13 8/16 39/17 43/24 44/5 44/12
**alter [1]** 19/6
**although [1]** 42/8
**always [1]** 30/6
**Alzheimer's [1]** 24/23
**am [2]** 8/17 28/9
**AMA [2]** 7/8 10/19
**ambiguity [1]** 24/10
**amended [1]** 13/9
**Amendment [6]** 23/4 27/2 28/15 28/16 32/16 38/24
**Amicus [1]** 3/24
**ammunition [1]** 18/19
**among [1]** 23/20
**amount [1]** 36/13
**analogous [1]** 39/18
**analysis [1]** 32/5
**animated [1]** 12/8
**annoy [1]** 21/24
**annoying [1]** 22/1
**another [3]** 19/15 23/8 27/18

**answer [17]** 7/9 12/20 17/14 17/16 18/2 18/7 18/11 19/3 19/6 19/14 29/9 29/19 29/25 29/25 30/5 30/25 31/23
**anti [1]** 20/1
**anticipating [1]** 33/6
**antidiscrimination [5]** 19/23 23/16 29/3 32/25 33/12
**antigun [1]** 4/20
**antiharassment [3]** 19/23 20/1 23/15
**any [14]** 9/17 11/10 16/16 20/25 21/6 21/9 21/15 29/1 33/16 33/18 37/12 37/23 42/25 44/24
**anyone [3]** 41/17 41/17 44/23
**anything [5]** 15/6 16/22 22/6 27/23 29/10
**apologize [1]** 28/18
**appeals [1]** 39/18
**APPEARANCES [1]** 1/14
**appearing [2]** 3/7 3/20
**appears [1]** 26/15
**application [1]** 21/9
**applied [2]** 38/4 43/16
**apply [4]** 12/7 12/7 15/22 39/18
**apprehension [1]** 44/16
**appropriate [4]** 8/8 8/19 32/5 32/15
**apropos [1]** 40/5
**are [49]**
**areas [3]** 7/11 8/5 11/11
**argue [1]** 35/23
**argued [1]** 35/25
**arguing [1]** 4/2
**argument [5]** 23/6 31/11 38/10 43/12 43/15
**arguments [1]** 34/25
**arises [2]** 10/23 17/13
**around [1]** 13/20
**ask [17]** 11/5 13/15 14/19 15/13 15/25 17/5 17/23 17/24 17/25 25/2 27/7 33/25 33/25 34/1 41/17 43/3 44/24
**asked [8]** 7/9 13/3 20/19 26/3 29/14 29/17 38/11 44/13
**asking [18]** 7/12 7/17 9/6 10/16 10/20 11/16 13/3 15/24 20/9 28/24 29/6 32/20 33/10 37/6 40/20 41/20 42/1 44/10
**asks [1]** 12/16
**assert [1]** 13/14
**association [1]** 22/12
**associations [6]** 7/7 8/3 8/14 14/1 14/17 37/9
**assumed [4]** 18/24 18/24 19/16 34/4
**assuming [1]** 33/9
**ASTIGARRAGA [2]** 1/23 3/9
**attack [2]** 43/16 43/16
**attempted [1]** 39/5
**attention [2]** 15/6 39/8
**attorney [3]** 2/1 28/5 37/20
**authorization [1]** 19/7
**available [1]** 30/1
**Avenue [4]** 1/22 1/24 2/5 2/23
**avoid [1]** 14/4
**aware [1]** 40/17

**B**

**baby [1]** 29/17
**back [2]** 15/18 42/2
**bad [1]** 43/14
**based [10]** 5/12 5/13 9/1 18/17 33/3 33/20 35/21 38/14 38/15 43/17
**basically [1]** 29/20
**basis [8]** 18/7 18/11 19/3 19/13 28/20 32/4
**be [80]**
**bearing [2]** 33/24 34/1
**because [49]**

**B**

**bedside** [1] 14/15
**been** [14] 3/4 5/6 11/25 13/6 15/3 16/19 21/5 21/11 33/22 36/2 37/22 39/12 39/15 40/18
**before** [9] 1/11 4/16 7/4 7/8 14/8 21/5 27/23 29/11 44/11
**began** [1] 29/22
**behalf** [4] 3/7 3/20 28/5 39/22
**behavior** [3] 34/8 34/9 36/5
**behind** [1] 5/7
**beholder** [4] 26/16 27/20 36/1 43/8
**being** [5] 9/2 29/12 29/13 31/4 31/18
**belief** [2] 37/10 42/22
**believe** [7] 5/8 28/12 28/19 35/17 37/7 43/2 43/6
**believes** [3] 10/4 11/22 42/19
**below** [1] 12/8
**benefit** [1] 33/7
**benefits** [1] 40/9
**BERND** [1] 1/3
**between** [4] 22/24 23/22 40/6 40/14
**big** [1] 16/8
**bill** [1] 31/2
**bit** [1] 3/14
**board** [22] 8/25 15/11 17/5 17/9 20/16 20/20 20/22 21/1 21/5 30/11 30/20 37/14 37/14 37/16 37/17 37/22 37/22 38/1 43/19 43/21 43/24 44/11
**bona** [1] 33/20
**both** [1] 12/11
**boxes** [1] 12/21
**BRADY** [1] 1/18 3/17
**Brickell** [2] 1/22 1/24
**brief** [13] 4/10 4/13 4/17 12/1 12/3 15/7 17/3 19/10 20/7 25/25 30/15 44/19 44/20
**bring** [1] 20/16
**brochure** [3] 22/17 22/18 22/22
**brochures** [1] 22/8
**brought** [5] 4/12 10/23 21/5 37/15 44/11
**Bruce** [3] 1/16 3/13 3/16
**burden** [3] 5/9 5/20 31/12

**C**

**C.F.R** [2] 33/14 33/14
**call** [2] 36/9 39/8
**called** [1] 3/1
**came** [2] 41/2 41/11
**can** [17] 5/15 5/16 18/10 21/25 22/14 24/1 24/17 25/18 27/6 30/10 31/13 33/7 34/19 38/16 40/16 41/17 43/10
**can't** [6] 7/3 12/23 27/3 27/21 33/25 34/1
**cannot** [7] 13/3 17/6 17/19 27/2 33/25 39/15 42/7
**capacity** [1] 1/6
**Capitol** [1] 2/2
**captions** [1] 3/5
**captured** [1] 24/25
**care** [31] 8/24 9/16 9/20 10/4 10/5 10/13 10/15 10/16 10/18 11/2 11/23 12/22 18/16 19/18 20/17 22/7 22/13 24/8 24/12 25/10 25/15 25/23 30/1 30/19 31/6 31/8 31/10 42/22 43/2 43/7 43/17
**carefully** [1] 31/20
**caregiver** [1] 19/15
**carrying** [1] 6/14
**cars** [1] 11/10
**carve** [1] 42/15
**case** [24] 1/2 3/3 3/4 4/12 5/24 6/1 7/2 11/19 26/16 26/21 32/8 32/11 35/8

**cases** [11] 4/15 5/22 5/24 8/7 6/11 6/15 29/7 30/12 39/7 39/17 39/18
**Casey** [6] 6/20 6/21 6/22 32/9 32/10 32/22
**category** [1] 16/8
**cause** [1] 41/8
**caused** [1] 15/5
**causing** [1] 30/20
**cease** [4] 7/17 25/12 25/18 25/21
**ceased** [2] 7/14 7/15
**censor** [1] 26/18
**censoring** [5] 21/13 27/6 44/14 44/15
**CENTER** [2] 1/18 3/17
**certain** [6] 22/10 32/12 36/10 40/2 43/19 44/2
**certainly** [8] 17/22 25/17 26/1 27/3 37/25 38/1 38/15 43/6
**CERTIFIED** [1] 45/10
**certify** [1] 45/5
**challenge** [4] 4/12 38/5 38/5 40/3
**change** [3] 3/4 19/20 19/22
**chapter** [2] 9/17 18/16
**charge** [1] 27/9
**charged** [1] 17/4
**charges** [2] 37/16 37/22
**check** [1] 12/21
**child** [7] 11/5 11/10 12/16 14/12 29/16 33/24 34/1
**children** [13] 8/16 9/23 10/23 11/16 14/10 14/19 16/6 16/18 22/5 24/16 34/2 37/6 37/7
**chilling** [2] 23/13 27/6
**choice** [1] 31/12
**choose** [3] 19/7 31/12 38/2
**chooses** [1] 31/10
**chosen** [2] 36/17 36/19
**Circuit** [5] 5/25 33/23 34/2 35/8 40/7 40/12
**circumstances** [4] 22/25 36/4 39/19 44/2
**cites** [2] 12/13 20/2
**citing** [1] 17/21
**citizens** [1] 35/12
**CIV** [2] 1/2 3/3
**claim** [2] 33/3 36/5
**claims** [1] 33/2
**clarify** [2] 15/23 16/13
**class** [1] 41/14
**classes** [1] 8/9
**clear** [14] 6/6 6/15 9/12 12/3 13/8 16/16 17/20 18/10 19/4 19/10 19/11 20/8 21/4 26/17
**clearly** [5] 19/22 24/6 26/11 35/2 42/9
**client** [2] 33/7 43/15
**client's** [1] 8/24
**clients** [7] 10/9 17/7 24/14 39/22 43/6 43/10 44/8
**clients'** [1] 7/4
**closest** [1] 7/2
**co** [1] 3/9
**co-counsel** [1] 3/9
**code** [3] 33/13 33/14 35/14
**codified** [1] 18/12
**codifies** [1] 17/16
**codify** [1] 13/24
**cold** [1] 10/21
**colleagues** [1] 35/14
**color** [1] 35/22
**come** [5] 8/20 10/21 15/6 28/14 38/4
**comes** [1] 12/16
**comment** [1] 26/2
**comments** [1] 28/1
**committee** [2] 12/11 19/9

