IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:11-CV-22026-COOKE/TURNOFF

DR. BERND WOLLSCHLAEGER, *et al.*,

      Plaintiffs,

v.

FRANK FARMER, *et al.*,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**AND ACCOMPANYING MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ............................................................ 1

MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ................................................ 2

I.     BACKGROUND ........................................................................................................... 2

II.    ARGUMENT ................................................................................................................. 5

    A.     Plaintiffs Are Entitled to Judgment as a Matter of Law Because the Firearm Owners' Privacy Act is a Content-Based Speech Restriction That Fails to Meet Strict Scrutiny. ................................................................................................5

        i.     The Firearm Owners' Privacy Act Infringes on Physicians' and Patients' Rights to Freedom of Speech Under the First Amendment to the United States Constitution. .................................................................................. 6

        ii.    The Firearm Owners' Privacy Act is a Content-Based Restriction on Protected Speech, and the Firearm Owners' Privacy Act is Therefore Subject to Strict Scrutiny. ...................................................................... 10

        iii.   The Firearm Owners' Privacy Act Fails Strict Scrutiny Because It Does Not Constitute the Least Restrictive Means to Advance a Compelling Government Interest.................................................................................... 13

            1.     The Government Does Not Have a Compelling Interest in Restricting Plaintiffs' Speech. ..................................................... 13

            2.     The Act is Not the Least Restrictive Means of Achieving the Government's Interest.................................................................. 15

    B.     The Firearm Owners' Privacy Act is Unconstitutionally Vague. ..........................17

    C.     The Firearm Owners' Privacy Act is Unconstitutionally Overbroad. ...................19

CONCLUSION.................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                  **Page(s)**

*Ashcroft v. ACLU,*
   542 U.S. 656 (2004) .........................................................................................15, 16

*Ashcroft v. Free Speech Coalition,*
   535 U.S. 234 (2002).............................................................................................20

*California Democratic Party v. Jones,*
   530 U.S. 567 (2000).............................................................................................13

*Conant v. Walters,*
   309 F.3d 629 (9th Cir. 2002) .......................................................................6, 12, 19

*FCC v. League of Women Voters of California,*
   468 U.S. 364 (1984).............................................................................................15

*Harrell v. Forida Bar,*
   608 F.3d 1241 (11th Cir. 2010) ...........................................................................6

*Harris v. Mexican Specialty Foods, Inc.,*
   564 F.3d 1301 (11th Cir. 2009) .................................................................2, 18, 19

*Hill v. Colorado,*
   530 U.S. 703 (2000).............................................................................................10

*In re Davis,*
   565 F.3d 810 (11th Cir. 2009) .............................................................................18

*Jean-Baptiste v. Gutierrez,*
   627 F.3d 816 (11th Cir. 2010) .............................................................................5

*Legal Services Corp. v. Velazquez,*
   531 U.S. 533 (2001).............................................................................................12

*Lowe v. SEC,*
   472 U.S. 181 (1985) (White, J.)...........................................................................13

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992).............................................................................................15

*Reno v. ACLU,*
   521 U.S. 844 (1997).............................................................................................18

*Shook v. United States*,
   713 F.2d 662 (11th Cir. 1983) ..................................................................5

*Solantic, LLC v. City of Neptune Beach*,
   410 F.3d 1250 (11th Cir. 2005) ..................................................2, 10, 15, 17

*Sorrell v. IMS Health Inc.*,
   131 S. Ct. 2653 (2011)..................................................................6, 14

*Stanley v. State of Georgia*,
   394 U.S. 557 (1969) ..................................................................6

*Stuart v. Huff*,
   --- F. Supp. 2d ---, No. 1:11cv804, 2011 WL 5042110 M.D.N.C. Oct. 25, 2011) .................12

*Thompson v. Western States Medical Center*,
   535 U.S. 357 (2002)..................................................................12

*Trammel v. United States*,
   445 U.S. 40 (1980)..................................................................6

*Turner Broadcasting System, Inc. v. FCC*,
   512 U.S. 622 (1994)..................................................................10

*United States v. Playboy Entertainment Group, Inc.*,
   529 U.S. 803 (2000)..................................................................15

*United States v. Stevens*,
   130 S. Ct. 1577 (2010) ..................................................................2, 19

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982)..................................................................18

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ..................................................................2, 6

*Weaver v. Bonner*,
   309 F.3d 1312 (11th Cir. 2002) ..................................................................20

## STATUTES

18 U.S.C. § 922..................................................................13

Fed. R. Civ. P. 56(c) ..................................................................5

Fla. Stat. § 381.026(4)(b)(10) ..................................................................10

Fla. Stat. § 381.026(4)(b)(11) ..................................................................10

Fla. Stat. § 395.1055 ..............................................................................................4

Fla. Stat. Ch. 790 ..................................................................................................13

Fla. Stat. § 456.057 ..............................................................................................16

Fla. Stat. § 456.072 ................................................................................................4

Fla. Stat. § 456.072(1)(mm) ............................................................................4, 7, 8

Fla. Stat. § 456.072(2) ............................................................................................4

Fla. Stats. § 790.01 ..............................................................................................13

Fla. Stats. § 790.06 ..............................................................................................13

Fla. Stat. § 790.065 ..............................................................................................13

