UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:11-cv-22026-MGC

**DR. BERND WOLLSCHLAEGER**, et al.,

    Plaintiffs,

    v.

**FRANK FARMER**, et al.,

    Defendants.

_____/

# DEFENDANTS' RESPONSE
# TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The defendants respond to the plaintiffs' motion for summary judgment. The defendants rely on the arguments made in their motion for summary judgment, but make the following brief points.

## MEMORANDUM OF LAW

**I.    SECTION 790.338 IS A CONTENT-NEUTRAL ANTI-DISCRIMINATION LAW THAT FOCUSES ON ACTS OF DISCRIMINATION AND NOT SPEECH.**

Section 790.338 is a run-of-the-mill anti-discrimination law no different in text and operation than its more famous relations such as Title VII and the American with Disabilities Act. Just as these federal acts are content-neutral, so is s. 790.338.

Whether a statute is content-neutral or content-based initially is determined from the face of the act in question. *G.K. Ltd. Travel v. City of Oswego,* 436 F.3d 1064, 1071 (9th Cir. 2006). "In deciding if a statute is content-neutral, the 'plain meaning of the text controls, and the legislature's specific motivation . . . is not relevant, so long as the provision is neutral on its face.'"*Phelps-Roper v. Troutman,* 2001 WL 4975771 *2 (8th Cir. 2001). Further, it makes no difference if an act is adopted because of the plaintiff's specific activity, *Phelps-Roper v.*

1

*Nixon,* 545 F.3d 685, 691 (8th Cir. 2009), as long as the act is content-neutral in that it regulates "regardless of content or viewpoint." *Phelps-Roper v. Troutman,* 2001 WL 4975771 *2. See also, *Solantic LLC v. City of Neptune Beach,* 410 F.3d 1250, 1259, esp. n. 8 (11th Cir. 2005) (focusing on the law's specific terms rather than its justification).Thus, as a general rule, laws that by their terms distinguish between favored and disfavored speech on the basis of their ideas are content-based, and are found to be content-based only where the statute's prohibition is directed at specific content. *Cooper v. Dillon,* 403 F.3d 12-08, 1215 (11th Cir. 2005). In contrast, content-neutral statutes do not address the content of speech. *Id.* Moreover, a "regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989); *Cooper v. Dillon,* 403 F.3d 1208, 1215 (11th Cir. 2005).

Consequently, anti-discrimination statutes do not violate the First Amendment. *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston,* 515 U.S. 557, 572 (1995) ("Provisions like these are well within the State's usual power to enact when a legislature has reason to believe that a given group is the target of discrimination, and they do not, as a general matter, violate the First or Fourteenth Amendments."). The reason is that anti-discrimination statutes do "not, on [their] face, target speech or discriminate on the basis of its content, the focal point of its prohibition being rather on the *act* of discriminating against individuals . . ." *Id.*, emphasis added. See also *Wisconsin v. Mitchell*, 508 U.S. 476, 487-489 (1993); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 389 (1992); *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984), all stating that Title VII is permissible content-neutral regulation of conduct under the First Amendment.

Sections 790.338(5) and (6) address discrimination and harassment. On their face, these sections focus on *conduct* in the same way as Title VII. Like Title VII these sections do not target specific speech, nor regulate speech based on the content of the ideas conveyed. The motivation of the Legislature — or individual legislators — is irrelevant to a determination whether the sections are content-neutral. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002) ("Floor statements from two Senators cannot amend the clear and unambiguous language of a statute. We see no reason to give greater weight to the views of two Senators than to the collective votes of both Houses, which are memorialized in the unambiguous statutory text."); *Phelps-Roper v. Troutman,* 2001 WL 4975771 *2; *Szehinskyj v. Attorney General*, 432 F.3d 253, 256 (3d Cir. 2005) ("what individual legislators say a statute will do, and what the language of the statute provides, may be far apart indeed. The law is what Congress enacts, not what its members say on the floor."); *Public Citizen v. Rubber Manufacturers Association,* 533 F.3d 810, 819 (D.C. Cir. 2008) (court does not ordinarily give controlling weight to colloquies between legislators).[1]

If *Wisconsin v. Mitchell*, *R.A.V. v. City of St. Paul, Minn.*, and *Hishon v. King & Spalding* mean anything, ss. 790.338(5) and (6) do not violate the First Amendment.

