IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:11-CV-22026-COOKE/TURNOFF

DR. BERND WOLLSCHLAEGER, *et al.*,

    Plaintiffs,

v.

FRANK FARMER, *et al.*,

    Defendants.

_____/

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS HAVE STANDING, AND THEIR CLAIMS ARE RIPE FOR REVIEW. ...................................................................................................................1

II. THE FIREARM OWNERS' PRIVACY ACT IS A CONTENT-BASED, VIEWPOINT-DISCRIMINATORY RESTRICTION ON SPEECH THAT IS SUBJECT TO STRICT SCRUTINY. ...............................................................................3

III. THE ACT FAILS UNDER STRICT SCRUTINY BECAUSE IT NEITHER ADVANCES A COMPELLING GOVERNMENT INTEREST NOR CONSTITUTES THE LEAST RESTRICTIVE MEANS OF FURTHERING THE STATE'S PURPORTED INTEREST. .......................................................................6

    A. The Purported Government Interest Does Not Justify The Act ...............................6

    B. The Statute Does Not Constitute The Least Restrictive Means Of Advancing The State's Purported Interests ...............................................................7

IV. THE STATUTE IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD. ............8

    A. The Statute is Unconstitutionally Vague. ................................................................9

    B. The Statute is Unconstitutionally Overbroad. .......................................................10

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ACLU v. The Florida Bar*,
   999 F.2d 1486 (11th Cir. 1993) ................................................................................................2

*Bloedorn v. Grube*,
   631 F.3d 1218 (11th Cir. 2011) ................................................................................................3

*CAMP Legal Def. Fund, Inc., v. City of Atlanta*,
   451 F.3d 1257 (11th Cir. 2006) ................................................................................................2

*Case v. Eslinger*,
   555 F.3d 1317 (11th Cir. 2009) ................................................................................................8

*Cooper v. Dillon*,
   403 F.3d 1208 (11th Cir. 2005) ................................................................................................4

*Florida ex rel. McCollum v. Dept. of Health and Hum. Serv.*,
   716 F. Supp. 2d 1120 (N.D. Fla. 2010).....................................................................................3

*Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*,
   25 F.3d 999 (11th Cir. 1994) ....................................................................................................9

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.*,
   515 U.S. 557 (1995).........................................................................................................3, 5, 6

*Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*,
   601 F.2d 809 (5th Cir. 1979) ....................................................................................................2

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992)..................................................................................................................5

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001)....................................................................................................10

*Solantic, LLC v. City of Neptune Beach*,
   410 F.3d 1250 (11th Cir. 2005) ................................................................................................6

*United States v. Playboy Entm't Grp., Inc.*,
   529 U.S. 803 (2000)...............................................................................................................7, 8

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)...............................................................................................................4, 8

**STATUTES**

Fla. Stat. §§ 790.338 ................................................................................................3, 4, 7

**MEMORANDUM IN REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants oppose Plaintiffs' Motion for Summary Judgment with many of the same arguments that the Court has already considered and found unpersuasive. Defendants also reassert their new, and meritless, theory that the constitutional fate of the Firearm Owners' Privacy Act is in some way tied to that of many federal anti-discrimination laws. As set forth below and in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (DE 99), the Court should reject those arguments. There is no question that the Act is a facially content-based, viewpoint-discriminatory statute that fails to meet strict scrutiny. It is also unconstitutionally vague and overbroad. Plaintiffs' Motion for Summary Judgment should be granted.

**I.   PLAINTIFFS HAVE STANDING, AND THEIR CLAIMS ARE RIPE FOR REVIEW.**

Notwithstanding the Court's prior ruling that Plaintiffs' First Amendment claims are properly presented at this time, *see* Order Granting Pl. Mot. for Prelim. Inj. ("PI Order") 7–10 (DE 80), Defendants continue to assert that Plaintiffs lack standing because they purportedly "fail[] to demonstrate an objective, realistic possibility that [the Act] will be enforced against them at all." Def. Resp. to Pl. Mot. for Summ. J. 10–11 ("Resp.") (DE 98). Plaintiffs have already responded to Defendants' standing and ripeness arguments in the response to Defendants' Motion for Summary Judgment, and Plaintiffs incorporate those arguments here. In short, Defendants' arguments ignore the special First Amendment values at stake in this litigation. The State has passed legislation with the specific intent to chill practitioners from engaging their patients in conversations about the dangers of guns in the home. The State has authorized a patient to file a complaint against a practitioner if the patient believes a doctor's inquiries intrude on the patient's "privacy" regarding firearms or if the patient deems the doctor's

