UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:11-cv-22026-MGC

**DR. BERND WOLLSCHLAEGER**, et al.,
    Plaintiffs,

v.

**FRANK FARMER**, et al.,
    Defendants.
_____/

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs fail to offer any new, compelling arguments, and instead rely to a large degree on this Court's order granting Plaintiffs' motion for preliminary injunction. Respectfully, however, in that order the Court did not fully consider the substantial body of case law detailing how a court is to determine whether a non-discrimination statute is, or is not, content-neutral. Consequently, the Court should revisit this question and revise its conclusions. When those neutrality principles are properly applied to section 790.338, the Court will find that it is not a content-based restriction on speech, it does not burden a practitioner's ability to deliver a firearm safety message, and it is narrowly aimed at the protection of a Second Amendment right. Therefore, this Court should grant Defendants' motion for summary judgment.

**I.    THE FIREARM PRIVACY ACT PROHIBITS HARASSMENT AND
     DISCRIMINATION, NOT SPEECH.**

Section 790.338 does not prohibit speech. The statute does not prevent practitioners from conveying relevant information about firearms, and it does not prevent a firearm ownership inquiry as long as that inquiry is made with a good faith belief that it is relevant to the patient's

medical care—that is, when it is medically relevant. Rather, the statute prevents the harassment of, and discrimination against, patients based solely on the fact that they are members of a protected class defined by their decision to exercise the constitutional right to keep and bear arms.

Plaintiffs' argue that the statute is invalid because physicians are only restricted from harassing or discriminating against their patients because of firearm ownership (a constitutionally protected right), and not other classes of behavior such as alcohol and tobacco use and sexual activities. But this contention is meritless. If the Legislature wanted to prohibit physicians from harassing or discriminating against patients because of their membership in a particular class, it could do so. Indeed, the Legislature has identified several categories of persons and protected them from harassment. *See, e.g.*, § 1006.47(3)(d), Fla. Stat. (prohibiting harassment of students or school employees who have alleged an act of harassment); § 843.20, Fla. Stat. (prohibiting harassment of identifiable members of a neighborhood crime watch program); § 843.0855(4) (making it a third degree felony to harass public officials or law enforcement officers). The Legislature has also designated persons to be protected from discrimination. *See, e.g.*, § 760.10, Fla. Stat. (prohibiting discrimination in hiring practices); § 760.23, Fla. Stat. (prohibiting discrimination in the sale or rental of real property). That it chose here to prohibit harassment and discrimination against patients who exercise their Second Amendment constitutional right to keep and bear arms, and not the other unprotected behaviors suggested by Plaintiffs, is within its constitutional authority. The Legislature may determine that one class of people merit protection while another may not require it.

Plaintiffs also take issue with the fact that the anti-harassment and anti-discrimination provisions do not contain a good faith exception. DE 99 at 6 n.7. Yet they do not even attempt to

2

explain how a physician could possibly harass or discriminate against a patient in good faith. Simply, there is no explanation. Neither Title VII nor the Americans with Disabilities Act (ADA)—or any other federal anti-discrimination statute—contains a good faith exception for the good reason that such an exception makes no sense. To contend that the lack of such an exception invalidates section 790.338 is irrational and contrary to law.

Plaintiffs' attempt to distinguish section 790.338 from the ADA and Title VII also fails. Plaintiffs first assert that the ADA was enacted to address "documented and widespread discriminatory conduct against persons." DE 99 at 11. But Plaintiffs fail to acknowledge the record evidence of documented discriminatory conduct against patients who own firearms, or who refuse to answer questions about firearm ownership, that is taking place throughout the State and that is stipulated to in the parties' joint statement of undisputed facts. *See* DE 87 ¶ 3 (woman told she had 30 days to find a new physician after she refused to answer questions about firearms in her home); *id*. ¶ 5 (father asked by a physician to remove firearms from his home); *id*. ¶ 6 (report of mother separated from her children while medical personnel interrogated her children about firearms); *id*. ¶ 8 (report of physician refusing to care for a nine-year-old boy because he wanted to know about firearms in the home); *id.* ¶ 9 (citizen told that disclosing firearm ownership was required by Medicaid); *id*. ¶ 10 (foster family told that Medicaid would not pay claims if they did not answer questions about firearm ownership; doctor refused to examine child when the mother refused to answer whether there was a gun in the home).

Second, Plaintiffs attempt to distinguish the ADA on the ground that "only Title I prohibits disability-related inquiries" [DE 99 at 11], does not support their position. In fact, as Plaintiffs note, the ADA encompasses an "inquiry-restriction" enacted to prohibit discrimination on the basis of a person's disability. *Id*. at 11. Plaintiffs never explain how an inquiry restriction

3

as to a person's disability is not content-based while an inquiry restriction as to a person's firearm ownership is. And Plaintiffs never explain how a per se inquiry restriction about a woman's plans for starting a family is any different than the inquiry at issue here. In reality, there can be no meaningful distinction because the point of limiting such inquiries is to inhibit the questioner's ability to identify someone as a member of the protected class, thus frustrating the ability to discriminate based on class membership.