**common** [1] 32/25
**commonly** [2] 35/7 35/16
**communicated** [1] 39/5
**communicating** [1] 17/13
**communication** [4] 22/24 23/20 23/21 23/22
**communications** [1] 24/6
**community** [1] 22/13
**compelling** [1] 38/18
**complainant** [1] 36/7
**complained** [1] 16/15
**complaining** [1] 36/16
**complaint** [5] 13/9 20/16 20/17 21/11 27/13
**complaints** [3] 27/14 43/10 44/6
**component** [2] 13/15 16/1
**Conant** [1] 40/5
**concern** [5] 8/5 8/16 18/25 29/24 43/13
**concerned** [3] 22/18 26/19 30/15
**concerning** [2] 9/18 10/2
**concerns** [2] 31/17 44/20
**concurring** [2] 6/2 39/9
**conditions** [1] 26/5
**conduct** [4] 15/24 18/22 28/21 36/13
**confirm** [1] 6/7
**confirmed** [2] 6/3 38/21
**confirms** [3] 4/13 4/17 13/9
**confronted** [1] 36/2
**Congress** [1] 39/22
**connection** [1] 33/17
**consequences** [3] 21/10 31/9 31/13
**consider** [1] 36/6
**considered** [2] 29/23 34/3
**Consistent** [1] 8/12
**constitute** [1] 18/23
**constitutional** [8] 4/11 5/9 18/18 18/21 26/17 38/3 41/2 43/16
**constitutionally** [4] 21/14 23/3 29/2 33/11
**construction** [2] 16/25 17/3
**construe** [1] 11/24
**construed** [3] 11/18 14/25 15/2
**construes** [2] 9/5 13/4
**content** [8] 5/12 9/1 22/10 38/14 38/25 41/15 41/21 41/23
**content-based** [2] 9/1 38/14
**context** [9] 21/24 33/24 34/5 34/6 34/8 37/11 37/12 38/22 40/1
**continue** [2] 4/14 12/21
**continued** [1] 21/7
**contractual** [1] 19/11
**contribute** [1] 23/13
**conversation** [11] 7/5 25/12 25/18 25/21 27/3 29/22 34/15 34/18 34/19 34/21 36/19
**COOKE** [6] 1/2 1/11 3/3 8/11 8/17 8/18
**COOPER** [2] 2/4 3/24
**core** [1] 12/11
**correct** [7] 4/25 5/22 12/21 13/1 20/14 20/19 45/5
**could** [14] 7/3 12/2 15/15 21/5 21/6 22/19 25/3 32/23 33/6 34/9 38/1 38/2 39/21 40/15
**couldn't** [1] 18/5
**counsel** [12] 3/9 3/14 3/25 17/11 23/6 27/23 28/3 29/15 34/23 41/1 42/4 44/23
**counsel's** [1] 38/10
**counseling** [1] 40/8
**couple** [1] 39/16
**course** [2] 6/13 20/21
**court** [20] 1/1 2/23 3/1 4/9 12/1 17/6 21/24 26/17 26/21 27/1 32/15 38/14 38/21 39/17 39/17 39/18 39/20 40/1 40/23 45/10

**C**

courts [2] 4/5/1
courts [3] 34/9 36/3 36/10
craft [1] 31/2
crafted [4] 28/25 30/13 31/20 34/14
create [1] 5/9
created [1] 31/9
critical [6] 8/15 14/4 14/16 21/16 38/13 40/13
CRR [1] 2/22
currently [1] 44/14
curtailed [1] 34/10
curtailment [2] 34/11 34/12

**D**

danger [2] 8/14 41/20
dangerous [1] 26/4
dangers [1] 22/11
Daniel [2] 1/19 3/17
Date [1] 45/8
David [2] 2/4 3/23
DAVIS [2] 1/23 3/9
days [1] 19/15
DC [3] 1/17 1/20 2/5
de [2] 29/2 34/11
deals [1] 33/14
death [1] 27/15
debate [1] 31/1
decided [5] 25/20 25/23 30/22 31/1 41/9
decision [4] 6/7 19/6 39/9 39/20
declarations [5] 14/10 21/4 26/8 27/13 44/7
declare [1] 21/9
declared [1] 43/22
decline [6] 17/14 17/16 18/2 24/21 29/8 30/5
declined [1] 29/19
declining [2] 21/13 30/10
deemed [1] 20/10
deems [1] 18/1
defend [2] 26/22 40/10
defendant [3] 3/21 3/22 28/6
defendant's [1] 17/12
defendants [7] 1/8 2/1 5/22 11/19 17/5 27/24 28/3
defense [1] 38/10
define [1] 16/25
defined [2] 16/16 35/4
defines [1] 35/18
definition [1] 26/11
definitions [2] 20/2 20/12
delivering [1] 28/23
delivers [1] 34/7
delivery [1] 33/6
demanding [2] 38/17 39/6
dementia [1] 24/23
demonstrate [1] 27/14
Dennis [2] 1/21 3/19
DEPARTMENT [1] 2/1
describe [1] 30/15
described [4] 9/22 22/11 24/11 25/2
design [1] 5/25
designed [1] 31/6
detail [1] 14/11
detailers [1] 26/23
determine [4] 5/19 36/6 37/17 40/21
determined [1] 8/14
determining [1] 28/15
devastating [1] 15/17
developed [1] 25/7
dialogue [3] 6/13 12/24 40/14
did [4] 4/15 16/20 32/16
didn't [3] 29/19 30/23 31/1

different [11] 6/4 7/24 20/25 21/19 23/7 28/7 29/23 34/4 36/24 38/14 42/25
directly [2] 33/18 38/13
disagree [2] 5/1 5/16
disagreed [2] 4/19 5/3
discern [1] 28/10
disciplinary [9] 12/6 15/9 15/11 20/20 31/18 33/8 36/22 37/14 44/6
discipline [7] 4/14 15/14 15/16 21/1 31/25 37/1 44/3
disciplined [1] 44/5
disclose [1] 11/5
disclosed [1] 9/17
discriminate [2] 18/17 21/20
discriminated [1] 31/4
discrimination [13] 18/22 18/23 19/2 20/23 29/9 33/15 33/19 35/17 35/18 35/19 35/21 35/23 36/1
discriminatory [4] 4/18 5/4 5/8
discuss [3] 13/13 26/8 37/19
discussed [1] 12/8
discusses [1] 12/9
discussing [3] 11/25 13/7 26/23
discussion [9] 7/11 13/11 22/4 22/16 23/24 27/5 36/21 40/20 40/22
discussions [1] 11/14 25/4
dispel [1] 26/1
distinct [1] 6/21
distributions [1] 22/14
DISTRICT [3] 1/1 1/1 1/12
do [29] 6/9 6/11 7/3 7/3 8/3 8/9 8/10 9/23 12/16 18/5 21/18 22/19 24/2 25/9 25/12 27/7 31/1 31/6 31/14 33/4 34/22 36/24 37/8 37/10 37/11 37/18 37/21 42/10 44/25
Doc [1] 25/11
doctor [36] 7/11 7/17 8/6 10/25 11/22 12/16 15/12 15/17 16/10 17/24 17/25 18/2 18/5 18/5 18/10 18/10 19/2 19/12 19/14 20/5 20/21 21/6 22/24 23/22 25/18 27/7 29/20 29/21 30/6 36/21 37/15 40/14 42/22 43/1 43/3 43/17
doctor's [7] 10/15 14/5 21/3 23/17 23/20 36/19 39/3
doctor-patient [5] 18/5 18/10 19/2 30/6 43/1
doctors [25] 5/1 6/23 6/25 7/14 8/3 11/11 14/16 16/3 21/12 23/21 25/1 26/24 26/24 27/11 27/22 29/14 34/20 40/6 40/8 40/19 41/19 41/22 42/1 43/20 43/25
doctors' [2] 4/19 5/3
doctrine [1] 6/3
does [25] 5/7 6/6 8/23 11/3 11/9 11/24 15/6 17/22 19/6 20/9 22/23 26/1 28/14 28/22 28/23 29/7 30/4 31/20 34/14 36/8 36/12 38/13 41/12 44/1 44/19
doesn't [8] 4/24 12/20 18/15 18/21 24/7 30/2 30/3 41/4
doing [5] 7/15 16/4 16/10 33/5 41/19
don't [24] 3/15 4/23 13/1 14/18 16/21 16/24 19/22 22/15 23/25 25/11 25/16 25/23 35/4 35/17 36/14 36/15 37/7 37/10 37/14 39/15 39/16 40/12 40/19 40/20
done [1] 30/8
Doug [2] 3/11 4/4
Douglas [1] 1/15
down [2] 39/20 40/7
DR [1] 1/3
Dr. [1] 22/18
Dr. Smith [1] 22/18
Driemeier [3] 1/15 3/12 4/5
duty [1] 43/23