Fla. Stat. § 790.338, *et. seq.* ......................................................................... passim

*Health Ins. Portability and Accountability Act of 1996*, 42 U.S.C. § 1320d, et seq. ....................16

## <u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs Dr. Bernd Wollschlaeger, Dr. Judith Schaechter, Dr. Tommy Schechtman, Dr. Stanley Sack, Dr. Shannon Fox-Levine, Dr. Roland Gutierrez, American Academy of Pediatrics, Florida Chapter ("FAAP"), American Academy of Family Physicians, Florida Chapter ("FAFP"), and American College of Physicians, Florida Chapter, Inc. ("FACP") (collectively, "Plaintiffs") by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 7.1(C) and 7.5D, hereby move for summary judgment for the reasons in the accompanying memorandum of law; request that Fla. Stat. §§ 790.338 (1), (2), (5), and (6) be declared unconstitutional; request that Fla. Stat. § 790.338(8) be declared unconstitutional to the extent that it provides that violations of § 790.338(1) and (2) constitute grounds for disciplinary action; request that Fla. Stat. § 456.072(1)(mm) be declared unconstitutional to the extent that it provides that violations of §§ 790.338 (1), (2), (5), and (6) constitute grounds for which disciplinary actions specified under § 456.072(2) may be taken; and request that Defendants be permanently enjoined from enforcing those provisions.

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

As the Court recognized in its Order Granting Plaintiffs' Motion for Preliminary Injunction, the Firearm Owners' Privacy Act (CS/CS/HB 155, "An act relating to the privacy of firearm owners") severely curtails the ability of Florida health care practitioners to communicate with their patients about firearm safety in violation of the First and Fourteenth Amendments to the United States Constitution. The Court correctly concluded that the law is a content-based restriction on the free speech rights of physicians and patients that does not advance a compelling government interest; even if it did, it is not the least restrictive means of furthering the legislature's purported interest.  PI Order 10-21; *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005).  Additionally, the Firearm Owners' Privacy Act is unconstitutionally vague and overbroad.  The harsh sanctions the law imposes for violation of its ill- or un-defined prohibitions chill physicians' protected speech and violate patients' First Amendment rights to receive information.  *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976).  Even assuming the law could be constitutionally applied, its unconstitutional sweep vastly outstrips its purportedly legitimate applications.  *See United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010).  For these reasons, Plaintiffs are now entitled as a matter of law to entry of final judgment in their favor.

## I.      BACKGROUND

As part of the effective practice of preventive medicine, practitioners routinely ask patients about a variety of potential health and safety risks, including household chemicals, swimming pools, drugs, alcohol, tobacco, and firearms. *See* Joint Statement of Undisputed Facts ("JSUF") ¶¶ 16–18.  Firearm safety is recognized as a high-priority public health issue, as

injuries are the leading cause of death and morbidity among children older than one year, adolescents, and young adults. *See* JSUF ¶¶ 17, 25. To combat this tragic and unnecessary loss, the Florida chapter of the American Academy of Pediatrics ("FAAP") recommends that physicians incorporate questions about firearms into the patient history process, JSUF ¶ 16, and both the FAAP and the Florida chapter of the American College of Physicians ("FACP") recommend counseling families about firearm injury prevention. *See* JSUF ¶¶ 16, 17.[1]

On June 2, 2011, Governor Rick Scott signed the Firearm Owners' Privacy Act into law. CS/CS/HB 155 (codified at Fla. Stats. §§ 790.338, 381.026, 456.072, 395.1055). The bill amended several statutes and created Fla. Stat. § 790.338, "Medical privacy concerning firearms," which prohibits licensed health care practitioners or facilities from (i) intentionally recording any disclosed information concerning firearm ownership in a patient's medical record if the practitioner knows the information is not relevant to the patient's medical care or safety, or the safety of others; (ii) asking a patient whether she owns a firearm unless the practitioner in good faith believes the information is relevant to the patient's medical care or safety, or the safety of others; (iii) discriminating against a patient based solely on firearm ownership; or (iv) unnecessarily harassing a patient about firearm ownership. *See* PI Order 1-2.

The law was passed in reaction to news accounts of an event in Ocala, Florida, in which the mother of a minor patient refused to answer a pediatrician's routine questions about firearms in her home, and the pediatrician asked the mother to find a new doctor. *See* PI Order 2; JSUF ¶

---

[1] The American Academy of Pediatrics ("AAP") and its Florida chapter, the FAAP, as well as the American Academy of Family Physicians ("AAFP") and its Florida chapter, the FAFP, all publish guidelines and policy statements recommending that physicians practice preventive medicine by providing counseling and anticipatory guidance regarding injury prevention, including questioning patients about firearms during the patient history process. *See* JSUF ¶ 16. Additionally, the American College of Physicians ("ACP") and its Florida chapter, the FACP, recommend that physicians counsel patients on firearms safety, as well as diet, exercise, substance abuse, domestic violence, risky recreational activities, use of swimming pools, and smoke detectors, advocating that those steps play a "critical role" in preventive medicine. See JSUF ¶ 17.

3.  In response to those reports, the State sought to prohibit physicians from inquiring about firearms in circumstances similar to the Ocala incident.  *See* JSUF ¶ 4.