Sections 790.338(1) and (2) facilitate the anti-discrimination and anti-harassment provisions. As the defendants have previously emphasized, s. 790.338(2), urging practitioners to refrain from asking about gun ownership, shields individuals from forced disclosure of their

---

[1] The plaintiffs also mention statements supposedly made by a representative of the National Rifle Association. Those statements as to the act's purported purpose deserve even less weight than those of individual legislators, which deserve none at all.

membership in a class now protected from discrimination and harassment. As previously discussed, such a measure is a widespread feature of federal anti-discrimination law, and defendants' counsel has been unable to find a single case holding that a prohibition on such questions is unlawful. Section 790.338(1) serves the same purpose by urging practitioners not to place the answers to gun ownership questions in the medical record; this inhibits discrimination by limiting those in the practitioner's office who have access to such information and who might be tempted to discriminate.

If the court needs a framework for analyzing the constitutionality of ss. 790.338(1) and (2), the best approach is that outlined in *U.S. v. O'Brien,* 391 U.S. 367 (1968). This case addressed the test for situations where speech and conduct are combined in the same course of conduct. *Id.* at 376. See also *Forum for Academic and Institutional Rights Inc. v. Rumsfeld,* 291 F.Supp.2d 269, 311 (D. N.J. 2003) (*O'Brien* standard applicable when a communicative element exists in statute targeting conduct)[2]. In such situations "a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien,* 391 U.S. at 376. In ss. 790.338 speech and nonspeech elements are combined. Section 790.338 prohibits discriminatory or harassing conduct, but incidentally burdens speech, if at all, by limiting the type of questions a practitioner can make in the medical treatment setting in the absence of medical necessity (subsection 2) and the recording of information in the medical record where is available to others who may be tempted to discriminate (subsection 1).

Under *O'Brien*, a governmental regulation is sufficiently justified if:

---

[2] Affirmed, *Rumsfeld v. Forum for Academic and Institutional Rights,* 547 U.S. 47 (2006).

      1.      It is within the constitutional power of the government.

      2.      It furthers an important or substantial governmental interest.

      3.      The governmental interest is unrelated to the suppression of free expression.

      4.      The incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien,* 391 U.S. at 377.

Here, the adoption of anti-discrimination laws is easily within Florida's constitutional authority. *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston,* 515 U.S. at 572 (state needs only *reason to believe* group is subject to discrimination in order to act).

The act clearly furthers an important or substantial governmental interest — even a compelling one, as the defendants argued in their motion for summary judgment.[3]

The protection of a class of individuals subject to discrimination is not related to the suppression of free expression, especially since the statute focuses on conduct rather than expression.

The incidental restriction on alleged First Amendment freedoms is no greater than necessary to further Florida's interest in protecting individuals from discrimination by health

---

[3] The plaintiffs assert that the fact s. 790.338(4) allows a physician to terminate a doctor-patient relationship if the patient refuses to answer a question about gun ownership somehow undermines the substantiality of the state's interest. In fact, this carve out recognizes the sensitivity of the doctor-patient relationship and affirms that, in such circumstances, a physician who feels unable to provide further care may end that relationship. See DE 20-3 pp. 3-4. However, if a physician chooses to continue seeing a patient, ss. 790.338(5) and (6) require the practitioner to treat the patient evenhandedly, the same as he or she would any other patient. The Legislature's sensitivity to these concerns reflects its attempt to find balance in a difficult situation where powerful emotions are aroused. The Legislature should be commended, not condemned, for attempting such a hard task. Such compromise does not diminish in the slightest the significance of the state's interest in protecting fundamental rights.

care practitioners in the delivery of health care on the basis of firearm ownership. A practitioner who does not know that an individual is a member of a protected class is unlikely to discriminate against her based on class membership. The means chosen is no different than that approved without discussion by a myriad of cases in federal anti-discrimination law. The Florida Legislature cannot, and should not, be faulted for following the path illuminated by the federal government and the federal courts in this area of the law.

In *Ward v. Rock Against Racism*, 491 U.S. at 798, the court stated that a regulation should not be invalidated if the court or the plaintiff conceives of a more effective method of securing the government's interest. *Id.* at 799 ("So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative."). Consequently, the plaintiffs' attempts in this case to insist that the availability of less-speech-restrictive alternatives to the provisions of ss. 790.338(1) and (2) warrant the statute's invalidation are unavailing and inconsistent with controlling law.

Consequently, s. 790.338 is content-neutral.

II. **THE LEGISLATURE HAD SUFFICIENT EVIDENCE OF DISCRIMINATION AND HARASSMENT TO SUPPORT THE LEGISLATION.**

The plaintiffs argue that because there is no evidence that practitioners regularly discriminate based on gun ownership, s. 790.338 lacks a sufficient factual basis. They misunderstand the test. The Legislature requires only a reason to believe discrimination is occurring — a rational basis — in order to enact anti-discrimination legislation. *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston,* 515 U.S. at 572. The Legislature had

sufficient evidence to support a reason to believe that health care practitioners were discriminating against patients on the basis of gun ownership. DE 87 para. 3-9.