safety counseling regarding firearms to be "harassing."  No other topic of counseling can subject a doctor to complaints.  *See* Pl. Supp. Statement of Undisputed Facts ("PSSUF") ¶ 1 (complaint form specifying that personality conflicts or perceived rudeness are not grounds for a complaint).  The mere threat that a patient will file a complaint and that the Board of Medicine will conduct an investigation is sufficient to damage a practitioner's reputation and professional standing—even if disciplinary action is never rendered.  Indeed, uncontested evidence supports Plaintiffs' fear that they will be the target of patient complaints should they stop censoring their speech.  *See* Pl. Opp. to Def. Mot. for Summ. J. 4.  And "nothing in the record indicates that the State *does not* intend to enforce the law if a patient files a complaint."  PI Order 9 (emphasis added).  Thus, the Act has already had its intended effect and Plaintiffs are refraining from constitutionally protected speech.  *See* Pl. Opp. to Def. Mot. for Summ. J. 5 (DE 99); PSSUF ¶ 2.

      The State cannot rely on the vague and ambiguous nature of the Act's provisions to defeat Plaintiffs' standing.  Where ambiguous rules "have forced [a plaintiff] to steer wide of any possible violation lest [he] be unwittingly ensnared," a plaintiff has suffered an injury-in-fact.  *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 820 (5th Cir. 1979).  "[I]t is the existence, not the imposition, of standardless requirements that causes [the] injury."  *CAMP Legal Def. Fund, Inc., v. City of Atlanta*, 451 F.3d 1257, 1275 (11th Cir. 2006).  *See also ACLU v. The Florida Bar*, 999 F.2d 1486, 1493 (11th Cir. 1993) (finding justiciable controversy in pre-enforcement challenge because plaintiffs "alleged an actual and well-founded fear that the law w[ould] be enforced against them. . . . [T]he alleged danger of this statute is . . . one of self-censorship[,] *a harm that can be realized without an actual prosecution*") (internal quotations and citations omitted).

Plaintiffs need not expose themselves to potential disciplinary proceedings or wait until the law is actually enforced against them to substantiate the reasonableness of their fears. Plaintiffs have, therefore, established standing and that their claims are ripe.  *See Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011); PI Order 7-10; *see also Florida ex rel. McCollum v. Dept. of Health and Hum. Serv.*, 716 F. Supp. 2d 1120, 1149 (N.D. Fla. 2010).

## II. THE FIREARM OWNERS' PRIVACY ACT IS A CONTENT-BASED, VIEWPOINT-DISCRIMINATORY RESTRICTION ON SPEECH THAT IS SUBJECT TO STRICT SCRUTINY.

Contrary to Defendants' attempts to rewrite the Act, the Firearm Owners' Privacy Act is not merely "a run-of-the-mill anti-discrimination law" analogous to Title VII of the Civil Rights Act ("Title VII") and the Americans With Disabilities Act ("ADA").  *See* Resp. 1.[1]  Unlike those statutes, which have as their "focal point" prohibiting "the *act* of discriminating against individuals," *see Hurley v. Irish-American Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 572 (1995) (emphasis added), the "focal point" of the Firearm Owners' Privacy Act is prohibiting speech itself.  Indeed, as the Court observed, "[t]he law has more than an incidental effect on protected expression; rather, the law *directly targets protected expression by restricting it*."  PI Order 15 (emphasis added).