Plaintiffs also state that "[t]he ADA does not take aim at disfavored speech." *Id.* at 12. But they fail to explain how the statute's limitation on questions about gun ownership in the absence of a medical relevance is "disfavored speech" while the ADA restriction on asking a prospective employee about his physical health is not.  Plaintiffs do not attempt this task because no principled distinction can be made.

Even if the firearm privacy act prohibited speech, it is clear that it employs the least restrictive means of achieving the compelling state interest of protecting a person's privacy when exercising a constitutional right. Indeed, the act only requires that a physician should refrain from asking about firearm ownership when—and only when—that physician lacks a good faith belief that the information is relevant to a patient's care.

Furthermore, the statute provides the patient with the right not to answer. Plaintiffs' argument that there can be no discrimination if a patient is permitted not to answer [*id*. at 17] is directly contradicted by the record and the joint statement of undisputed facts. *See* DE 87; ¶ 3("CS/CS HB 155 was prompted in part by an incident in Ocala, where 'during a routine doctor's visit, a pediatrician asked a patient's mother whether there were firearms in the home. *When the mother refused to answer, the doctor advised her that she had 30 days to find a new*

*pediatrician.*' ") (emphasis added). The Ocala incident is stipulated proof that discrimination may occur whether or not a patient declines to answer.

      Accordingly, Plaintiffs' arguments fail.

## II.   PLAINTIFFS' VAGUENESS AND OVERBREADTH CLAIMS ARE MERITLESS

      Plaintiffs also contend that Defendants' motion for summary judgment does not address plaintiff's vagueness and overbreadth claims. Those issues were addressed extensively in both the response to Plaintiffs' motion for a preliminary injunction and in Defendants' response to Plaintiffs' motion for summary judgment. *See* DE 49, 98. In sum, the statute is not vague because any person of common intelligence can understand from the statute's text what acts are prohibited. *See Avera v. Airline Pilot's Ass'n Intern.*, 436 Fed. Appx. 969 (11th Cir. 2011). And the statute is not overbroad because it narrowly targets a specific inquiry within the ambit of professional speech. *See Johnson v. City of Opelousas*, 658 F.2d 1065, 1071 (5th Cir. 1981) ("A law is void on its face for overbreadth if it 'does not aim specifically at evils within the allowable area of (government) control but … sweeps within its ambit other activities that in ordinary circumstances constitute an exercise' of protected expressive or associational rights." (quoting *Alladin's Castle v. City of Mesquite*, 630 F.2d 1029, 1038 n.13 (5th Cir. 1980)).

      Accordingly, these claims fail.

## III.   THE COURT SHOULD DISREGARD THE SCHECHTMAN AFFIDAVIT.

      The Court should not consider the affidavit of Dr. Schechtman accompanying the Plaintiffs' response or the news story attached to the affidavit because nothing in the affidavit is admissible as evidence, and the attachment is hearsay and not properly authenticated.

      Federal Rules of Civil Procedure 56(c)(2) and (4) provide that the facts considered on a motion for summary judgment are only admissible if they comply with the Rules of Evidence,

just as in a trial. *See Ross v. Corp. of Mercer Univ.*, 506 F.Supp. 2d 1325, 1336 (N.D. Ga. 2007). Thus, this Court can only consider affidavits that are based on personal knowledge. Fed. R. Civ. P. 56(c)(4). The events described by Dr. Schechtman, however, do not offer any facts establishing his personal knowledge of the events. Instead, the source of his knowledge is a news story that he admits he pulled off the Internet. Thus, the matters asserted in the affidavit are hearsay and inadmissible.

Furthermore, the news story itself is inadmissible hearsay, and Dr. Schechtman's attempt to authenticate the attachment fails to comply with the general rules applying to the authentication of web documents. Rule 901 of the Federal Rules of Evidence requires authentication of evidence "as a condition precedent to admissibility." "This requirement is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 2006 WL 1320242 *2 (M.D. Fla., May12, 2003) "Web-sites are not self-authenticating." *Id*.  "To authenticate printouts from a website, the party proffering the evidence must produce 'some statement or affidavit from someone with knowledge [of the website] … for example [a] web master or someone else with personal knowledge would be sufficient.' " *Id*. (citing *In re Homestore.com, Inc. Sec. Litig.*, 347 F.Supp. 2d 769, 782 (C.D. Cal. 2004)).

Dr. Schechtman has not met these requirements here. He has not provided the court with any statement or affidavit from an internet archive representative who has personal knowledge of the contents of the website. And Dr. Schechtman has not asserted that he has the requisite personal knowledge. Therefore, the court should disregard his affidavit and the attached news article.

IV.     CONCLUSION

For the reasons stated here and in Defendant's previous motions, this Court should grant Defendant's Second Amended Motion for Summary Judgment and deny the Plaintiffs' motions.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL

s/ *Jason Vail*
Jason Vail (FBN 298824)
Assistant Attorney General
Diane G. Dewolf (FBN 59719)
Deputy Solicitor General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to counsel of record through use of the Court's CM/ECF system on December 9, 2011.

s/ *Jason Vail*