**E**

eager [1] 27/4
ears [1] 3/14
easily [1] 35/6
eat [1] 8/1
Eckhardt [1] 35/10
Ed [1] 3/8
educating [1] 13/16
Edward [1] 1/24
effect [3] 23/13 27/6 34/4
effective [2] 22/23 23/5
effects [1] 21/6
effrontery [1] 44/10
Eighth [2] 33/23 34/2
Eleventh [2] 5/25 35/8
else [3] 27/23 41/17 41/19
elucidating [1] 28/18
embedded [1] 33/12
employment [6] 33/15 33/17 33/18 33/24 34/5 35/21
employs [1] 42/8
enacted [2] 4/18 5/2
enactment [3] 4/16 7/9 9/9
encompassing [2] 11/24 39/12
end [3] 40/24 43/14 44/13
enforce [1] 17/6
enforceable [2] 43/20 43/22
enforcing [2] 17/4 20/13
engage [15] 4/15 4/16 6/13 8/9 9/12 12/23 21/13 22/15 23/24 24/19 25/4 39/16 39/21 44/17 44/17
engaged [2] 5/18 15/24
engaging [4] 4/14 6/25 13/19 14/23
enough [2] 30/16 30/17
ensure [2] 6/8 10/25
ensuring [1] 22/4
enter [1] 9/17
entirety [2] 42/13 42/15
entitled [2] 38/22 39/14
entity [1] 17/4
entry [3] 6/11 39/10 40/17
enumerate [1] 20/18
environment [2] 33/1 36/5
environmental [1] 13/16
equals [2] 30/7 30/9
equivalent [2] 27/15 37/16
especially [2] 8/16 23/1
Esq [6] 1/15 1/16 1/19 1/21 1/24 2/4
establish [1] 17/23
et [2] 1/3 1/7
even [13] 15/16 17/23 17/24 21/4 23/22 31/12 32/20 38/21 39/5 39/23 39/25 40/5 40/16
every [1] 24/11
everybody's [1] 31/2
everyone [2] 35/4 45/1
everything [1] 8/9
evident [1] 41/25
evidentiary [2] 1/11 3/2
exactly [1] 4/25
example [9] 20/2 23/8 25/8 32/9 33/1 33/13 35/18 36/3 37/5
exception [2] 11/21 11/24
exceptions [3] 7/16 7/19 42/15
Excuse [1] 4/22
exercise [2] 17/14 18/18
existing [1] 19/6
expose [1] 15/8
exposed [1] 11/1
exposing [1] 16/9
expresses [1] 33/18
extended [1] 39/12
extent [1] 23/12
extreme [1] 32/18

## E

**extremely [1]** 28/4
**eye [4]** 1/19 26/16 27/19 43/8
**eyes [1]** 36/1

## F

**F.3d [1]** 35/10
**face [2]** 37/1 41/25
**facial [2]** 38/5 43/16
**facility [3]** 15/9 15/12 43/17
**facing [1]** 36/21
**fact [12]** 5/1 5/2 11/9 18/9 21/4 26/7 27/17 32/22 32/24 34/12 34/24 37/21
**facts [1]** 36/4
**failings [1]** 18/21
**fairly [1]** 26/9
**faith [6]** 10/4 11/22 31/24 32/3 37/10 42/19
**fall [1]** 16/7
**far [1]** 35/1
**FARMER [1]** 1/6
**fashion [1]** 23/5
**fast [1]** 3/15
**fear [2]** 4/14 27/14
**fears [1]** 31/15
**federal [6]** 29/3 32/25 33/12 35/9 36/3 40/7
**feelings [1]** 36/7
**fide [1]** 33/20
**fighting [1]** 38/23
**file [2]** 43/10 44/24
**filed [3]** 21/11 27/13 44/6
**find [6]** 8/5 13/12 19/15 22/4 27/5 33/11
**finds [1]** 27/8
**firearm [15]** 8/8 8/15 8/19 9/18 10/3 13/11 13/11 13/15 15/25 17/15 17/25 28/23 28/24 29/7 32/21
**firearms [13]** 11/17 14/6 14/9 18/19 22/11 25/4 25/9 25/9 26/3 29/14 29/18 31/4 34/15
**fired [1]** 29/20
**firm [2]** 3/9 3/12
**first [16]** 4/1 6/6 7/6 8/4 9/3 13/2 23/4 27/2 28/15 28/16 29/5 32/16 33/5 38/11 38/22 38/24
**FL [4]** 1/22 1/25 2/3 2/24
**flip [1]** 35/17
**Floor [1]** 1/24
**FLORIDA [8]** 1/1 1/5 1/7 5/9 19/17 35/20 36/10 41/17
**flu [1]** 8/11
**focus [1]** 11/12
**focused [1]** 34/12
**fold [1]** 29/5
**follow [2]** 26/2 26/9
**follow-up [2]** 26/2 26/9
**following [1]** 12/9
**forbids [1]** 35/19
**force [1]** 25/18
**foregoing [1]** 45/5
**foremost [1]** 7/6
**form [1]** 24/23
**forward [1]** 4/6
**found [3]** 14/12 26/24 35/15
**FRANK [1]** 1/6
**free [3]** 17/23 18/2 19/12
**front [3]** 20/19 30/11 30/19
**funded [2]** 39/23 39/25
**further [2]** 38/19 40/21
**future [1]** 23/20

## G

**gathering [1]** 34/13

**gave [4]** 9/8 15/20 15/22 18/25
**general [3]** 1/7 2/1 7/25
**general's [2]** 28/3 37/20
**get [5]** 23/16 24/9 27/18 30/17 34/18
**getting [1]** 21/6
**give [4]** 8/24 11/3 32/12 32/13
**given [9]** 7/16 9/1 17/1 17/4 22/10 22/14 25/13 37/21 44/8
**gives [2]** 19/14 22/3
**go [9]** 3/5 5/15 9/10 9/25 14/11 15/18 27/7 38/13 42/2
**goes [4]** 3/6 10/25 12/20 35/1
**going [8]** 4/1 11/3 11/5 11/7 25/7 27/9 30/1 44/24
**gone [1]** 35/14
**good [9]** 3/23 4/8 10/4 11/22 28/4 31/24 32/3 37/10 42/19
**got [2]** 32/25 33/1
**government [12]** 15/19 15/20 16/12 16/13 39/10 39/23 39/24 39/25 40/10 40/15 40/16 42/4
**government's [3]** 4/13 12/1 12/3
**government-funded [2]** 39/23 39/25
**grave [1]** 31/14
**GRAY [3]** 1/15 3/12 3/16
**greater [2]** 38/18 39/24
**GROSSMAN [1]** 1/23
**group [4]** 22/8 22/12 41/8 41/21
**guess [1]** 35/12
**guidance [2]** 21/15 37/23
**gun [12]** 1/18 3/18 7/13 7/23 8/12 10/21 12/16 14/12 22/8 22/18 41/18 44/1
**guns [3]** 8/1 9/24 41/21

## H

**habit [1]** 26/24
**had [5]** 7/8 10/21 39/22 39/24 44/9
**Hallward [3]** 1/15 3/12 4/5
**Hallward-Driemeier [1]** 1/15 3/12 4/5
**Hampshire [1]** 2/5
**handing [1]** 22/22
**handle [1]** 25/8
**handling [1]** 25/4
**happen [1]** 9/15 31/4
**harass [1]** 35/7 35/13 35/15
**harassed [1]** 29/13
**harassing [4]** 20/8 23/18 26/25 27/20
**harassment [17]** 20/3 20/4 20/4 20/5 20/10 20/11 20/23 21/20 26/7 26/11 26/15 35/8 35/9 35/11 35/15 35/25 36/7
**hard [1]** 30/17
**harm [3]** 22/10 27/16 27/17
**harmful [1]** 11/5
**has [22]** 7/18 14/2 15/20 17/9 18/2 20/22 21/24 22/17 25/20 25/22 26/18 29/15 33/22 36/2 36/19 38/14 39/5 39/11 40/18 43/7 43/19 43/24
**hasn't [2]** 37/17 37/22
**haul [1]** 30/10
**have [67]**
**haven't [1]** 41/9
**having [2]** 21/11 31/17
**hazards [1]** 13/16
**he [5]** 7/18 25/2 25/21 30/16 39/9
**heads [1]** 21/15
**health [13]** 7/20 9/16 10/4 14/15 18/16 19/18 20/17 22/7 24/24 31/8 31/10 43/2 43/17
**hear [4]** 3/15 24/14 27/23 38/7
**heard [1]** 42/4
**hearer [2]** 25/14 26/2
**hearer's [1]** 26/13
**hearing [4]** 1/11 3/3 24/2 41/1