Practitioners accused of violating these provisions face various disciplinary proceedings and sanctions, many of which are typically reserved for egregious professional misconduct, such as obtaining a license through bribery or making fraudulent representations related to the practice of medicine.[2]  *See* Fla. Stat. § 456.072.  Moreover, the mere fact that a complaint is filed can harm a practitioner's reputation and career even when the practitioner is eventually vindicated.  *See* Pl. Supp. Statement of Undisputed Facts ("PSSUF") ¶ 2; PI Order 9.  Given the harsh penalties imposed by the law, and for fear that an investigation by the Board of Medicine would damage their reputations and professional standing, Plaintiffs and other physicians "began self-censoring themselves shortly after the law went into effect."  PI Order 5, 7, 9; *see also* PSSUF ¶¶ 2-3.  Specifically, Plaintiffs no longer ask patients about firearm ownership, follow up on routine questions about firearms, provide intake questionnaires that include questions about firearms, or counsel patients about firearm safety.  PI Order at 8; JSUF ¶¶ 32–38.

On June 6, 2011, Plaintiffs filed a complaint challenging the Firearm Owners' Privacy Act as violating the First and Fourteenth Amendments of the United States Constitution by infringing on the free speech rights of physicians and patients.  *See* Compl. (DE 1).  Plaintiffs filed an Amended Complaint and moved for a preliminary injunction against the enforcement of the law on June 24, 2011.  *See* First Am. Compl. (DE 15); Mot. & Mem. for Prelim. Inj. (DE 16).  The Court granted Plaintiffs' motion for preliminary injunction on September 14, 2011, finding that Plaintiffs have standing to bring this action and are likely to succeed on the merits because

---

[2] These sanctions include, but are not limited to, imposition of administrative fines of up to $10,000 per count or offense, return of fees collected, issuance of letters of reprimand, compulsory remedial medical education, and even revocation of their licenses to practice medicine.  *See* Fla. Stat. §§ 790.338(8), 395.1055, 456.072(1)(mm)–(2), 456.072(2)

the Firearm Owners' Privacy Act is a content-based restriction on free speech that neither advances a compelling state interest nor is the least restrictive means of furthering the State's purported interest.  *See* PI Order 7-21.  For the reasons discussed below, and consistent with the Court's prior ruling, Plaintiffs are now entitled to summary judgment on their claims.

## II.    ARGUMENT

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010); Fed. R. Civ. P. 56(c).  Defendants have conceded that there are no genuine issues as to any material facts.  *See* Joint Scheduling Order (DE 81) ("the parties agree that there is no need for future factual development in this case, nor are there any genuine issues of material fact.")  Additionally, Defendants plan to file their own motion for summary judgment, which itself is indicative "of the nonexistence of a factual dispute."  *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).  Because Plaintiffs are entitled to judgment as a matter of law, summary judgment should be entered for Plaintiffs on all counts.

### A.    Plaintiffs Are Entitled to Judgment as a Matter of Law Because the Firearm Owners' Privacy Act is a Content-Based Speech Restriction That Fails to Meet Strict Scrutiny.

Plaintiffs are entitled to judgment as a matter of law, consistent with the Court's previous determination that the law is unconstitutional on its face.  *See generally* PI Order; *see also Jean–Baptiste*, 627 F.3d at 820; Fed.R.Civ.P. 56(c).  The Firearm Owners' Privacy Act effects a content-based restriction on speech in violation of the First and Fourteenth Amendments to the United States Constitution, and so it must be struck down unless Defendants can overcome the exacting standards of "strict scrutiny" analysis.  PI Order 13.  However, Defendants cannot pass that test because they do not have a compelling interest in interfering with physicians' speech

rights, and because the Firearm Owners' Privacy Act is not narrowly tailored to achieve the legislature's purpose. *Id.* at 15-20. There have been no changes to the law or circumstances since the Court issued its Order Granting Plaintiff's Motion for Preliminary Injunction on these grounds. The Court should now enter permanent declaratory and injunctive relief for Plaintiffs.

> ### i. The Firearm Owners' Privacy Act Infringes on Physicians' and Patients' Rights to Freedom of Speech Under the First Amendment to the United States Constitution.

As a foundational matter, the Firearm Owners' Privacy Act "implicates practitioners' First Amendment rights of free speech," as well as "patients' freedom to receive information about firearm safety, which the First Amendment [also] protects." PI Order 5 (citing *Va. State Bd. of Pharmacy*, 425 U.S. at 756-57; *Stanley v. State of Ga.*, 394 U.S. 557, 564 (1969)). Courts have repeatedly reaffirmed the importance of protecting the exchange of information between doctors and patients. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) ("[T]he physician must know all that a patient can articulate in order to identify and to treat disease; barriers to full disclosure would impair diagnosis and treatment."); *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002) ("An integral component of the practice of medicine is the communication between a doctor and a patient."); *see also Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664 (2011) ("A consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue. . . . That reality has great relevance in the fields of medicine and public health, where information can save lives.").

Here, the First Amendment implications of the statute are plain because the law has, as a factual matter, already chilled Plaintiffs' speech. *See Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010). ("[I]t is well-established that an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences. In such an instance, the injury is self-censorship."). "Plaintiffs have

provided evidence that they and other physicians began self-censoring themselves shortly after the law went into effect." PI Order 7. Specifically, Plaintiffs no longer ask patients about firearm ownership, follow up on routine questions about firearms, provide intake questionnaires that include questions about firearms, or counsel patients about firearm safety. *Id.* at 8; JSUF ¶¶ 32–38.