Moreover, the evidence in this record is sufficient to support the conclusion that many patients do not wish to discuss issues of gun ownership. DE 87 para. 22, 24. Furthermore, this record indicates that at least some practitioners exploit the doctor-patient relationship to pester patients about firearm ownership when they do not wish to discuss the matter. DE 87 para. 23-24.

Consequently, the limited restraints the Legislature has asked practitioners to observe in the delivery of medical care are reasonable.

### III. THE STATUTE IS NOT VAGUE OR OVERBROAD.

The plaintiffs contend that the provisions addressing discrimination and harassment, ss. 790.338(5) and (6), are vague and overbroad.

#### A. The statute is not vague.

A measure is vague if a person of common intelligence cannot understand from the statute's text what acts are prohibited. *Avera v. Airline Pilots Ass'n Intern.*, 2011 WL 3476824 *5 (11th Cir. 2011).

When the language of a statute is unambiguous, the courts must give it its plain meaning. *Christian Coalition of Florida, Inc. v. U.S.*, 2011 WL 5553651 *8 (11th Cir. 2011). The court starts from the assumption that the legislature used the words in the statute as they are commonly and ordinarily understood. *Boroski v. DynCorp Intern.*, 2011 WL 5082185 *8 (11th Cir. 2011). The court looks to extrinsic material only if the language is ambiguous, the plain meaning leads to an absurd result or there is clear evidence of a contrary legislative intent. *Id.*

While harassment and discrimination are not expressly defined in the act, these terms have ordinary meanings that are readily clear to persons of common intelligence. Regarding

"harassment," the act provides that a "health care practitioner … shall respect a patient's legal right to own or possess a firearm and should refrain from unnecessarily harassing a patient about firearm ownership during an examination." Ch. 2011-112, Laws of Fla. Harassment is defined by *Black's Law Dictionary*, 721 (7th ed. 1999), as "[w]ords, conduct or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose." Harassment is virtually identically defined in several sections of the Florida Statutes. To name just two, section 843.20 (2)(a) (a) states that "Harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress in that person and serves no legitimate purpose." And section 817.568 (1)(c) states that "Harass" means "to engage in conduct directed at a specific person that is *intended* to cause substantial emotional distress to such person and serves no legitimate purpose." (Emphasis added).

Adopting these common definitions renders the statute's prohibition of harassment clear: "A health care practitioner . . . should respect a patient's legal right to own or possess a firearm and should refrain from [engaging in repeated or persistent words conduct or action, directed at his patient that annoys, alarms or causes substantial emotional distress in his patient, or is intended to do so, and that serves no legitimate purpose] during an examination." Section 790.338(6). While at least one Supreme Court justice has commented that sexual harassment is vague to some degree, that was not enough to justify invalidating anti-harassment measures. See *Harris v. Forklift Systems Inc.*, 510 U.S. at 372, Scalia, J., concurring.

The plaintiffs also assert that the term "discriminate" is vague. This claim is equally meritless. The act of discrimination is defined by *Black's Law Dictionary*, 479-80 (7th ed. 1999), as a "law or established practice that confers privileges on a certain class or that denies privileges

to a certain class because of race, age, sex, nationality, religion or handicap." *Webster's Ninth New Collegiate Dictionary*, 362 (1983), further defines "discriminate" as "to make a difference in treatment or favor on a basis other than individual merit." The federal courts have had no trouble determining what "discriminate" means. See, for instance, *Sisco v. Fabrication Technologies Inc.,* 350 F.Supp.2d 932, 938 (D. Wyo. 2004) ("'The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' . . . (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (Ginsburg, J., concurring)).").

      **B.**      **The statute is not overbroad.**

"'A law is void on its face for overbreadth if it 'does not aim specifically at evils within the allowable area of (government) control but, . . . sweeps within its ambit other activities that in ordinary circumstances constitute an exercise' of protected expressive or associational rights.'" *Johnson v. City of Opelousas*, 658 F.2d 1065, 1071 (5th Cir. 1981).

As previously discussed, an anti-discrimination/harassment statute does not implicate First Amendment rights. Consequently, s. 790.338 drafted, as this one is, on the model of Title VII cannot founder on the overbreadth doctrine.