The Act's text, title, and purpose all demonstrate that restricting speech is the central purpose of the Act.  The Act's title reflects the legislature's focus on communications—the requesting or the recording of information.  The legislature noted in the title that the Act's purpose "relate[s] to the *privacy* or firearm owners."  *See* JSUF ¶ 2 (emphasis added); *see also* PI Order 12.  Not surprisingly, therefore, the first four provisions of the law target speech alone.  *See* Fla. Stat. §§ 790.338(1)–(4).  The Act's speech restrictions are not "incidental"; they are the

---

[1] This position has evolved from Defendants' Motion for Summary Judgment, which argued that only the anti-discrimination and harassment provisions are content-neutral.  *See* Def. Mot. for Summ. J 16 (DE 90).

*core* of the statute's punitive scheme, as reflected by the fact that one provision of the statute singles out the four explicitly speech-restrictive proscriptions of the statute for disciplinary enforcement. *See id.* § 790.338(8).

The anti-harassment and discrimination provisions similarly target protected speech and have already chilled Plaintiffs' expression. The one *act* of discrimination that is identified in the legislative history—terminating the physician-patient relationship—is explicitly *permitted* under the statute. *See* PI Order 4. Defendants offer no other examples of "conduct" that the Firearm Owners' Privacy Act possibly prohibits. *See* Resp. 2. In light of the statute's speech-focused purpose, and Defendants' inability to identify non-speech harassment or discrimination to which the act was directed, this Court properly recognized that "[p]hysicians concerned that a patient may interpret unsolicited counseling as 'unnecessarily harassing' have stopped or curtailed their practice of counseling patients on firearm safety." PI Order 11-12.

The statute's legislative history further confirms that the statute's "focal point" is restricting speech on a viewpoint-discriminatory basis, not restricting conduct.[2] As the Court recognized, the legislature intended to change practitioners' practice of *asking* about firearms. PI Order 12 (citations omitted) (emphasis added). Moreover, the Act was designed to counter a perceived anti-gun *message* conveyed by practitioners. *Id.* at 12–13; Joint Statement of Undisputed Facts ("JSUF") ¶ 5 (DE 87); *see also* JSUF ¶¶ 3-10. Such viewpoint-discriminatory statutes are subjected to the most exacting constitutional scrutiny because the State "has no such

---

[2] Defendants suggest that looking to the statute's legislative history is inappropriate, arguing that "'the plain meaning of the text controls, and the legislature's specific motivation . . . is not relevant'" with regard to statutes that are content-neutral on their face. Resp. 1, 3 (quoting *Phelps-Roper v. Troutman,* No. 10-2601, 2011 WL 4975771, at *2 (8th Cir. Oct. 20, 2011). This argument has no merit as this Court has already held that the Firearm Owners' Privacy Act *is not content-neutral* on its face. PI Order 10-15. Moreover, "[i]n determining whether a regulation is content-based or content-neutral, courts *must* 'look to the purpose behind the regulation.'" *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005) (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001)) (emphasis added). Indeed, "[t]he government's purpose is the controlling consideration" in examining the purported neutrality of a statute. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Statutes whose *purposes* are "to stifle speech of a particular content," regarding a particular subject matter are content based. *Cooper*, 403 F.3d at 1216.

authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992). Defendants ignore this canon of First Amendment law and the plain text of the statute.

Defendants' arguments in favor of a lesser standard of scrutiny are mistaken. For example, Defendants assert that *Hurley* establishes that "[t]he Legislature requires only a reason to believe discrimination is occurring—a rational basis—in order to enact anti-discrimination legislation."[3]  Resp. 6 (citing *Hurley*, 515 U.S. at 572). But *Hurley* dealt with a facially content-neutral public accommodations law whose "focal point" was preventing discriminatory conduct—not a facially content-based statute focusing on, and punishing, speech. *See generally Hurley*, 515 U.S 557.  Moreover, even the facially-neutral statute in *Hurley* did not pass constitutional muster; the court held its application to "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Id.* at 573.  The Firearm Owners' Privacy Act similarly robs Plaintiffs of their ability to control the content of their speech.[4]

Defendants also misconstrue *United States v. O'Brien*, which concerned the burning of draft cards.  391 U.S. 367 (1968).  In *O'Brien*, the Supreme Court fashioned a test for statutes regulating situations where "'speech' and 'nonspeech' elements are combined in the same course of *conduct*" and recognized that a "sufficiently important governmental interest in *regulating the nonspeech element* can justify *incidental limitations* on First Amendment freedoms." *Id.* at 376 (emphasis added).  Because there is no nonspeech element implicated or regulated by the no-recording and no-inquiry provisions, the *O'Brien* test is inapposite. *O'Brien*, 391 U.S. at 376.