**heart [1]** 14/11
**heart-wrenching [1]** 14/11
**heartened [1]** 24/13
**held [2]** 21/24 34/9
**help [1]** 7/10
**helpful [1]** 22/4
**her [12]** 7/5 19/7 20/18 22/9 25/15 27/12 27/13 29/21 29/22 30/19 33/25 34/1
**here [14]** 3/9 6/5 6/19 7/1 8/12 22/2 23/15 32/17 33/14 34/11 36/8 38/13 39/24 41/1
**hey [2]** 22/14 22/17
**hi [1]** 8/10
**his [8]** 1/6 7/5 19/7 20/18 22/8 25/15 30/19 39/9
**history [3]** 9/10 12/11 19/9
**hold [1]** 39/14
**holding [1]** 21/14
**home [6]** 7/13 8/15 12/17 22/15 25/9 41/18
**honest [1]** 40/14
**Honor [39]** 3/8 3/11 3/13 3/22 3/23 4/4 4/8 5/1 5/21 6/22 8/13 9/3 10/8 10/18 10/22 11/21 13/1 13/22 14/7 14/21 15/19 17/2 17/18 18/4 18/20 21/4 22/20 24/14 25/17 26/14 28/2 28/4 28/19 31/22 34/17 38/9 38/11 43/18 44/12
**Honor's [1]** 39/8
**HONORABLE [1]** 1/11
**hope [1]** 27/25
**host [1]** 14/8
**hostile [4]** 26/9 33/1 36/5 44/8
**how [20]** 8/1 8/1 11/6 11/16 12/3 20/25 23/6 23/10 23/25 26/19 31/17 32/19 32/19 37/10 37/12 37/13 37/18 41/2 41/11 42/25
**however [2]** 11/24 14/9
**hunting [1]** 25/5

## I

**I'll [2]** 3/5 15/18
**I'm [20]** 3/9 3/23 4/1 8/10 8/11 9/15 15/10 17/11 22/10 22/18 24/13 25/7 25/20 32/18 36/10 36/17 37/18 41/1 43/12 44/24
**I've [1]** 25/7
**idea [2]** 5/6 20/22
**identify [1]** 7/10
**illegal [2]** 38/16 39/1
**immediately [1]** 19/5
**impact [1]** 29/1
**impairments [1]** 25/3
**impermissible [3]** 5/5 23/3 40/1
**importance [1]** 40/14
**Importantly [1]** 5/24
**improperly [1]** 8/15
**IMS [1]** 26/22
**inapplicable [1]** 6/4
**incident [5]** 9/11 12/13 18/25 29/16 30/14
**incidental [1]** 6/17
**incidents [7]** 9/8 12/10 13/10 15/5 15/19 15/22 26/8
**include [2]** 11/9 13/5
**included [1]** 7/12
**including [5]** 5/24 11/9 15/24 18/13 23/22
**inconsistent [1]** 20/3
**incorrect [1]** 15/10
**indicate [2]** 42/4 44/8
**indirectly [1]** 33/18
**indistinguishable [1]** 12/15
**individual [3]** 30/15 30/18 31/8

**I**

individuals [1] 8/1
industries [1] 40/24
industry [1] 5/14 40/24
infirmity [1] 26/18
inform [1] 23/12
information [18] 6/24 9/17 9/19 9/22
10/5 11/4 17/13 22/10 23/19 24/5
25/13 25/24 32/13 32/14 33/7 34/13
37/6 42/19
infringe [1] 32/16
initial [3] 5/6 8/20 9/6
initially [1] 20/15
injunction [2] 4/2 4/11
injury [1] 14/2
inquire [1] 11/11
inquiries [4] 20/8 22/3 23/18 44/21
inquiry [15] 10/2 10/7 10/10 11/25 12/4
12/15 12/20 23/23 24/19 26/10 27/3
33/17 42/20 42/23 44/1
instance [1] 38/5
instances [1] 12/14
instead [1] 14/13
insurance [3] 21/10 23/9 30/21
intended [11] 9/7 12/6 12/7 13/18 16/2
16/17 19/22 19/25 20/5 34/22 37/2
intent [1] 5/8
intentionally [1] 9/17
interest [3] 37/5 38/18 40/18
interesting [1] 23/9
interestingly [1] 13/23
interests [1] 31/3
interfere [2] 30/23 31/21
interior [1] 5/25
interpret [2] 37/18 38/2
interpretation [4] 36/9 36/11 37/19
38/4
interpreted [1] 33/22
interrupting [1] 43/13
intimidate [1] 35/13
introduce [1] 3/10
intrusion [1] 41/10
intrusive [2] 13/12 43/9
investment [1] 6/3
involved [1] 40/6
irrelevant [1] 43/9
is [163]
isn't [1] 3/6 30/7 31/11
issue [4] 8/12 21/1 28/19 36/15
issues [2] 7/21 38/13
it [113]
it's [40] 5/1 5/2 5/12 5/12 8/8 9/12
10/12 10/14 11/2 11/19 12/3 13/17
13/20 14/13 15/4 15/14 16/16 17/1
19/4 19/22 24/8 27/19 27/20 28/13
28/13 31/24 32/19 32/20 32/24 33/14
34/12 35/16 35/22 37/3 37/2 40/21
41/24 42/10 42/11 43/2
its [14] 9/8 13/2 16/15 17/1 20/7 23/15
25/25 26/22 32/18 35/12 38/25 39/4
41/25 43/21
itself [4] 5/20 21/12 35/7 41/11

**J**

Jason [3] 2/2 3/22 28/4
job [3] 21/6 21/10 27/18
Jones [1] 25/6
JUDGE [2] 1/12 3/2
judges [1] 35/6
judgment [2] 31/21 37/4
Judith [2] 2/22 45/10
judy [1] 2/25
July [4] 1/4 44/25 44/25 45/8
June [1] 43/21

**K**

just [16] 3/5 4/23 7/25 9/22 11/25 12/2
14/2 21/7 21/21 22/8 22/23 26/21
27/1 40/19 41/4 44/5

Justice [3] 6/2 6/6 39/8
justification [1] 27/2

**K**

Kahn [1] 26/16
KAINEN [4] 1/21 1/21 3/19 3/19
kept [1] 14/12
key [1] 9/24
kill [1] 14/14
kind [7] 7/18 9/8 9/13 10/17 18/22
18/22 30/18
King [1] 34/2
KIRK [2] 2/4 3/24
knell [1] 27/15
know [14] 5/10 5/15 8/1 10/17 19/22
22/19 23/14 43/13 43/18 43/24 44/5
44/11 44/12 44/19
knows [3] 9/19 35/4 40/23

**L**

language [3] 17/19 24/1 42/7
last [6] 19/5 26/21 38/21 42/12 42/14
42/17
latitude [2] 37/3 39/24
law [19] 3/8 3/12 4/16 4/17 5/2 5/2 7/9
7/16 9/7 12/19 17/4 17/10 19/6 19/20
29/4 30/17 32/25 33/12 35/3
law's [1] 26/12
laws [1] 40/4
lawsuit [1] 37/23
lawyer [1] 30/11
lawyers [4] 35/5 39/21 39/22 39/23
laymen [1] 35/6
lead [1] 15/15
least [3] 19/14 35/15 39/17
leave [1] 21/25
legal [5] 1/18 2/1 21/8 40/3 43/23
legislation [7] 5/11 5/19 15/20 15/23
20/14 23/7 41/25
legislative [4] 9/10 12/10 19/9 24/2
legislators [3] 4/19 9/11 16/17
legislature [10] 5/7 5/9 6/22 29/2
30/16 30/22 32/13 32/22 38/25 40/2
legislature's [1] 18/25
less [2] 23/5 38/22
Let [1] 38/7
let's [3] 5/15 9/4 30/14
letter [1] 43/25
license [4] 15/15 27/10 27/13 30/20
licensed [3] 9/16 18/16 39/15
licenses [2] 27/15 31/17
licensing [4] 28/8 28/14 39/11 39/12
light [1] 18/24
like [5] 4/23 23/21 25/5 35/20 41/3
likelihood [1] 32/2
likely [1] 44/10
likewise [7] 6/15 18/24 19/10 22/2
23/12 42/24 43/11
limit [1] 40/15
limitation [1] 33/19
limited [1] 34/6
lines [1] 26/2
listen [1] 25/11
listener [3] 22/1 26/19 27/21
little [2] 3/14 35/23
LLP [1] 1/15
loaded [1] 14/12
lobby [3] 22/9 22/22 40/25
lobbying [1] 40/18
lock [1] 22/9
Locke [3] 5/24 6/7 32/8
locks [1] 22/19

long [1] 19/14
longer [1] 25/14
look [2] 30/14 36/4
looking [2] 9/15 17/11
loss [2] 15/15 30/20
lot [2] 36/24 39/24
Lowe [2] 6/1 39/9
lower [2] 28/9 28/10