Defendants have previously contended that the law does not implicate Plaintiffs' First Amendment rights because the law merely *recommends* that physicians cease asking patients questions about firearms.  The record and legislative history contradict that contention.  By its express terms, the law imposes disciplinary sanctions when a physician violates any provision of § 790.338.  *See* 790.338(8); 456.072(1)(mm).  Indeed, the Florida Board of Medicine has determined that a violation of § 790.338 would be a "failure to comply with a legal obligation and current disciplinary guidelines would apply."  JSUF ¶ 12. "Generally, laws that provide for disciplinary action in the case of violations or non-compliance are mandatory, not precatory or hortatory."  PI Order 8.  As this Court has recognized, there is nothing in the record indicating that Defendants do not intend to enforce the law; in fact, Defendants are defending the law in this litigation and thus the Court has properly inferred that the Defendants intend to do so.  *Id.* at 9-10 (citing *Harrell*, 608 F.3d at 1257).

Moreover, "the State's interpretation of the law as hortatory would render meaningless the law's provision that violations of the law shall constitute grounds for disciplinary action."  PI Order 9 (citing *Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1285 (11th Cir. 2011) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quoting *Corley v. United States*, 556 U.S. 303 (2009))).  The law specifies, in Section 790.338(8), that "[v]iolations of the provisions of

subsections (1)-(4) constitute grounds for disciplinary action," a provision that would be nonsensical if subsection (2), the anti-inquiry provision, were merely hortatory. Another provision states that "[v]iolating *any* of the provisions of s. 790.338" "shall constitute grounds for which disciplinary actions . . . may be taken." Fla. Stat. § 456.072(1)(mm) (emphasis added).

Additionally, "the law's use of the word 'should' instead of 'shall' is not dispositive of the issue. The word 'should' can impose a mandatory rule of conduct." PI Order 9 (citing *United States v. Anderson*, 798 F.2d 919, 924 (7th Cir. 1986)). Indeed, the Legislature itself, in the statutory preamble, characterized the anti-harassment provisions of subsection (6), which also uses the "should refrain" formulation, as "prohibiting harassment." *See* CS/CS/HB 155. Furthermore, the official report of the Florida Board of Medicine's June 2, 2011 meeting states that a practitioner "*shall not* ask about firearm ownership" unless the inquiry comes within the statute's safe harbor and, further, that doctors "*shall not* harass a patient about firearm ownership." JSUF ¶ 12.

Physicians' First Amendment rights are implicated by the Firearm Owners' Privacy Act even if no disciplinary sanction is actually imposed simply because of the threat that a complaint will be filed against them or they will be called before the Board of Medicine to defend their conduct. *See* PSSUF ¶ 2. Physicians who are investigated by the Board of Medicine, even without further disciplinary sanctions, may suffer damage to their reputations and professional standing. *See id.*; *see also* PI Order 9. In an effort to avoid that harm, physicians will—and have—changed their practices. *See* PI Order 5, 7. In short, the Firearm Owners' Privacy Act has caused physicians' speech to be chilled in violation of the First and Fourteenth Amendments to the United States Constitution. *See* PI Order 10.

Nor can Defendants rely on the statute's purported good-faith relevance exception to sustain its argument that the Firearm Owners' Privacy Act does not impede physicians' First Amendment rights.  *See* Fla. Stat. § 790.338(2).  It was many physicians' standard practice to inquire in virtually any circumstance about the presence of guns in their patients' homes and to record related information, without regard to whether the physician had specific information that the inquiry was directly "relevant" to the patient's health or safety at the time the inquiry was made.  JSUF ¶¶ 18, 29, 30-34. Indeed, leading national professional associations specifically encourage doctors to inquire about the presence of guns and their safe storage and handling as part of "the patient history process." JSUF ¶¶ 16-17.  In accordance with national medical associations' recommendations, Plaintiffs wish to make screening inquiries and record information about firearms in all circumstances, including when a grown patient comes in for a sick visit, with no particularized basis for believing the inquiry "relevant" other than the view that acquiring the patient's general history is *always* relevant to a patient's preventative care.  *See* JSUF ¶¶ 29-30.  The legislature plainly intended to prohibit inquiring into, or recording, firearms information in such circumstances, like the Ocala incident that gave rise to the law.

Additionally, the anti-harassment and anti-discrimination provisions contain no good faith exception.  S*ee* Fla. Stat. §§ 790.338(5)-(6). As a result, physicians run the risk that patients—not understanding the reason for physicians' questions or counseling—will deem speech "unnecessarily harassing" or "discriminatory" and file a complaint against them, even though the physician believes that the inquiry is relevant.  It is this risk that most concerns and chills the speech of Plaintiffs.  *See* PSSUF ¶¶ 2-3.  Any regime in which a person's livelihood could be stripped of them because their listener, or a government body after-the-fact, determined their speech to be "not relevant" or "unnecessarily harassing" raises substantial constitutional

- 9 -

doubt.  And where such a system singles out speech on a single topic, by a single class of speakers, it unequivocally impedes First Amendment rights.