The plaintiffs argue that the statute appears to preclude even consented to requests for information about gun ownership, as if such a prohibition brought the statute under the overbreadth doctrine. This is an absurd argument. The statute plainly contemplates that the choice whether to answer such questions resides with the patient. Section 790.338(4) ("A patient *may* decline to answer or provide any information about the ownership of a firearm . . ." [e.a]). The statute is silent about firearms safety discussions; thus, by necessary implication they are not prohibited, and whether to engage in such discussions is up to the participants.

III. **THE FACT THE STATE COLLECTS PERSONAL INFORMATION DURING THE REGULATION OF THE RIGHT TO KEEP AND BEAR ARMS DOES NOT MEAN THAT INFORMATION IS NOT ENTITLED TO CONFIDENTIALITY PROTECTION.**

The plaintiffs argue that because the state collects personal information while reasonably regulating the keeping and bearing of arms, none of that information is entitled to confidentiality protection.

Confidentiality protections can spring from the Constitution, federal or state, and they can be conferred by statute. For example, the states collect personal information about people in regulating driver licenses and motor vehicle ownership. However, Congress by law has conferred substantial confidentiality protections on that information. See 18 U.S.C. s. 2721, known as the Driver Privacy Protection Act (DPPA).

In the same way, Florida has provided for the confidentiality of the personal information of firearm owners. See ss. 790.0601, 790.065, Fla. Stat.

Section 790.338 is just another layer of confidentiality protection no different in concept than DPPA.

IV. **THE PLAINTIFFS HAVE FAILED TO OFFER ANY EVIDENCE THAT THE BOARD OF MEDICINE WILL ENFORCE S. 790.338.**

The plaintiffs mischaracterize their own evidence when they claim "the Florida Board of Medicine has determined that a violation of s. 790.338 would be a 'failure to comply with a legal obligation and current disciplinary guidelines would apply.'" DE 86 p. 12 (p. 7 of the argument). They cite to the joint stipulation of facts (DE 87, para. 12) for that proposition. But they misquote the stipulation. The matter referred to in that paragraph is the minutes of a Board *committee* meeting, not the board itself, and the stipulation misquotes the minutes. In fact, the minutes say: "After discussion, the *Committee* determined violation of this law falls under failure to comply with a legal obligation . . ." Emphasis added.

10

The committee, of course, is not the board, and there is no evidence in this record that the committee has the authority to bind the board or to set board policy. Moreover, it would be unusual for the committee to have such authority.

In the absence of proof of such binding authority, the committee's determination is not the official line, and the plaintiffs have failed to demonstrate an objective, realistic possibility that s. 790.338 will be enforced against them at all, or, more to the point, enforced as to the speech they which to make. See *Pittman v. Cole,* 267 F.3d 1269 (11th 2001); *The International Academy of Oral Medicine & Toxicology v. The North Carolina State Board of Dental Examiners*, 451 F.Supp.2d 746 (E.D. N.C. 2006)

V. **THE MATTERS ASSERTED IN THE PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS ARE NOT ADMISSIBLE AND THEREFORE SHOULD NOT BE CONSIDERED.**

The court cannot consider on summary judgment matters that are not admissible under the Rules of Evidence. See Fed.R.Civ.P. 56(c)(2) and (4).

Paragraph 1 asserts irrelevant matter. The Board of Medicine's complaint policy and what constituted an acceptable complaint before the effective date of s. 790.338 do not tend to prove or disprove any matter in dispute.

Paragraph 2 is objectionable on the ground that the matter asserted is not based on personal knowledge, is speculative and is inadmissible opinion. Furthermore, to the extent that the matters asserted are opinion, there is insufficient foundation for the opinion.

Paragraph 3 is objectionable on the ground that the matter asserted is not based on personal knowledge, is speculative and is inadmissible opinion. For instance, the assertion that the mere filing of a complaint would harm one's professional reputation and the affiant's business and inflict cost and stress is speculative and lacking in personal knowledge, and constitutes inadmissible opinion lacking in an appropriate foundation. (In fact, complaints

undergo rigorous screening for legal sufficiency and are confidential until a probable cause panel determines that the complaint is supported by probable cause. See defendants statement of facts para. 7. Thus, the plaintiffs' assertion that their speech is chilled because of the possibility someone will file a complaint for a mere discussion about firearm safety is wholly subjective.)

## CONCLUSION

The court should grant judgment to the defendants.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

s/ *Jason Vail*

Jason Vail
Florida Bar no. 298824
Assistant Attorney General

Diane G. Dewolf
Florida Bar no. FBN 59719
Deputy Solicitor General

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to counsel of record through use of the Court's CM/ECF system on November 23, 2011.

s/ *Jason Vail*