---

[3] Notably, the *Hurley* Court does not use the term "rational basis" at all.
[4] Defendants' reliance on Supreme Court decisions describing Title VII as content-neutral is also misplaced.  Resp. 2, 3 (citing *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), *R.A.V.*, 505 U.S. at 389, and *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984)).  For the reasons discussed above and in the Plaintiffs' Opposition, the Act primarily targets speech, not conduct, and lacks the compelling purpose that justified Title VII.

Even as to the speech-restrictive aspects of the anti-harassment and anti-discrimination provisions, the government's purported interest is inadequate: "[i]t is unlikely that a concern for some patients who may be offended or uncomfortable by questions regarding firearm ownership could justify this law." PI Order 16. Moreover, in contrast to *O'Brien*, the governmental interest is not unrelated to the suppression of free expression. Neither *Hurley*, *O'Brien*, nor any other precedent cited by Defendants can save this facially content-based, viewpoint-discriminatory restriction on free speech.

### III. THE ACT FAILS UNDER STRICT SCRUTINY BECAUSE IT NEITHER ADVANCES A COMPELLING GOVERNMENT INTEREST NOR CONSTITUTES THE LEAST RESTRICTIVE MEANS OF FURTHERING THE STATE'S PURPORTED INTEREST.

The statute is facially unconstitutional because it neither advances a compelling state interest nor constitutes the least restrictive means of furthering the purported interest. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005). Indeed, "[c]ontent-based statutes 'are presumptively invalid.'" PI Order 11 (quoting *R.A.V.*, 505 U.S. at 382).

#### A. The Purported Government Interest Does Not Justify The Act

As the Court already held, the State's purported interest in protecting the privacy of firearm ownership "does not appear to be a compelling one." PI Order 16. This conclusion is correct, for the reasons discussed in the Court's opinion and Plaintiffs' prior briefing, and the Act fails strict scrutiny for this reason alone. In particular, despite Defendants' contentions otherwise, *see* Resp. 10, "[i]nformation regarding firearm ownership is not sacrosanct; federal and state statutes heavily regulate firearm ownership, possession, and sale, and require firearm owners to provide personal information" in exchange for obtaining a firearm or a license in certain circumstances. PI Order 16 (citing exemplary state statutes). Moreover, personal

information provided to a physician regarding firearm ownership *already remains confidential* because "[s]tate and federal laws protect as confidential patients' medical records." *Id.* at 19.

Defendants also repeatedly assert that the State "had sufficient evidence of discrimination and harassment to support the legislation." Resp. 6. There is no factual basis for that assertion and, in any event, it misses the point. As the Court succinctly observed, Defendants can point to "no case law indicating that preventing practitioners from harassing or discriminating against a patient based on firearm ownership constitutes a compelling [] interest" in the first place. PI Order 16. Indeed, "'[m]any are those who must endure speech they do not like, but that is a necessary cost of freedom.'" *Id.* at 17 (quoting *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2669 (2011)). Moreover, Defendants "fail[ed] to provide any specific evidence, beyond anecdotal information, that such 'harassment' and 'discrimination' are widespread or pervasive," *id.* at 16, and nothing in the record, legislative history, or Defendants' recent briefing provides any further support. *See* Pl. Opp. to Def. Mot. For Summ. J. 7-10. In fact, the *only* potentially discriminating *act* identified by legislators—the termination of one doctor-patient relationship— is expressly *permitted* by the statute. *See* Fla. Stat § 790.338(4).