**M**

made [4] 6/6 6/15 29/12 30/9
major [1] 24/15
make [16] 4/24 6/4 7/22 9/4 10/6 19/10
21/4 21/10 27/9 34/23 36/20 38/10
41/4 41/12 42/19 42/23
makes [6] 17/20 18/9 19/4 19/11 26/17
43/14
making [4] 10/2 14/3 15/25 20/8
managed [1] 30/17
mandated [1] 32/13
Manheim [3] 1/16 3/13 3/16
manner [1] 42/9
many [8] 7/14 8/1 8/1 12/14 24/18
29/23 34/18 38/1 38/2
MARCIA [3] 1/11 8/10 8/17
marijuana [1] 40/9
marketing [1] 26/23
materials [1] 44/24
matter [3] 21/8 29/20 45/6
may [31] 3/25 4/9 5/6 6/7 6/12 9/17
10/6 15/3 15/5 16/19 18/16 21/1 24/20
25/8 26/6 27/4 27/5 31/7 31/9 32/22
34/6 39/10 39/13 41/3 41/3 41/7 41/7
42/19 42/22 43/8 43/15
maybe [3] 13/20 13/21 24/23
me [8] 4/22 10/20 15/2 16/3 24/12
31/13 32/4 38/7
mean [6] 11/3 21/16 24/1 35/4 35/13
41/24
meaning [4] 8/8 17/1 21/22 36/17
means [2] 23/5 35/24
meant [4] 7/10 13/24 23/16 44/22
meat [1] 8/1
medical [29] 5/13 8/10 8/14 8/24 9/18
9/20 10/5 10/13 10/15 10/16 10/18
11/23 12/22 14/1 14/17 15/11 22/13
24/8 25/15 29/11 29/13 30/1 30/11
30/19 31/5 31/5 37/4 40/9 42/22
medicine [13] 8/4 10/15 13/6 13/18
14/1 14/3 16/1 17/5 17/9 43/19 43/21
43/24 44/11
meeting [1] 43/21
member [1] 24/18
mental [2] 7/20 24/24
mentioned [2] 14/7 29/16
merely [2] 6/17 42/5
message [1] 28/23
met [1] 37/17
Miami [5] 1/5 1/22 1/25 2/23 2/24
microphone [1] 4/7
might [9] 7/21 9/15 11/4 26/19 28/11
37/23 38/21 41/8 41/10
minds [1] 5/16
minimis [2] 29/2 34/11
minor [1] 11/16
minute [2] 41/6 41/6
mobility [1] 25/3
moment [2] 3/5 38/22
month [1] 26/22 38/21
more [1] 40/5
morning [4] 3/3 3/23 4/8 28/4
most [4] 29/7 30/12 32/18 37/12
mother [2] 27/11 29/16
motion [2] 4/2 4/11
Mr. [1] 25/6

## M

Mr. Jones [1] 25/6
Ms. [1] 8/18
Ms. Cooke [1] 8/18
msn.com [1] 2/25
much [5] 31/1 34/23 38/6 38/8 40/12
MULLINS [3] 1/23 1/24 3/8
must [3] 6/16 6/16 22/12
my [11] 3/14 4/21 8/11 10/9 10/21 24/14 24/14 27/11 35/14 43/5 43/10

## N

narrow [1] 41/21
narrowly [1] 34/12
national [1] 7/7 8/3 13/25 14/17
nature [1] 41/2
necessarily [3] 27/18 30/7 31/7
necessary [1] 38/19
need [3] 5/19 35/4 35/12
never [1] 39/12
new [2] 2/5 21/10
next [2] 13/13 13/14
Ninth [2] 40/7 40/12
no [16] 1/2 7/17 10/12 10/22 25/14 25/20 26/14 31/22 32/2 34/4 35/23 37/22 38/18 40/17 41/13 41/19
nonmisleading [2] 6/23 6/25
not [82]
notably [1] 18/4
noted [4] 11/21 28/22 31/22 34/17
nothing [2] 26/1 44/20
notices [1] 35/12
notwithstanding [1] 10/3 42/18
now [7] 7/3 7/24 18/4 19/17 30/8 30/9 30/10
nowhere [1] 19/24
NRA [1] 3/24
number [3] 3/3 11/11 38/9
nurse [1] 27/12
NW [3] 1/16 1/19 2/5

## O

o'clock [1] 45/2
object [1] 29/5
objective [1] 36/4
objectively [3] 31/15 31/19 44/16
objects [2] 12/17 12/19
obtained [1] 32/23
obviously [2] 40/16 41/10
Ocala [4] 9/11 12/13 18/24 29/16
occasions [1] 18/13
occupational [1] 33/20
occur [1] 13/10
occurred [1] 14/3
odd [1] 35/23
offensive [2] 27/5 27/9
office [3] 2/1 28/5 37/20
official [2] 1/6 2/23
often [1] 33/2
oh [1] 30/8
Okay [2] 3/20 28/3
old [2] 8/18 8/18
older [1] 24/20
once [1] 39/14
one [22] 8/9 9/15 16/14 18/4 18/20 18/25 20/7 21/4 23/9 23/19 24/15 25/1 30/7 30/9 33/23 35/23 36/10 38/13 39/17 41/19 42/4 45/1
onerous [1] 31/10
ones [1] 9/25
only [12] 6/17 12/6 12/21 13/24 14/6 17/12 17/20 18/8 24/7 38/16 41/19 41/20
open [1] 40/14

operates [1] 31/17
opinion [2] 6/2 39/9
opportunity [2] 23/24 28/1
opposed [1] 32/5
opposition [1] 4/10
order [5] 3/1 10/17 11/11 17/6 31/25
ordered [1] 23/7
ordering [1] 22/7
ordinary [2] 17/1 21/22
organizations [1] 24/19
other [20] 6/17 9/25 10/24 13/20 15/10 15/11 15/16 20/11 20/25 21/6 21/19 24/18 35/19 37/12 38/22 39/13 40/24 41/8 42/21 42/25
others [8] 8/16 9/11 9/21 10/6 12/14 13/12 24/18 43/3
otherwise [3] 38/23 42/21 44/17
our [10] 3/2 3/5 17/7 17/7 25/17 27/14 35/22 43/5 44/7 44/7
out [18] 6/14 8/5 13/25 16/5 19/24 20/24 21/23 26/7 35/2 36/19 38/25 39/4 39/14 40/2 41/14 41/22 42/15 43/24
outset [1] 12/5 16/15
overbreadth [1] 36/12
overbroad [2] 13/21 34/24
own [6] 4/10 8/1 18/18 19/10 23/20 31/4
owned [1] 29/18
ownership [11] 9/18 10/3 13/11 13/15 16/1 17/15 18/1 28/24 32/21 41/18 44/1
ownerships [1] 29/7

## P

page [12] 9/4 12/5 12/18 13/8 15/4 15/18 15/23 16/12 17/11 18/13 18/14 19/11
pages [2] 1/8 12/2
pamphlets [1] 22/13
pantheon [1] 28/15
papers [2] 28/7 28/10
paragraph [11] 9/15 13/13 16/7 16/12 17/21 17/22 18/15 23/10 23/11 23/12 24/1
paragraphs [3] 12/9 23/8 23/10
paramedic [1] 7/22
parent [6] 9/22 11/16 14/19 22/17 24/16 24/22
Parenthood [2] 32/9 32/10
parents [3] 22/14 22/14 37/7
Parkinson's [1] 25/8
part [8] 9/6 10/15 15/4 16/22 19/21 33/2 33/16 34/7
particular [13] 12/13 32/1 32/24 33/10 33/22 34/5 34/13 36/12 41/14 41/15 41/15 41/20 43/17
particularly [1] 14/9
passage [1] 12/8
passed [1] 30/17
patient [32] 7/5 7/12 11/1 12/15 12/17 12/19 18/1 18/5 18/10 18/17 19/2 19/13 20/5 22/9 22/24 23/22 23/23 23/23 24/12 25/20 25/22 27/8 29/21 29/21 30/6 30/10 34/18 36/20 40/15 43/1 43/3 43/8
patient's [13] 9/18 9/20 10/1 10/5 18/17 19/6 22/25 25/10 26/13 29/8 30/5 43/2 43/8
patient-doctor [1] 29/21
patients [35] 4/18 6/24 7/9 7/12 8/5 10/23 13/10 13/16 14/3 14/16 16/8 17/8 17/14 17/16 19/8 20/14 20/15 22/3 22/4 24/14 24/20 26/7 26/8 30/24 31/4 34/8 34/16 34/20 40/7 40/8 40/19