> ### ii.   The Firearm Owners' Privacy Act is a Content-Based Restriction on Protected Speech, and the Firearm Owners' Privacy Act is Therefore Subject to Strict Scrutiny.

Because the recordkeeping, inquiry restriction, anti-harassment, and anti-discrimination provisions are content-based speech restrictions, they must be subjected to rigorous strict scrutiny analysis.  A law is "content-based" if it disfavors some speech based on the ideas or views that it contains.  *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 643 (1994).  A content-neutral statute, however, does not restrict particular viewpoints or subject matters.  *Hill v. Colo.*, 530 U.S. 703, 723 (2000).  A content-based regulation or statute must be subjected to strict scrutiny, and it can be deemed constitutional "only if it constitutes the least restrictive means of advancing a compelling government interest." *Solantic*, 410 F.3d at 1258.

The Firearm Owners' Privacy Act is a content-based restriction of speech on its face because it "places restrictions on a practitioner's freedom to inquire about or discuss a particular subject matter"; namely, firearms.  PI Order 11-13.  First, practitioners are prohibited from inquiring about firearms unless they have a good faith belief that the information is relevant to the medical care or safety of the patient or others.  *Id.*  at 11; *see also* Fla. Stat. § 790.338(1)–(2).  Second, "[u]nder the law, practitioners may not record such information in the patient's medical record unless she knows the information is relevant."  PI Order 11.  Third, physicians are prohibited from "discriminating against" or "unnecessarily harassing" patients, which has caused physicians to curtail their practices of counseling patients.  *See* Fla. Stat. §§ 790.338(5), (6), 381.026(4)(b)(10), (11).  No other topic of health care practitioner speech is subject to restrictions of this nature under Florida law.  Practitioners are free to inquire or record information about other health risks; only firearms-related communications are restricted.

Similarly, prior to passage of the act, Florida did not permit patients to file complaints against practitioners on the ground that the patient considered the practitioner's manner or advice off-putting or harassing.  The complaint form provided by the Board of Medicine, which pre-dates passage of the act, specifies at the top in bold letters that complaints about "personality conflicts" and "rudeness of practitioners" are "not within the authority of the Department." PSSUF ¶ 1; available at http://www.doh.state.fl.us/mqa/enforcement/frm_general-medUCF.doc (last visited November 11, 2011).  Only when the patient's offense at her practitioner's "harassing" questions or advice relates to the subject of firearms can such rudeness or personality conflicts result in professional discipline.

The legislative history of the statute supports the Court's conclusion that it is content-based.  PI Order 12 & n.6; *see also Sorrell*, 131 S. Ct. at 2663 ("Any doubt that § 4631(d) imposes an aimed, content-based burden on detailers is dispelled by the record and by formal legislative findings.")   The legislature's Final Bill Analysis illustrates that "[t]he 'current situation' that the State legislature intended to change through this law's passage was practitioners' practice of asking about firearm ownership" and "[t]he Florida legislature specifically identified policies encouraging and recommending that physicians ask about firearms as an aspect of the problem that the law would rectify."  PI Order 12 (citing Fl. Final Bill Analysis, CS/CS/HB 155 at 2 (DE 49-1)).  In fact, the titles of the bill and § 790.338—"An Act relating to the privacy of firearm owners" and "Medical privacy concerning firearms," respectively—demonstrate that the law is directed at the subject matter of firearm ownership.

Further, "[s]tatements by certain members of the Florida legislature evidence concern or disagreement with health practitioners' firearm safety message."  PI Order 12-13.  For example, one legislator who spoke in favor of the bill also made clear that the Firearm Owners' Privacy

Act was intended to counter practitioner communications that he regarded as "a political . . . attack on the constitutional right to own a possessive firearm."  JSUF ¶ 5.  Moreover, during hearings regarding the bill, a member of the NRA testified that "[q]uestioning patients about gun ownership . . . needs to stop."  JSUF ¶ 10.

This Court has already rightly rejected Defendants' argument that the Firearm Owners' Privacy Act is entitled to a lower standard of review on the theory that it regulates "only professional speech."  *See* PI Order 13-14.  As the Supreme Court has made clear, all viewpoint-discriminatory speech restrictions—regardless of what "category" of speech—are subject to strict scrutiny.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (applying strict scrutiny to strike down content-based law penalizing "fighting words" ordinarily not protected by First Amendment); *see also Stuart v. Huff*, --- F. Supp. 2d ---, No. 1:11cv804, 2011 WL 5042110, at *4 (M.D.N.C. Oct 25, 2011) (rejecting the state's "contention that [physician-patient speech regarding abortion] speech is 'commercial' and thus subject to a lower degree of scrutiny").

Furthermore, courts that allowed some regulation of professional speech were addressing regulations of *conduct* like entrance into a profession; courts have rejected viewpoint-discriminatory restrictions on speech that invade the lawful practice of an occupation and seek "to exclude certain vital theories and ideas."  *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) (holding that attorney-client communications are "constitutionally protected expression," and therefore Congress could not bar recipients of Legal Services Corporation funds from representing clients in challenges to welfare law); *Thompson v. W. States Med.l Ctr.*, 535 U.S. 357 (2002) (striking down restriction on pharmacies' advertising of drug compounding services); *Conant v. Walters*, 309 F. 3d 629, 636 (9th Cir. 2002) (enjoining law that punished physicians for recommending medical marijuana because it "str[uck] at core First Amendment interests of

doctors and patients"); *Lowe v. SEC*, 472 U.S. 181, 229-30 (1985) (White, J., concurring) ("[T]he principle that the government may restrict entry into professions and vocations through licensing schemes has never been extended to encompass the licensing of speech, per se.").