**B.    The Statute Does Not Constitute The Least Restrictive Means Of Advancing The State's Purported Interests.**

The State also cannot show that the Firearm Owners' Privacy Act constitutes the least restrictive means of advancing the purported interest. Defendants thus fail to meet their burden under strict scrutiny. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 823 (2000).

Defendants abandon this effort altogether in their Response and ignore the fact that less restrictive alternatives exist. *See* Pl. Mot. for Prelim. Inj. 10–12 (DE 16). Instead, they argue that Plaintiffs' identification of less speech-restrictive means is of no moment because "a regulation should not be invalidated if the court or the plaintiff conceives of a more effective

method of securing the government's interest." Resp. 6 (citing *Ward*, 491 U.S. at 798). This argument again conflates courts' treatment of content-neutral statutes, as in *Ward*, with content-based, viewpoint discriminatory statutes—as in the case at bar. *Playboy Entm't Grp., Inc.*, 529 U.S. at 823 ("It [is] for the Government, presented with a plausible, less restrictive alternative, to prove the alternative to be ineffective. . ."). The Court previously indicated that "Plaintiffs are deemed likely to prevail unless the State shows that Plaintiffs' proposed least restrictive alterative is less effective than enforcing" the statute. PI Order 18. Defendants have utterly failed to carry that burden, and the Court's preliminary injunction should be made permanent.

## IV.    THE STATUTE IS UNCONSTITUTIONALLY VAGUE AND OVERBROAD.

Defendants entirely fail to respond to Plaintiffs' vagueness and overbreadth challenges to sections (1) and (2) of the Firearm Owners' Privacy Act. *See* Resp. 7–9. Defendants appear to be operating under the misconception that Plaintiffs raised those challenges only with regard to sections (5) and (6) of the statute. *See id.* at 7. In fact, Plaintiffs have consistently contested (1) and (2) because the statute fails to define the standard of relevance for the good faith exception and would prohibit even consented-to inquiries or recording of information. *See* Pl. Mot. for Summ. J. 17–20 (DE 86); Pl. Mot. for Prelim. Inj. 13–15. When one party moves for final summary judgment, "it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses." *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009). Summary judgment should therefore be entered in Plaintiffs' favor as to sections (1) and (2).

With regards to sections (5) and (6), Defendants have not offered any new arguments to contest Plaintiffs' demonstration that the Firearm Owners' Privacy Act is unconstitutionally vague and overbroad. *See* Pl. Mot. for Prelim. Inj. 2, 12–15; Pl. Supp. Mem. 13–14 (DE 73); Pl.

Mot. for Summ. J. 17–20. Plaintiffs therefore rely on their previous arguments and also make a few brief points below.

### A.     The Statute is Unconstitutionally Vague.

Defendants persist in offering a variety of definitions in an attempt to show that the terms "harassment" and "discrimination" are not vague. *See* Resp. 7–8. But even those cherry-picked definitions contain inconsistencies. *Compare id.* at 8 (citing Fla. Stat. § 843.20 (2)(a)(a) (defining "harass" as behavior that "causes" substantial emotion distress) *with* Fla. Stat. § 817.568(1)(c) (defining "harass" as behavior "that is *intended* to cause" substantial emotional distress)). Moreover, the citations themselves belie Defendants' argument—if the definitions of "harass" and "discriminate" were clear on their face, then Florida statutes would have no need to define them.

Most importantly, Defendants fail yet again to articulate the line that distinguishes permissible from impermissible behavior. The only examples of even arguable harassment in the legislative history concerns doctors *speech*. JSSUF ¶¶ 3–10. And Defendants' own definition would expose doctors to discipline if their patients find the doctor's speech about gun safety to be "annoy[ing]." Resp. 8. In a context in which doctors' jobs frequently require them to raise uncomfortable topics, practitioners cannot have their livelihood depend on what a particular patient finds annoying. Similarly, Defendants define "discriminate" only by suggesting that it could mean "confer[ring] privileges on a certain class" or treating firearm owners "differently." Defendants have offered no example whatsoever of the actual behavior that might be prohibited; they have stated only that ending the physician-patient relationship does *not* constitute discrimination.[5]