43/8 43/9 44/7 44/9
pediatric [1] 22/11
people [7] 3/15 16/4 27/5 29/12 29/25 41/3 41/22
per [1] 34/3
perceived [5] 20/4 23/3 26/6 39/4 44/9
perception [2] 22/1 26/2
perfectly [2] 32/15 36/9
perhaps [2] 16/12 21/8
peril [1] 27/8
period [1] 19/15
permissible [9] 5/23 9/25 19/17 27/1 29/2 29/3 32/21 33/11 40/11
permit [1] 17/24
permits [1] 17/25
person [9] 3/15 9/24 12/23 20/13 25/10 25/13 30/20 33/4 36/6
person's [1] 7/20
personally [1] 36/18
pertinent [1] 33/16
pharmaceutical [1] 26/23
physician [1] 29/18
physician's [1] 19/7
physicians [3] 30/24 32/11 36/24
pick [2] 22/9 22/22
picked [1] 22/18
piece [1] 34/13
PL [1] 2/2
PL-01 [1] 2/2
place [2] 33/5 36/10 37/19
placing [1] 31/11
plaintiff [4] 3/7 4/3 17/23 38/7
plaintiffs [23] 1/4 1/15 4/1 4/12 4/13 7/8 9/12 13/14 13/19 14/11 15/24 24/18 27/14 28/22 29/15 32/20 34/15 34/23 35/25 36/16 37/8 44/7 44/14
plaintiffs' [1] 13/9 24/19 31/11
Planned [2] 32/9 32/10
plans [1] 34/1
plausible [1] 36/9
play [1] 7/23
please [2] 4/7 4/9
PLLC [1] 2/4
point [8] 9/11 12/1 18/4 20/7 25/18 25/23 34/25 42/4
pointed [2] 21/23 35/2
points [4] 12/25 15/19 26/7 38/9
poisons [1] 11/10 14/8
pools [1] 11/10 14/8
portion [1] 36/19
position [1] 25/17
positive [1] 33/6
possess [1] 18/18
possession [1] 17/15
possible [3] 30/20 37/3 40/9
potential [2] 31/13 36/20
potentially [1] 36/25
power [2] 11/6 27/21
powerful [1] 40/18
practice [15] 6/9 13/15 13/24 13/25 15/17 15/25 21/7 23/21 27/16 29/11 30/21 36/23 36/24 37/10 39/14
practices [1] 31/18
practitioner [8] 9/19 15/9 31/9 31/21 31/23 31/25 37/4 42/18
practitioners [1] 29/6
pre [1] 33/17
pre-employment [1] 33/17
precisely [5] 13/17 16/17 23/2 41/23 44/21
preclude [2] 9/5 23/17
precluded [3] 8/9 9/2 23/25
predicated [1] 33/2
pregnancy [1] 33/24
pregnant [1] 33/25

**P**

preliminary [2] 4/24 4/11
premature [1] 37/24
prepared [1] 22/13
prescribing [1] 26/24
prescriptive [4] 42/9 42/10 42/11 42/12
presence [1] 41/18
present [1] 17/7
presumptively [2] 38/16 39/1
prevent [7] 1/18 3/18 11/15 16/4 21/5 22/7 42/1
preventative [6] 10/15 11/2 13/6 14/1 14/3 16/1
preventive [2] 8/4 13/17
principle [1] 39/10
prior [1] 29/11
privacy [1] 10/1 29/20
private [1] 19/11
probably [1] 39/24
problem [7] 10/11 16/22 19/21 26/12 26/13 38/3 43/7
problems [1] 16/14
proceed [1] 25/14
proceedings [5] 31/19 36/22 44/6 45/3 45/6
profession [11] 6/8 6/9 6/10 6/14 14/5 21/2 21/8 27/12 39/14 40/11 40/17
professional [17] 7/7 9/16 10/4 12/22 18/16 20/18 22/7 27/17 28/21 30/19 31/10 31/21 32/2 34/7 37/1 37/3 39/7
professionals [4] 6/13 19/18 29/11 40/11
professions [2] 5/23 39/11
prohibit [19] 9/8 13/19 16/17 19/1 19/25 22/21 22/23 24/7 27/3 28/22 28/24 29/8 30/2 30/3 34/14 35/21 40/2 44/1 44/22
prohibited [9] 16/2 18/23 29/10 32/20 34/10 37/8 41/19 41/20 44/17
prohibiting [1] 33/23
prohibition [13] 6/25 17/12 23/1 26/23 32/24 33/10 33/10 40/7 40/25 42/3 42/5 42/16 44/2
prohibitions [1] 35/12
prohibitive [1] 12/4
prohibits [6] 13/2 14/22 23/4 24/5 24/7 29/9
PROJECT [1] 1/18
promulgated [1] 37/23
proper [1] 38/12
properly [1] 26/4
proposition [1] 6/12
prospective [1] 33/17
protected [3] 21/14 36/13 38/24
protection [2] 31/3 38/22
provide [5] 6/23 10/17 25/23 31/3 37/3
provided [1] 35/11
providing [1] 37/5
provision [12] 10/3 10/16 11/22 11/23 19/23 19/24 20/1 22/21 23/19 31/5 42/18 43/20
provisions [3] 12/6 23/16 43/22
pulled [1] 31/18
purpose [2] 15/21 41/25
purposes [2] 6/18 14/13
put [3] 6/20 27/21 43/7
putting [1] 22/8

**Q**

qualification [1] 33/21
qualified [1] 6/9
question [45] 4/21 5/7 8/20 8/21 9/6 10/2 10/9 10/16 12/17 12/20 13/3 13/3 14/19 17/23 17/25 18/7 18/11 19/14
20/4 20/6 20/9 20/19 25/2 25/6 26/20 27/7 28/24 29/17 29/19 29/25 29/25 30/5 30/10 31/24 32/21 36/2 36/8 37/6 37/11 38/11 40/20 41/13 42/1 44/10 44/13
question/answer [1] 18/7
questionnaire [9] 7/10 9/7 11/8 13/6 13/18 13/21 16/18 17/8 17/8
questions [11] 7/18 10/25 11/9 13/11 17/15 17/17 33/11 33/23 34/1 34/17 35/2
quote [1] 12/13

**R**

R.A.V [2] 38/20 38/23
race [1] 35/22
rather [2] 13/14 38/5
rational [2] 28/20 32/4
reach [2] 16/5 36/13
react [1] 26/19
reacted [1] 26/9
reaction [1] 44/8
read [4] 14/10 16/11 31/16 32/18
reaffirms [2] 29/8 30/4
real [1] 44/4
really [4] 23/12 23/16 34/22 38/12
REALTIME [1] 45/10
reason [3] 7/17 24/24 26/3
reasonable [10] 4/14 5/12 5/16 5/17 19/15 31/16 31/19 36/6 44/15 44/16
reasons [2] 20/18
receiving [2] 17/13 29/13
recent [1] 35/8
recess [1] 45/1
recognize [1] 34/20
recognized [2] 14/16 40/13
recommend [2] 7/7 37/9
recommendation [1] 42/6
recommendations [1] 8/3
recommends [1] 29/6
record [3] 3/7 9/19 45/6
recording [2] 23/19 24/5
red [1] 8/1
reference [1] 23/20
referenced [1] 12/10
refers [2] 20/7 23/17
refrain [2] 18/11 19/3 19/13 30/25
refusal [4] 18/11 19/3 19/13 30/25
refuse [2] 12/23 29/25
regard [2] 20/10 43/9
regarded [2] 4/19 27/20
regarding [1] 19/7
regardless [1] 32/14
regards [1] 13/1
regular [3] 8/10 13/15 15/25
regulate [2] 6/12 39/13
regulates [1] 28/21
regulating [1] 5/13
regulation [6] 5/13 5/23 21/2 28/8 28/14 40/11
regulations [1] 19/18
regulatory [1] 6/17
rehabilitation [1] 35/20
rejected [1] 40/13
related [6] 5/25 6/2 7/21 21/1 43/1 43/23
relates [4] 14/6 14/7 23/9 24/12
relating [1] 5/23
relationship [10] 18/6 18/11 19/2 19/12 19/13 29/21 30/4 30/6 30/24 43/1
relegating [1] 23/4
relevance [3] 13/5 35/5 42/22
relevant [25] 7/11 9/20 10/5 10/10 10/12 10/14 10/18 10/20 11/23 13/4 16/23 17/1 18/1 20/10 20/23 21/20

24/8 25/4 25/10 37/11 37/12 40/21 42/19 43/2 43/6
relied [1] 5/22
relies [1] 6/1
religion [1] 35/22
remain [1] 16/8
Reminding [1] 9/23
render [1] 43/20
repeats [1] 18/13
Reported [1] 2/22
Reporter [3] 2/23 45/10 45/10
reports [2] 12/11 19/9
reputation [2] 21/7 27/16
require [1] 36/24
required [1] 32/12
requirement [3] 13/4 28/8 28/14
requirements [1] 38/17
requiring [1] 6/23
reserve [1] 27/25
resoundingly [1] 40/13
resources [1] 5/17
respect [7] 10/1 16/18 18/2 24/20 39/7 40/8 42/24
respond [2] 7/22 28/1
response [4] 17/12 23/15 38/7 38/10
rest [1] 25/14
restrict [3] 6/8 39/10 40/16
restricted [3] 6/4 22/16 31/8
restriction [10] 5/16 6/16 6/16 6/24 7/4 28/16 38/18 41/16 41/22
restrictions [3] 29/3 38/15 39/21
result [3] 15/8 33/7 43/14
resulting [1] 5/7
retired [1] 27/12
reveal [1] 29/19
right [14] 3/25 17/14 17/16 18/18 19/19 24/17 25/12 29/8 30/5 30/6 32/11 34/20 40/12 44/23
rightly [2] 26/6 27/11
rights [2] 30/23 32/16
ripe [1] 44/12
ripeness [1] 44/13
rise [5] 9/8 15/20 15/23 18/25 22/3
risk [1] 11/1 16/9
risks [3] 14/4 14/7 14/15
Room [1] 2/23
ROPES [3] 1/15 3/12 3/16
routine [4] 13/5 13/17 16/18 44/21
routinely [2] 7/9 16/25
royal [1] 36/17
rules [1] 37/23