### iii. The Firearm Owners' Privacy Act Fails Strict Scrutiny Because It Does Not Constitute the Least Restrictive Means to Advance a Compelling Government Interest

The challenged provisions of the Firearm Owners' Privacy Act—the recordkeeping, inquiry restriction, anti-harassment, and anti-discrimination provisions in § 790.338—do not withstand strict scrutiny, and therefore must be declared unconstitutional consistent with this Court's Order Granting Preliminary Injunction. As previously held, the government does not have a compelling interest for restricting practitioners' speech, and the Firearm Owners' Privacy Act is not the least restrictive means of protecting patients' privacy. *See* PI Order 15-20.

### 1. The Government Does Not Have a Compelling Interest in Restricting Plaintiffs' Speech.

First, the government does not have a compelling interest to restrict practitioners' speech regarding firearm ownership. "Information regarding firearm ownership is not sacrosanct." PI Order 16; *see also Cal. Democratic Party v. Jones*, 530 U.S. 567, 584 (2000) (concluding that government's stated interest in protecting privacy of voter affiliation information was not compelling in part because information was not sacrosanct, as evidenced by federal statutes requiring declaration of party affiliation as a condition of appointment to certain offices). Both Florida and the federal government heavily regulate firearms, and to purchase a firearm, Florida even requires residents to provide personal information and undergo a criminal background check. *See, e.g.*, Fla. Stat. Ch. 790; 18 U.S.C. § 922; Fla. Stat. § 790.065. To carry a concealed firearm in Florida, a license is required. Fla. Stats. §§ 790.01, 790.06. Given that information about firearm ownership in Florida is not "sacrosanct," the Court properly held that the

government does not have a compelling interest in protecting its privacy by restricting

practitioners' speech.

Even if information of firearm ownership *could* be considered "sacrosanct," Defendants

have not introduced any evidence to prove that physicians regularly discriminate against patients

based on firearm ownership, let alone that it rises to the level of a "compelling" governmental

interest.  PI Order 16.  To the contrary, many, if not most, patients might actually *prefer* to be

asked and to disclose such information in order to obtain the most thorough or efficient

preventative care.  In some physicians' experiences, patients rarely object to discussions about

gun ownership and safety practices.  JSUF ¶ 21.  Some parents do not understand the risks of

firearms and lack knowledge on how to safely store and lock their firearms and Plaintiffs'

patients typically express gratitude and appreciation for discussing firearms.  See JSUF ¶ 21, 28.

Similarly, the legislature failed to identify any data showing that physicians frequently

harass or discriminate against patients based on their ownership of firearms; instead, the

legislature focused on a handful of anecdotes and news accounts of the incident in Ocala.  *See*

JSUF ¶ 3.  "It is unlikely that a concern for some patients who may be offended or

uncomfortable by questions regarding firearm ownership could justify this law."  PI Order 16;

*see also Sorrell*, 131 S. Ct. at 2669 ("It is doubtful that concern for 'a few' physicians who may

have 'felt coerced and harassed' by pharmaceutical marketers can sustain a broad content-based

rule like § 4631(d).").  This is especially so in light of those patients who welcome and

appreciate such inquiries and discussions.  "Many are those who must endure speech they do not

like, but that is a necessary cost of freedom."  *Sorrell*, 131 S. Ct. at 2669.

Finally, as noted by the Court, Defendants' interest in preventing discrimination is less

compelling and more "dubious," as the law continues to allow physicians to terminate the

doctor-patient relationship based on the patient's refusal to answer questions about firearm ownership.  PI Order 17; *see FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 396 (1984) (finding the substantiality of the government's asserted interest "dubious" where the law at issue provided "'only ineffective or remote support for the government's purpose'").

### 2.      The Act is Not the Least Restrictive Means of Achieving the Government's Interest.

Even assuming the purported state interest advanced by the Firearm Owners' Privacy Act is compelling, the statute does not constitute the least restrictive means of achieving it.  PI Order 17; *see also Solantic*, 410 F.3d at 1258.  This hurdle is raised even higher for statutes that impose broad content-based restrictions to protect "the sensibilities of listeners."  *United States v. Playboy Entm't Grp.*, 529 U.S. 803, 813 (2000).  For those statutes, "the general rule is that the right of expression prevails, even where no less restrictive alternative exists."  *Id.*

When a statute is content-restrictive on its face, the statute must be "'*necessary* to serve the asserted [compelling] interest.'"  *R.A.V.*, 505 U.S. at 395 (citations omitted) (emphasis in original).  "The existence of adequate content-neutral alternatives . . . 'undercuts significantly' any defense of such a statute."  *Id.*  This Court has previously determined that the legislature overlooked content-neutral alternatives to the anti-inquiry provision, the anti-recording provision, the anti-harassment provision, and the anti-discrimination provision. *See* PI Order 17-20 (relying on the consideration set forth in *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)).