---

[5] *See Georgia Pac. Corp. v. Occupational Safety & Health Review Comm'n*, 25 F.3d 999, 1005–06 (11th Cir. 1994) (holding regulation unconstitutionally vague in part because government official's inability "to settle upon a single

### B. The Statute is Unconstitutionally Overbroad.

The statute is also unconstitutionally overbroad. Once again, Defendants claim that "an anti-discrimination/harassment statute does not implicate First Amendment rights." *See* Resp. 9. Even if this statute were merely an anti-discrimination or anti-harassment statute, which it is not, Defendants are patently incorrect. *See* Pl. Opp. to Def. Mot. for Summ. J. 12. It is "not necessarily [the case] that anti-discrimination laws are categorically immune from First Amendment challenge when they are applied to prohibit speech solely on the basis of its expressive content." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206–09 (3d Cir. 2001).

Even assuming, as Defendants have asserted, that the anti-discrimination and anti-harassment provisions' language "does not limit their application *only* to speech," those provisions are still unconstitutional because "a substantial number of [their] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *See* Pl. Mot. for Summ. J. 19.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court enter Summary Judgment in favor of Plaintiffs, enter a Declaratory Judgment that the challenged provisions are unconstitutional, and permanently enjoin Defendants from enforcing the challenged provisions.

---

definition of [a] phrase" "demonstrates the vagueness of the regulation" and "necessarily implicates the adequacy of notice to the regulated party").

| | |
|---|---|
| This 5th day of December, 2011 | Respectfully submitted,<br>/s/ Edward M. Mullins_____<br>Edward M. Mullins (Fla. Bar No. 863920)<br>emullins@astidavis.com<br>Hal M. Lucas (Fla. Bar No. 853011)<br>hlucas@astidavis.com<br>Douglas J. Giuliano (Fla. Bar No. 15282)<br>Astigarraga Davis Mullins & Grossman, P.A.<br>701 Brickell Avenue, 16th Floor<br>Miami, Florida 33131-2847<br>Tel.: (305) 372-8282 / Fax: (305) 372-8202<br><br>Bruce S. Manheim, Jr.*<br>Bruce.manheim@ropesgray.com<br>Douglas H. Hallward-Driemeier*<br>Douglas.hallward@ropesgray.com<br>Augustine M. Ripa*<br>Augustine.ripa@ropesgray.com<br>Ropes & Gray LLP<br>700 12th Street NW, Suite 900<br>Washington D.C. 20005<br>Tel.: (202) 508-4600 / Fax: (202) 383-8332<br><br>Jonathan E. Lowy*<br>jlowy@bradymail.org<br>Daniel R. Vice*<br>dvice@bradymail.org<br>Brady Center To Prevent Gun Violence<br>Legal Action Project<br>1225 Eye Street NW, Suite 1100<br>Washington, DC 20005<br>Tel.: (202) 289-7319 / Fax: (202) 898-0059<br>*Admitted pro hac vice<br>*Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system. I also certify that the foregoing document is being served this date on all counsel of record or pro se parties on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Edward M Mullins*_____
Edward M. Mullins (Fla. Bar No. 863920)

## SERVICE LIST
*Wollschlaeger, et al. v. Farmer, et al.*
Case No.: 11-22026-Civ-COOKE/TURNOFF
United States District Court, Southern District of Florida

Jason Vail
Jay.vail@myfloridalegal.com
Assistant Attorney General
Office of the Attorney General
PL-01
The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300

*Counsel for Defendants*
Electronically served via CM/ECF

Gregory M. Cesarano
gcesarano@carltonfields.com
Carlton Fields, P.A., Miami Tower
100 Southeast Second Street
Suite 4200
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

*Counsel for Amicus Curiae*
   *National Rifle Association*
Electronically served via CM/ECF

Thomas Richard Julin
tjulin@hunton.com
Hunton & Williams
1111 Brickell Avenue
Suite 2500
Miami, Florida 33131
Telephone: (305) 810-2516
Facsimile: (305) 810-2460

*Counsel for Amicus Curiae*
   *American Civil Liberties Union, et al.*
Electronically served via CM/ECF