**S**

S.E.C [1] 6/1
safety [18] 7/21 8/15 8/19 9/20 9/21 10/6 10/6 11/10 13/12 14/13 22/5 22/8 24/8 24/12 24/22 28/23 34/15 43/3
said [14] 5/10 14/6 15/20 16/6 17/9 25/13 27/1 32/15 32/18 32/23 35/10 38/14 39/22 40/1
same [2] 9/4 35/17
sanctions [1] 15/12
satisfies [1] 39/6
satisfy [1] 38/17
say [17] 9/12 12/5 12/22 15/7 18/15 22/17 24/1 28/7 36/5 36/17 38/1 39/6 39/15 39/16 40/18 40/19 43/14
saying [11] 5/12 9/14 13/23 16/3 16/10 16/12 25/20 28/13 30/9 31/12 32/19
says [7] 9/7 13/8 17/12 25/10 33/16 39/10 44/20
schemes [1] 39/11
screening [3] 7/10 7/25 8/21 9/6 13/6 17/8 29/17 37/6
scrutiny [8] 5/11 28/9 28/10 32/6 38/12

**S**

**scrutiny...** [3] 38/17 39/2 39/5
**se** [1] 34/3
**seated** [1] 3/25
**seats** [1] 11/10
**second** [1] 3/15
**section** [6] 11/19 18/12 33/13 33/14
33/16 33/22
**see** [6] 23/25 37/10 37/12 39/16 41/1
42/10
**seem** [1] 24/24
**seems** [4] 9/24 16/6 21/25 25/9
**seen** [1] 25/7
**self** [5] 21/13 26/18 27/6 44/14 44/15
**self-censor** [1] 26/18
**self-censoring** [4] 21/13 27/6 44/14
44/15
**senior** [1] 24/23
**sent** [1] 43/24
**sentence** [5] 13/14 19/5 42/12 42/14
42/17
**services** [1] 34/7
**setting** [1] 31/5
**seven** [2] 7/19 8/18
**seven-year-old** [1] 8/18
**several** [1] 18/13
**sex** [2] 33/15 33/19
**shall** [1] 33/19
**she** [8] 7/18 25/21 27/12 29/18 29/18
29/19 30/16 34/1
**she's** [1] 33/25
**shelton** [3] 2/22 2/25 45/10
**short** [1] 15/16
**should** [5] 5/18 33/4 33/4 37/15 42/8
**show** [1] 15/2
**showing** [1] 32/1
**sibling** [1] 14/14
**sic** [1] 30/11
**side** [1] 32/17
**Signature** [1] 45/10
**significant** [1] 15/15
**similar** [2] 32/10 40/25
**similarly** [2] 27/14 39/3
**simply** [8] 17/19 27/5 28/20 30/4 32/17
32/22 34/12 35/18
**single** [2] 36/19 40/2
**singled** [2] 39/4 41/22
**singles** [2] 38/25 41/14
**situation** [4] 7/22 20/9 24/11 33/5
**situations** [3] 12/7 15/7 15/22
**six** [1] 7/19
**slower** [1] 3/14
**small** [4] 9/23 14/19 16/6 23/21
**Smith** [1] 22/18
**smoking** [1] 14/7
**solely** [1] 18/17
**some** [28] 3/4 4/15 4/18 4/19 7/25 9/11
12/10 13/10 14/11 22/2 22/12 23/12
24/21 24/21 24/23 24/24 25/3 26/7
26/8 26/24 27/5 27/25 28/9 34/10 41/3
41/8 43/8 44/9
**somebody** [1] 27/4
**somehow** [3] 8/23 29/12 31/23
**someone** [1] 27/12
**something** [7] 5/18 16/10 19/22 23/1
33/4 36/1 41/3
**Sorrell** [3] 26/21 26/22 38/20
**sort** [3] 12/2 14/23 24/24
**SOUTHERN** [1] 1/1
**speak** [5] 31/9 31/11 31/12 32/11 40/12
**speaker** [3] 23/2 26/18 33/8
**speakers** [1] 41/15
**specifically** [3] 22/25 28/7 36/8
**specification** [1] 33/19

**speech** [40] 4/15 4/20 5/3 5/4 5/9 5/13
5/20 6/12 6/16 7/1 9/1 9/13 14/23
27/14 23/4 23/17 27/21 28/17 29/2
29/2 33/2 34/6 34/7 34/8 38/15 38/19
38/21 38/25 39/3 39/7 39/12 39/21
39/25 40/3 40/6 41/11 41/15 41/21
41/23 44/16
**speeches** [1] 12/12
**spelled** [3] 13/25 19/24 20/24
**square** [1] 17/19
**squared** [1] 42/7
**stand** [2] 6/11 14/13
**standard** [7] 5/11 28/9 28/10 31/24
31/25 37/9 38/12
**standing** [1] 27/17
**start** [3] 4/1 25/2 40/20
**starting** [1] 24/20
**starts** [2] 13/23 42/17
**state** [50]
**state's** [12] 4/10 4/17 5/17 5/23 6/17
15/6 20/8 29/24 43/12 43/15 44/19
44/20
**STATES** [4] 1/1 1/12 2/23 35/10
**statute** [61]
**statute's** [2] 19/10 34/21
**statutes** [3] 16/24 21/19 35/19
**statutory** [5] 16/25 20/2 20/11 21/16
21/22
**Ste** [3] 1/16 1/19 1/22
**step** [2] 4/6 8/4
**steps** [1] 43/19
**still** [2] 14/16 18/2
**store** [1] 11/6
**stored** [2] 8/15 26/4
**stories** [1] 14/12
**storing** [1] 11/16
**Street** [2] 1/16 1/19
**strict** [6] 5/11 28/13 32/5 38/17 39/1
39/5
**struck** [2] 39/20 40/7
**structure** [1] 42/2
**subject** [8] 5/11 15/12 21/21 31/25
39/1 39/4 40/21 44/3
**subjected** [1] 31/18
**subjective** [3] 22/1 31/24 36/7
**subjectively** [1] 30/18
**subsection** [10] 11/19 19/5 24/4 42/5
42/13 42/13 42/14 42/15 42/17 42/24
**subsections** [1] 23/14
**substantial** [1] 36/13
**such** [12] 9/19 10/6 12/7 15/22 17/16
21/10 21/24 35/13 36/9 36/10 37/14
42/20
**suffer** [1] 24/20
**sufficient** [2] 21/12 35/11
**suggested** [1] 18/4
**suggests** [1] 25/25
**superfluous** [1] 42/14
**supplemental** [1] 44/24
**supposed** [1] 8/10
**Supreme** [7] 21/24 26/21 27/1 32/15
38/14 39/16 39/19
**sure** [5] 7/23 9/4 14/3 19/1 37/19
**Surgeon** [1] 17/22
**sustained** [1] 38/16
**sword** [1] 21/15
**system** [1] 3/6

**T**

**tailor** [2] 7/11 11/12
**tailored** [1] 22/24
**take** [4] 20/22 21/1 22/15 30/18
**taken** [1] 43/19
**takes** [1] 41/8
**talk** [4] 8/11 22/19 24/17 25/11

**talked** [1] 16/19
**talking** [1] 39/25
**Tallahassee** [1] 2/3
**telephone** [3] 35/9 35/9 35/11
**tell** [5] 16/3 18/22 27/7 31/13 32/4
**telling** [1] 33/3
**term** [5] 20/12 35/5 35/7 35/15 35/16
**terminate** [4] 18/5 18/10 19/12 30/24
**Terminated** [1] 29/21
**terminating** [1] 19/2
**termination** [1] 30/3
**terms** [9] 13/2 16/16 20/24 21/16 21/24
24/2 35/2 35/13 36/18
**test** [7] 28/20 32/4 32/6 32/7 36/3 36/4
39/6
**testimony** [1] 27/11
**than** [4] 15/10 34/4 38/5 38/19
**thank** [6] 5/21 28/1 38/6 38/8 44/23
45/1
**that** [334]
**that's** [33] 4/25 5/10 13/1 13/8 16/22
16/24 18/12 19/17 20/11 22/13 23/25
24/3 26/12 26/12 26/13 26/14 26/16
27/19 29/24 31/6 32/3 32/7 32/22 33/3
34/4 34/19 34/21 35/7 35/10 36/2
36/25 37/8 37/9
**their** [47]
**them** [12] 7/14 11/4 11/5 14/4 16/4
19/14 21/11 22/22 30/1 32/12 38/2
43/25
**themselves** [4] 3/10 16/9 20/3 39/14
**then** [8] 4/21 9/12 9/25 12/18 13/13
15/23 25/12 37/13
**there** [34] 3/6 5/15 6/2 6/22 7/13 7/17
7/18 7/21 11/10 11/21 15/11 22/6
22/12 23/10 27/8 28/9 29/1 29/10
30/25 31/22 32/1 32/2 33/13 34/17
35/8 37/25 38/1 38/3 38/9 39/23 40/17
41/7 41/7 44/4
**there's** [4] 3/4 7/23 37/22 41/13
**these** [9] 13/9 15/7 15/19 16/16 21/16
21/21 22/3 35/2 44/21
**they** [64]
**they're** [6] 19/24 21/13 25/14 26/19
27/9 44/14
**they've** [1] 25/13
**thing** [3] 12/21 19/1 43/1
**things** [2] 22/14 36/25
**think** [22] 4/10 7/18 7/20 7/21 9/14
11/4 13/1 15/7 16/14 23/11 24/23
29/12 32/20 35/1 35/22 36/2 36/15
37/21 37/25 38/3 38/9 38/12
**thinking** [1] 37/14
**this** [76]
**Thomas** [1] 26/16
**Thompson** [2] 2/4 3/24
**those** [13] 5/24 6/7 6/8 6/11 6/12 7/17
12/7 14/15 15/22 20/24 23/9 43/9
44/20
**though** [2] 31/13 40/16
**thought** [2] 8/19 19/1
**threat** [3] 14/9 21/12 44/4
**threats** [1] 14/8
**three** [2] 8/17 29/5
**three-fold** [1] 29/5
**three-year** [1] 8/17
**through** [9] 1/8 3/5 9/10 9/25 10/25
12/2 14/11 34/6 39/11
**throughout** [2] 16/24 35/14
**Thursday** [1] 45/8
**time** [1] 35/3
**times** [3] 8/1 31/22 35/22
**Title** [3] 32/25 35/18 36/3
**tobacco** [1] 40/24
**took** [1] 31/2