First, there is a less restrictive means of achieving the legislature's goals behind passing the anti-inquiry provision: a statute allowing patients to decline from answering questions about firearm ownership.  PI Order 18 ("Section 790.338(4) already provides that a patient may decline to answer questions about firearm ownership.  This provision likely provides an effective means to protect patients' privacy.").  "Placing the decision-making authority in the hands of the

patients is likely to be a less restrictive alternative to prohibiting practitioners' speech."  PI Order 18 (citations omitted).

Second, for the anti-recording provision, State and federal laws already protect patients' medical records as confidential.  *See, e.g.*, *Health Ins. Portability & Accountability Act of 1996*, 42 U.S.C. § 1320d, et seq.; Fla. Stat. § 456.057.  Defendants fail to explain why those laws are insufficient to protect patients' privacy.  PI Order 19.  Nonetheless, the legislature could have prohibited doctors from entering information into medical records for only those patients who declined to answer questions about firearm ownership, which would be a less restrictive means than the anti-recording provision of the Firearm Owners' Privacy Act.

Finally, the anti-harassment and anti-discrimination provisions could have been replaced by laws prohibiting offensive *conduct* without regard to subject matter.  "A law not limited to a particular subject would have the same beneficial effect as the State hopes to achieve with the anti-harassment and anti-discrimination provision" and Defendants offer to argument or evidence to suggest otherwise.  PI Order 19.

Thus, the State's broad restriction on speech in rejection of a lesser restrictive manner undermines the strength of the State's alleged compelling interest.  The State has chosen *not* to regulate physicians' conduct in a way that would ensure patients' ability to protect their privacy, but rather has jumped directly to a broad restriction on a particular subject matter.  Content-based speech restrictions, however, must be the *last*, not first, resort.  *See Ashcroft*, 542 U.S. at 666 ("[T]he purpose of the [least restrictive] test is not to consider whether the challenged restriction has some effect in achieving Congress' goal, regardless of the restriction it imposes.  The purpose of the test is to ensure that speech is restricted no further than necessary to achieve the goal, for it is important to ensure that legitimate speech is not chilled or punished.")

Physicians' alternative avenues for speech (*e.g.*, via brochures) cannot justify these content-based restrictions. Under the applicable strict scrutiny, the State bears the burden of proving that the speech restriction is *the* least restrictive means of furthering a *compelling* state interest. *See Solantic*, 410 F.3d at 1258. In other words, the State must show the speech restriction is truly necessary to serve a compelling interest—regardless of whether alternative avenues for expression remain available. Under clearly established Eleventh Circuit and Supreme Court precedent, the existence of alternate venues for expression are relevant *only* when a restriction is content-neutral—that is, it does *not* restrict speech on a particular topic—and therefore is subject to the lower standard of scrutiny applicable to content-neutral "time, place, and manner restrictions," a standard that does take into account alternative avenues for expression. *See id.*

As such, consistent with its determination that "Plaintiffs have a substantial likelihood of succeeding on the merits of their constitutional challenge" at the preliminary injunction stage, the Court should find the law unconstitutional and grant summary judgment in Plaintiffs' favor.

**B.      The Firearm Owners' Privacy Act is Unconstitutionally Vague.**

Though the Firearm Owners' Privacy Act is unconstitutional on its face based on strict scrutiny analysis and fails on this ground alone, the Firearm Owners' Privacy Act is also unconstitutionally vague. *See* PI Order 10 ("Because I find that Plaintiffs are likely to succeed on their facial challenge to the law, I need not reach their other constitutional challenges.") "[A] statute[,] which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law," because it "fail[s] to put potential violators on notice that certain conduct is prohibited . . . and provide explicit standards for those who apply the law." *Harris*, 564 F.3d at 1310-1311 (internal quotations omitted). "[V]agueness of [a

- 17 -

content-based] regulation raises special First Amendment concerns because of its obvious

chilling effect on free speech," *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997), and "a more

stringent vagueness test should apply." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates,*

*Inc.*, 455 U.S. 489, 499 (1982).

  The Firearm Owners' Privacy Act does not meet this stringent standard.  The statute's

no-inquiry and no-recording provisions bar physicians from recording *any* information or

making *any* inquiries concerning the ownership of a firearm *unless* the practitioner believes in

good faith "that this information is relevant to the patient's medical care or safety, or the safety

of others."  Fla. Stat. § 790.338(1)-(2).  The Firearm Owners' Privacy Act, however, does not

provide any guidance or definitions for that vague carve-out.  In fact, many practitioners believe

that information about firearms is *always* "relevant" to a patient's care as part of routine

preventive medicine, but that reading would render the statute meaningless.  *See In re Davis*, 565

F.3d 810,823 (11th Cir. 2009) ("We cannot read statutory language in a way that renders it

wholly meaningless or nonsensical."); *see* JSUF ¶ 30 (stating that there is not a clear "line

between what is a preventive health visit and what is a 'sick' visit").

  As a result, practitioners reasonably fear that the law requires some higher, unspecified

level of "relevance" to the specific patient's care.  The only concrete definition of "relevance"

appears in the EMT provision: emergency personnel can make inquiries about firearm ownership

if they are confronting a "medical emergency" or an "imminent danger or threat."  Fla. Stat. §

790.338(3).  That standard, of course, would never be met in the context of standard screening

questions that are necessary for effective, tailored preventive medicine.  *See* JSUF ¶ 29, 31.