**T**
tools [1] 41/6
top [2] 12/5 18/14
Trans [1] 34/2
transcript [2] 1/11 45/5
treat [1] 12/23
treatment [3] 10/24 14/2 29/13
tried [2] 26/22 40/10
triggered [1] 44/6
true [1] 26/15
truthful [2] 6/23 6/25
Tuesday [2] 44/25 44/25
two [4] 6/4 12/9 12/25 13/1
type [12] 5/3 10/10 10/24 11/25 12/4
 12/15 13/5 13/17 15/7 16/17 24/19
 26/9
types [5] 13/9 14/15 15/16 40/2 44/21
typically [1] 10/23

**U**
U.S [1] 35/14
unable [2] 16/5 28/9
unconstitutional [7] 4/24 5/20 28/16
 41/4 41/9 41/10 41/12
unconstitutionally [1] 21/25
under [17] 9/16 9/24 12/19 14/20 16/7
 17/4 18/16 19/17 20/11 24/1 26/11
 27/2 30/22 32/22 38/24 43/22 44/18
underserved [1] 16/9
understand [5] 9/14 10/9 14/4 14/18
 31/16
understands [1] 35/23
understood [2] 35/5 35/6
undistinguished [1] 22/21
unintentionally [1] 14/14
UNITED [4] 1/1 1/12 2/23 35/10
unlawful [1] 33/20
unless [3] 15/10 33/20 43/1
unnecessary [1] 11/1
unquote [1] 12/14
unreasonable [2] 13/12 31/23
unresolved [1] 20/6
until [1] 45/1
unusual [1] 36/25
up [8] 22/9 22/18 22/22 26/2 26/9
 30/11 37/15 41/8
upheld [1] 35/9
uphold [1] 40/23
upon [7] 5/13 18/17 32/16 33/3 33/20
 37/20 43/17
urging [1] 34/20
us [1] 18/22
use [5] 5/17 21/19 25/7 32/5 40/9
used [10] 14/14 16/23 24/15 24/16
 32/7 35/3 35/3 35/7 35/16 36/11
uses [1] 35/15
using [1] 42/9

**V**
vague [2] 21/25 34/24
vagueness [3] 16/15 23/13 35/1
Vail [3] 2/2 3/22 28/5
validates [1] 4/11
variety [2] 10/25 11/9
various [1] 8/16
Velazquez [1] 39/20
verbal [2] 10/6 42/20
verifies [1] 23/15
very [13] 4/15 9/13 10/17 15/15 24/13
 32/14 34/11 35/2 38/6 38/8 39/18 44/4
 44/15
Vice [2] 1/19 3/17
videos [1] 11/4
view [4] 12/3 17/9 20/8 20/22

viewpoint [6] 4/17 5/4 23/2 38/15 39/1
 39/4
viewpoint-based [1] 38/15
VII [3] 33/1 35/18 36/3
violation [8] 15/8 17/10 34/3 36/23
 37/1 43/23 44/2 44/4
VIOLENCE [2] 1/18 3/18
violent [1] 11/4
virtually [1] 31/22
virtue [1] 16/9
visit [2] 8/10 29/17
visits [1] 10/24
vocations [1] 39/11

**W**
wait [5] 10/12 10/12 10/12 41/6 41/6
walk [1] 12/2
walking [1] 7/23
want [11] 5/10 7/22 9/4 25/11 29/19
 30/23 31/1 34/15 37/8 37/18 38/9
wanted [4] 22/9 31/2 32/14 42/18
wants [3] 24/2 25/21 44/24
was [33] 3/1 3/15 4/18 5/2 5/16 5/17
 6/22 6/24 7/10 7/13 9/7 14/12 15/21
 15/21 16/1 20/5 23/7 27/11 29/10
 29/17 30/15 30/25 32/2 32/7 32/15
 35/8 38/23 39/3 39/23 40/1 40/3 41/24
 44/22
Washington [3] 1/17 1/20 2/5
wasn't [1] 23/10
way [9] 13/20 15/3 16/16 23/7 28/24
 30/12 34/10 34/14 37/2
ways [5] 6/4 26/9 29/23 34/18 38/1
we [31] 3/2 4/23 7/1 15/1 15/7 16/25
 17/2 17/5 19/16 19/22 21/23 23/14
 24/9 24/17 28/19 32/17 32/17 34/11
 36/14 37/7 37/19 37/19 39/16 40/17
 43/18 43/24 44/5 44/7 44/11 44/12
 44/19
we're [2] 9/4 39/24
we've [2] 11/25 13/6 16/15
Wednesday [1] 1/4
WEISBERG [2] 1/21 3/19
welcome [3] 13/10 22/3 23/23
welfare [2] 14/15 40/3
well [56]
went [2] 29/17 30/16
were [9] 12/6 12/7 12/10 23/10 29/13
 29/14 40/23 42/12 45/3
weren't [1] 29/12
what [65]
what's [3] 7/24 8/11 10/20
whatever [2] 24/2 37/15
when [14] 7/18 8/19 10/21 10/23 10/23
 17/7 17/14 17/24 25/2 31/22 32/12
 36/14 36/17 37/18
where [19] 6/20 7/23 9/1 9/25 10/22
 11/6 11/22 13/8 14/12 15/2 17/24 23/1
 26/18 28/14 33/1 33/5 36/3 38/24
 42/10
Where's [1] 16/8
whether [12] 5/16 5/17 7/12 10/17 11/6
 27/20 28/15 29/18 32/14 36/6 40/21
 42/3
which [23] 5/25 6/2 7/1 9/10 11/11
 13/25 14/1 15/14 17/20 24/5 26/8 28/8
 29/16 33/2 33/18 35/8 35/21 38/2
 38/23 39/9 39/20 40/5 40/18
while [3] 13/10 36/8 39/13
White [2] 6/2 6/6
White's [1] 39/8
who [17] 3/15 4/2 6/8 16/4 20/13 22/19
 23/23 24/20 27/4 27/8 29/25 31/4
 39/13 40/23 42/18 44/8 44/24
whole [1] 14/8

whom [1] 17/5
why [9] 8/20 8/23 14/18 29/19 21/18
 21/21 30/17 32/4 43/3
wide [1] 11/9
widest [1] 37/3
will [8] 3/9 4/2 4/4 11/11 16/13 20/22
 27/25 37/19
willing [3] 23/23 25/14 27/4
Wilson [1] 32/8
within [1] 22/12
without [1] 21/15
WOLLSCHLAEGER [1] 1/3
woman [1] 33/25
won't [2] 12/23 31/14
word [4] 16/23 16/25 21/19 42/8
worded [1] 37/2
words [7] 21/21 36/11 38/23 39/8
 39/13 42/18 42/21
work [3] 30/17 33/1 36/5
workplace [2] 28/21 34/6
World [1] 34/2
would [62]
wouldn't [4] 14/18 25/6 27/18 30/17
wrenching [1] 14/11
write [2] 16/20 16/22
written [5] 10/2 10/7 32/19 32/20 42/20
wrote [1] 24/3

**Y**
year [2] 8/17 8/18
yes [1] 20/16
yet [2] 31/3 34/13
you [86]
you'd [1] 9/23
you're [12] 5/22 7/21 7/23 8/8 8/9 9/14
 10/1 11/3 11/16 22/16 28/13 30/9
you've [12] 16/6 22/11 24/11 24/15
 24/15 25/7 25/13 28/22 30/8 30/8
 32/25 33/1
young [1] 29/16
your [59]