  Additionally, the "harassment" and "discrimination" provisions are void for failing to

give practitioners sufficient notice of the prohibited conduct because the Firearm Owners'

Privacy Act fails to define either of the operative words: "unnecessarily harassing" or "discriminate."  *See* Fla. Stat. §§ 790.338(5)-(6).  Under the former provision, practitioners are left to guess what conduct is prohibited and to guess what patients might regard as "harassment."  "This is not permissible under the First Amendment."  *See Conant*, 309 F.3d at 639 (striking down statute criminalizing speech by doctors that "the patient believes to be a recommendation of marijuana"); *see id.* (citing *Thomas v. Collins*, 323 U.S. 516, 535 (1945) (striking down statute that put speaker "wholly at the mercy of the varied understanding of his hearers")).  The latter provision is similarly vague.  Although one might expect the provision to prohibit doctors from terminating the doctor-patient relationship based on a refusal to answer questions about gun ownership, another provision of the statute makes explicit that the statute does not alter the rule that a doctor is free to cease providing services to a patient for any reason, if the patient has sufficient time to find a new doctor.  *See* Fla. Stat. § 790.338(4).  Because the law is vague and leaves practitioners to "guess at its meaning," it "violates the first essential of due process of law." *Harris*, 564 F.3d at 1310.

### C.  The Firearm Owners' Privacy Act is Unconstitutionally Overbroad.

Even assuming that certain applications of the Firearm Owners' Privacy Act to abusive conduct would be constitutionally permissible, the law is nevertheless void because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Stevens*, 130 S. Ct. at 1587 (quoting *Wash. State Grange v. Wash. State Republican Party.*, 552 U.S. 442, 449 n.6 (2008)); *Weaver v. Bonner*, 309 F.3d 1312, 1318 (11th Cir. 2002).  The "overbreadth doctrine prohibits the . . . [State] from banning [even] unprotected speech if a substantial amount of protected speech is prohibited or chilled" as a result.  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 237 (2002).

- 19 -

The Firearm Owners' Privacy Act is overbroad under this standard. In addition to prohibiting alleged abusive or wrongful conduct by *errant* physicians, the law also broadly regulates and restricts *every* practitioner's speech on the subject of firearms, affecting practitioners' routine patient interactions daily.  In fact, the law appears to preclude even *consented-to* inquiries or recording of information.  Plaintiffs' experience demonstrates that, while they have asked numerous patients each day about gun ownership, and engaged in discussions about safe storage practices with many of those, they have rarely if ever had a patients object to the question; to the contrary, some patients have expressed gratitude and appreciation for their physician initiating the discussion.  *See* JSUF ¶ 21.  Indeed, the legislative history reflects only a single incident that the Legislature believed to be inappropriate.  *See* JSUF ¶ 3.  The statute is presently curtailing many more constitutionally protected exchanges than the few situations in which the statute might potentially constitutionally be applied, assuming any exist.  *See, e.g.*, JSUF ¶¶ 32-38.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter summary judgment in favor of Plaintiffs, enter a declaratory judgment that the challenged provisions are unconstitutional, and permanently enjoin Defendants from enforcing the challenged provisions.

This 11th day of November, 2011.

Respectfully submitted,

/s/ Edward M. Mullins
Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
Hal M. Lucas (Fla. Bar No. 853011)
hlucas@astidavis.com
Douglas J. Giuliano (Fla. Bar No. 15282)
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2847
Tel.: (305) 372-8282 / Fax: (305) 372-8202

Bruce S. Manheim, Jr.*
Bruce.manheim@ropesgray.com
Douglas H. Hallward-Driemeier*
Douglas.hallward@ropesgray.com
Augustine M. Ripa*
Augustine.ripa@ropesgray.com
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington D.C. 20005
Tel.: (202) 508-4600 / Fax: (202) 383-8332

Jonathan E. Lowy*
jlowy@bradymail.org
Daniel R. Vice*
dvice@bradymail.org
Brady Center To Prevent Gun Violence
Legal Action Project
1225 Eye Street NW, Suite 1100
Washington, DC 20005
Tel.: (202) 289-7319 / Fax: (202) 898-0059
*Admitted pro hac vice
*Counsel for Plaintiffs*

- 21 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 11, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Edward M Mullins*

Edward M. Mullins (Fla. Bar No. 863920)

## SERVICE LIST
*Wollschlaeger, et al. v. Farmer, et al.*
Case No.: 11-22026-Civ-COOKE/TURNOFF
United States District Court, Southern
District of Florida

Jason Vail
Jay.vail@myfloridalegal.com
Assistant Attorney General
Office of the Attorney General
PL-01
The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300

*Counsel for Defendants*
Electronically served via CM/ECF

Gregory M. Cesarano
gcesarano@carltonfields.com
Carlton Fields, P.A., Miami Tower
100 Southeast Second Street
Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Counsel for Amicus Curiae*
    *National Rifle Association*
Electronically served via CM/ECF

Thomas Richard Julin
tjulin@hunton.com
Hunton & Williams
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2516
Facsimile: (305) 810-2460

*Counsel for Amicus Curiae*
    *American Civil Liberties Union, et al.*
Electronically served via CM/ECF