## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No: 11-cv-21976-UU

AMERICAN FEDERATION OF
STATE COUNTY AND MUNICIPAL
EMPLOYEES (AFSCME) COUNCIL 79

Plaintiff,

v.

RICK SCOTT, in his official capacity as
Governor of the State of Florida,

Defendant.

_____/

## ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff's Motion to Tax Costs [D.E. 63] and Plaintiff's Motion for Attorneys' Fees and Costs [D.E. 83].

THE MATTER was referred to the Honorable Edwin G. Torres, United States Magistrate Judge. A Report and Recommendation [D.E. 92] has been filed, recommending that Plaintiff's Motions be granted in part and denied in part. Plaintiff filed Objections [D.E. 94] to which Defendant responded [D.E. 95] and Plaintiff replied [D.E. 102]. Additionally, Defendant filed Objections [D.E. 93] to which Plaintiff responded [D.E. 96] and Defendant replied [D.E. 101]. The matter is ripe for disposition.

THIS COURT has made a *de novo* review of the entire file and record herein, and is otherwise fully advised in the premises.

1

The Court adopts all of the Magistrate Judge's recommendations except for the Magistrate Judge's conclusion that the hours that Plaintiff claimed in connection with the motion to quash filed by the ACLU [D.E. 21] are compensable.[1] Because the ACLU was not a prevailing party in this case, the Court finds that Plaintiff cannot recover these costs under the applicable fee-shifting regime.

42 U.S.C. § 1988 provides that in suits brought under § 1983, the district court "may allow the prevailing party... a reasonable attorney's fee...." 42 U.S.C. § 1988. Courts have held that fees for attorneys who did not represent the prevailing party are not compensable under § 1988. In *Knight v. Alabama*, the district court refused a fee petition for the hours that an attorney worked on the underlying case *prior* to the attorney's appearance as counsel of record for a prevailing party in the case. 824 F.Supp 1022, 1036 (N.D. Ala. 1993). Since § 1988 allows only a "prevailing party" to recover attorneys fees, the district court concluded that the attorney's time working on the case for a non-party was not compensable. *Id.* ("Section 1988 only allows actual parties who prevail in a litigation to recover attorney's fees"). Similarly, in *Morales v. Turman*, the Court of Appeals for the Fifth Circuit found no basis under § 1988 for compensating *amici curiae* which did not intervene in the case and therefore did not participate as a "party" in the proceeding. 820 F.2d 728, 730 (5th Cir. 1987). In light of the "unambiguous" text of § 1988 (limiting fee awards to the "prevailing party"), the provision's legislative history, and the pertinent case law, the Court of Appeals concluded that Congress

---

[1]Plaintiff seeks to recover $17,455.00 for 43.6 hours of billable time related to the motion to quash [D.E. 92 at 17; D.E. 93].

intended a "party" for purposes of § 1988 to be "a party in the ordinary sense of the federal rules." *Id.* at 732. Finally, following the Fifth Circuit's approach in *Morales*, the Court of Appeals for the Second Circuit in *Wilder v. Bernstein* held that plaintiff-interveners could be compensated under § 1988 despite the fact that the intervening parties had not asserted a violation of their own rights during the underlying litigation. 965 F.2d 1196 (2d Cir. 1992). For the *Wilder* Court, the interveners status as parties to the case was a *sine qua non* of their ability to recover their fees. *Id.* at 1203 (maintaining that § 1988 "extends fees only to prevailing parties in the action or proceeding").

In the instant case, the ACLU was counsel of record for Plaintiff, and not a party. During discovery, Defendant served two subpoenas and a related deposition notice on the ACLU. The first subpoena sought to depose a representative from the ACLU to testify on the group's views on the prevalence of workplace drug testing, the degree of public approval or disapproval of the same, the effects of drug use in the workplace, and on the authenticity of the documents on drug testing in the ACLU's possession. [D.E. 21 at 4] The second subpoena sought the production of documents pertaining to workplace drug testing. *Id.* After the ACLU moved to quash both subpoenas, Defendant narrowed its document request to any studies, position papers, policy proposals, or other written material produced by the ACLU on the merits and prevalence of workplace drug testing. [D.E. 28 at 4]

The Court referred the ACLU's motion to quash to the Magistrate Judge, who denied the motion only insofar as the discovery request sought publically available

3

documents. [D.E. 42] As to the subpoenas' demand for documents or deposition testimony on the ACLU's "knowledge or position" of workplace drug testing, the Magistrate Judge granted the motion to quash for several reasons. [*Id.*] Among them, the Magistrate Judge emphasized that the subpoenas were improper because they implicated the attorney-client privilege and work-product doctrine by discouraging the Plaintiff to engage in candid conversations with its counsel in the face of the discovery requested of the ACLU. [*Id.* at 7-9]

In support of compensating the ACLU for the time incurred on the motion to quash, Plaintiff argues that, "[h]aving made the litigation choice to, in essence, seek discovery from Plaintiff's counsel to bolster his defense of the Executive Order, Defendant is now liable for the expense he created in causing the expenditure of counsel's time to prevent that tactic from succeeding." [D.E. 96] While it is true, as the Magistrate Judge ruled in his order on the motion to quash, that the subpoenas that Defendant served on the ACLU sought, in large part, privileged information, Defendant's illegitimate discovery request does not transform the ACLU into a *prevailing party* in the case before the Court. And since only prevailing parties to a case can recover under § 1988, the Court has no authority, pursuant to this statute, to hold Defendant liable for the costs that the ACLU incurred in opposing the subpoenas.

When deciding the underlying dispute, the Court considered the pertinent legal text–the Fourth Amendment of the U.S. Constitution–and the controlling case law on the same. Here again, the Court applies the law as it is written notwithstanding the claim–this time by the Plaintiff–that a better outcome would

4

be reached if this Court were to modify the law to the favor of one party. This the Court cannot do. Accordingly, it is hereby

ORDERED and ADJUDGED that United States Magistrate Judge Torres's Report and Recommendation [D.E. 92] is RATIFIED, AFFIRMED and ADOPTED with respect to all costs except for the $17,455.00 associated with the motion to quash. It is further ORDERED AND ADJUDGED that Plaintiff shall recover $190,589.74 in fees and costs.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of December, 2012.

_____
UNITED STATES DISTRICT JUDGE

copies provided:
U.S. Magistrate Judge Torres
Counsel of Record

5

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 11-21976-CV-UNGARO/TORRES

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES (AFSCME) COUNCIL 79,

        Plaintiff,

v.

RICK SCOTT, in his official capacity as
Governor of the State of Florida,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

       This matter is before the Court upon prevailing party Plaintiff American Federation of State, County and Municipal Employees Council 79's ("AFSCME") Motion for Attorneys' Fees and Costs [D.E. 83] that seeks an award of $322,664.35 pursuant to 42 U.S.C. § 1988.  Defendant responded in opposition and Plaintiff replied. Plaintiff also filed a Motion to Tax Costs [D.E. 63] under 28 U.S.C. § 1920.  These matters are ripe for disposition.  For the reasons that follow, the Motions should be Granted in Part and Denied in Part.

## I.  BACKGROUND

       AFSCME filed this action on behalf of itself and its bargaining unit members to challenge Defendant's Executive Order 11-58.  The Complaint sought to enjoin enforcement of the Executive Order as it authorized an unlawful search and seizure

in violation of the Fourth Amendment. After limited discovery, the matter was presented to the Court on summary judgment motions. The District Judge held that AFSCME had standing to assert those rights, both on behalf of its bargaining unit members and on its own behalf. [D.E. 59]. The Court further found that the Executive Order indeed violated the Fourth Amendment and enjoined its enforcement as to all individuals employed at the covered agencies. [D.E. 59 at 37; 61].

There is no dispute that, as a whole, AFSCME is the prevailing party in this case because it "succeed[ed] on [a] significant issue in litigation which achieves some of the benefit the parties sought in bringing suit[,]" *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), and the result of the litigation altered "the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792 (1989). The Court's Final Judgment in the case [D.E. 59, 61] undoubtedly gives rise to the "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.,* 532 U.S. 598, 604 (2001) (citations and internal quotation marks omitted).

Although Defendant has appealed the Court's Final Judgment, Defendant does not dispute for purposes of this motion that AFSCME is the prevailing party for purposes of a fee award under 42 U.S.C. § 1988. In addition, AFSCME is entitled to an award of taxable costs pursuant to 28 U.S.C. § 1920 and all nontaxable expenses

pursuant to 42 U.S.C. § 1988. *See Dowdell v City of Apopka,* 698 F.2d 1181, 1192 (11th Cir. 1983).[1]

Defendant has challenged, however, the amount of fees and costs requested in the pending motion. [D.E. 88]. Defendant argues persuasively that the rates charged are unreasonable, that the number of hours are in part excessive and not recoverable in this action, and that the AFSCME's limited success in the case requires a downward adjustment in the award. Defendant argued that after all appropriate reductions and adjustments the most that could be awarded as fees and costs is $133,801.86.

AFSCME replied in support of its original motion. [D.E. 91]. It took issue with most of the objections raised by Defendant's response, though conceded that certain additional adjustments to the rates charged and hours billed could be made. AFSCME recommended that the Court adjust the original amount requested to $272,875.57 ($265,163.62 in fees and $7,711.95 in costs).

The Court has considered the thorough presentations and supporting materials of both sides on the motion and appreciates the lawyers' work on the issue. Based upon its independent assessment of the record and applicable law, the Court will reduce the amount of fees requested by AFSCME to $200,485.25 and award costs in the

---

[1]    Defendant has also moved to stay enforcement of any fee or cost award that may be entered in the case pending resolution of its appeal. [D.E. 67]. That motion has not been referred for disposition and is not addressed here. We will thus only adjudicate the amount of fees and costs to award under the pending motion and leave for the District Judge Rule 62 considerations that have been raised in the motion to stay.

amount of $7,559.49.  It is recommended that a Fee and Cost Judgment for a total of $208,044.74 be entered.

## II.  ANALYSIS

### A.  *Attorneys' Fees Award*

The Supreme Court recently stressed that the determination of fees "should not result in a second major litigation." *Fox v. Vice*, 563 U.S. ___, 131 S. Ct. 2205, 2216 (2011) (quoting *Hensley*, 461 U.S. at 437).  Fee applicants must submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Hensley*, 461 U.S. at 437.  "But trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) *is to do rough justice, not to achieve auditing perfection*.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 131 S. Ct. at 2216 (emphasis added).  In civil rights cases arising under § 1988, the Court must keep in mind the overall purpose for a fee award that "reimburses a plaintiff for 'what it cos[t] [him] to vindicate [civil] rights,' *Riverside v. Rivera,* 477 U.S. 561, 577-578, 106 S. Ct. 2686, 91 L.Ed.2d 466 (1986) (internal quotation marks omitted), and holds to account 'a violator of federal law,' [*Christiansburg Garment Co. v. EEOC,*] 434 U.S. [412], 418 [1978]." *Fox,* 131 S. Ct. at 2213.

With that in mind, we calculate a reasonable attorney's fee by using the now well-accepted lodestar method, which "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been

4

representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. ___. 130 S. Ct. 1662, 1672 (2010) (emphasis in original). We must multiply AFSCME's counsel's reasonable hourly rate by the reasonable hours expended. *See Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Cuban Museum of Arts & Culture v. City of Miami*, 771 F. Supp. 1190, 1191 (S.D. Fla. 1991). AFSCME here bears the burden of documenting reasonable hourly rates and reasonable hours expended. *See ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Norman*, 836 F.2d at 1303.

### 1. *Reasonable Hourly Rates*

We turn then to the first lodestar consideration, which asks whether the hourly rates requested by AFSCME's counsel are reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. A reasonable hourly rate is one that is adequate to attract competent counsel in the relevant legal market, but yet does not produce a windfall to that attorney. *See Blum v. Stenson*, 465 U.S. 886, 894-95 (1984). With respect to the issue of hourly rates, this Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d

5

at 1303. Several well established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*[2]

Generally, "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *ACLU of Ga.,* 168 F.3d at 437 (citing *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)). The relevant market for purposes of this case, therefore, is the South Florida legal community.

To arrive at a reasonable hourly rate in this legal market, the "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Id.* at 427 (quoting *Norman,* 836 F.2d at 1303). That requires that the applicant bear the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Id.* And the focus of that inquiry should be on rates paid to counsel of similar qualifications and

---

[2] The 12 *Johnson* factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).

experience in cases litigated in the South Florida area.  *See, e.g., Storfer v. Guarantee Trust Life Insurance Co.*, 2011 WL 213461, at *2 (S.D. Fla. Jan. 21, 2011).

In determining where a given rate falls within local ranges, fee awards are not designed to compensate a party for premium billing and premium level services. *Norman,* 836 F.2d at 1301; *Golf Clubs Away LLC v. Hostway Corp.*, 2012 WL 2912709, at *3 (S.D. Fla. July 16, 2012) (plaintiff entitled to recover fees only for attorney with "reasonable expertise") (citing *ACLU of Ga.,* 168 F.3d at 437).  "Even if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." *Orenshtyn v. Citrix Systems, Inc.,* 558 F. Supp. 2d 1251, 1257 (S.D. Fla. 2007) (quoting *Yahoo Inc! v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004)), *vacated and remanded on other grounds,* 341 F. App'x 621 (Fed. Cir. 2009).

As a result, it is entirely appropriate for a court to reduce those rates to a more reasonable amount, reflective of what would be appropriate to secure competent legal counsel in the relevant legal community.  Courts in our district have routinely applied these principles and entered fee awards that reduced the hourly rates charged by well respected law firms and highly experienced attorneys.  *See, e.g., Tiara Condominium Ass'n, Inc. v. Marsh USA, Inc.,* 697 F. Supp. 2d 1349, 1366 n.11 (S.D. Fla. 2010) (reducing hourly rates charged by premium law firm by 19 to 25 percent); *Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc.,* 2009 WL 855970, at *4 (S.D. Fla. Mar. 31, 2009) (awarding discounted hourly rates for premium South Florida law firm of $300-475 per hour (partners); $185-310 (associates); and $160 (paralegals)); *Red Bull*

*GMBH v. Spacefuel Corp.,* No. 06-20948-Civ-Jordan/Torres (S.D. Fla. June 20, 2007) (awarding reduced blended hourly rates for premium Washington D.C. and South Florida law firm to $400 for partners and $250 for associates) (D.E. 37).

The cases from the nation's most expensive legal market – New York – are also illustrative. *See, e.g., Pugach v. M & T Mortg. Corp.,* 564 F. Supp. 2d 153, 157, 159 (E.D.N.Y. 2008) (court reduced charged rates of $725 - $640 for partners and $330 for associates to approved rates of $250 for partners and $150 for associate); *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG,* 2005 WL 3099592, *5 (S.D.N.Y. Nov. 17, 2005) (court reduced charged rates to $350 for partners and $225 for associates); *Auscape Int'l v. Nat'l Geographic Soc.,* 2003 WL 21976400, at *5 (S.D.N.Y. Aug. 19, 2003) (court reduced charged rates to between $215 to $495 per hour); *Weil v. Long Island Sav. Bank,* 188 F. Supp. 2d 265, 269 (E.D.N.Y. 2002) (court reduced charged rates to between $370 to $450 per hour).

The bottom line is that a fee applicant cannot recover the hourly rates that premium level lawyers may receive from high paying clients who agree to contract and retain those lawyers at those rates. *See, e.g., ACLU of Ga.,* 126 F.3d at 437; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 184, 190 (2d Cir. 2008) (courts must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively"); *Daggett v. Kimmelman,* 811 F.2d 793, 799 (3d Cir. 1987) (there "comes a point where a lawyer's historic rate, which private clients are willing to pay, cannot be imposed on his or her

8

adversaries"); *Coulter v. Tennessee,* 805 F.2d 146, 149 (6th Cir. 1986) (a reasonable fee is "different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region").

Yet the Court's review of the information and materials submitted by AFSCME's counsel to determine the prevailing market rate in this legal community for "similar services by lawyers of reasonably comparable skills, experience, and reputation," *Norman,* 836 F.2d at 1299, shows that counsel base their analysis of the hourly rates they request on just that – premium level services.  Plaintiff's original motion sought the following hourly rates and hours expended:

| | | | |
|---|---|---|---|
| Shalini Goel Agarwal | 189.1 | $350 | $66,185.00 |
| James K. Green | 14.7 | $600 | $ 8,820.00 |
| Maria Kayanan | 35.7 | $500 | $17,850.00 |
| Randall C. Marshall | 54.8 | $550 | $30,140.00 |
| Peter G. Walsh | 421.15 | $450 | $189,517.50 |
| | | | |
| Total | | | $312,512.50 |

As is readily apparent, Plaintiff's hourly rate requests are well in excess of the rates that should be awarded in this case under the circumstances, even taking into account that these lawyers are undoubtedly experienced in civil rights litigation and highly respected.  No better illustration of this is the fact that AFSCME's top lawyers, Randy Marshall and James Green, seek hourly rates significantly in excess of those they have obtained in the recent past.  Just this year, the Middle District of Florida determined that a reasonable hourly rate for Mr. Marshall in a federal civil rights case was $400/hour.  *See ACLU v. Dixie County*, 2012 WL 1004372, at *2 n.3 (M.D. Fla. Mar. 23, 2012).  And only three years ago, Mr. Green averred that his hourly rate was

$450-$500, *Olesen-Frayne v. Olesen,* 2009 WL 3048451, at *3 (M.D. Fla. Sept. 21, 2009), not the $600 he claims now – an increase well beyond the rate of inflation and markedly inconsistent with the financial downturn and the state of the legal market in South Florida.  And even if the rates they seek in this petition are what they set as their "standard" hourly rates in the open market, that does not mean they are entitled to such rates on a fee application against an adversary, *especially* when that adversary will pay for those fees from public funds.

An important factor to consider in determining the reasonableness of hourly rates is the novelty or difficulty of the claims at issue. *Johnson*, 488 F.2d at 718. Although AFSCME now asserts that this case presented great "complexity" and required "an extensive analysis of the broad range of Fourth Amendment cases," it took the contrary view in its summary judgment papers that the legal question at issue is "clear under a trilogy of Supreme Court cases." [D.E. 33 at 6].  The Court agrees with AFSCME's original position.  The constitutional violations in this case should have been readily apparent.  An award of fees on this motion will undoubtedly help educate Defendant of that fact.  But at the same time that means that extraordinary work was not required in this case.  Straightforward application of existing constitutional doctrine was all that was needed. Thus premium level legal work cannot be billed or awarded in the case.

Perhaps recognizing in hindsight the unreasonable hourly rates they requested in the original motion, AFSCME's reply concedes that a further reduction in the rates might be appropriate as a "reasonable compromise." AFSCME suggests a $25 per hour

10

reduction in each timekeeper's rate together with an additional across-the-board ten percent reduction (which yields a total reduction in the rates claimed of about 15%). [D.E. 91 at 9]. But, in the Court's view, even those proposed amended rates are not sufficient to arrive at properly compensable hourly rates in this case.

The bulk of the senior "partner-level" work done in the case was by Mr. Marshall, a thirty-year lawyer with extensive civil rights experience. Mr. Green, a civil rights lawyer with thirty-five years experience, assisted in discrete projects and the fee application. In this case, the Court cannot award either lawyer a rate higher than $400 per hour, as that is the rate that similarly experienced partners have recently been awarded by this Court and in this District.

The junior partner-level work, though the vast majority of hours claimed in the application, was performed by Peter Walsh, who is an experienced trial lawyer who is not necessarily an expert in civil rights law. He does have, however, some criminal (and thus constitutional law) experience as a former state prosecutor early in his career. The bulk of his experience is now in civil and insurance litigation. He was nevertheless charged with much of the litigation legwork in the case. He seeks an hourly rate of $450.00.

Though that rate is not too far off where a twenty-year partner would expect to be in this community, the Court's review of his time records indicates that he was performing a great deal of work that would ordinarily not be performed by someone at his level. His timesheets reflect a significant amount of time for research and initial drafting. Ordinarily a $450 per hour partner would not be expected to be consuming

11

that much time in such tasks.  And although one could argue that his greater experience resulted in greater efficiency, the Court's review of the timesheets shows the opposite.  Much of the time he incurred would be expected by a more junior lawyer and thus at a lower hourly rate.

The Court will thus reduce his requested hourly rate to better reflect the type of work he was engaged in.  A blended partner/senior associate rate of $350 per hour is more appropriate and adequate to retain competent counsel of his experience.  This is also consistent with junior partner rates awarded in this legal community and accounts for his limited federal civil rights experience. *See, e.g.,* in *Tiramisu International LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1295-96 (S.D. Fla. 2010).

The bulk of the associate-level work was performed by Ms. Agarwal, who should be entitled to a rate of $250 per hour.  This rate is consistent with the associate rate for a five or six-year lawyer normally awarded in this District.  *See, e.g., X-Ray Supplies Inc. v. Southeastern X-Ray Inc.,* 2010 WL 4960959, at *2-3 (S.D. Fla. Dec. 1, 2010) (finding a fifth-year associate's rate of $260 is reasonable); *Great Lakes Transp. Holding LLC v. Yellow Cab Service Corp. of Florida Inc.,* 2011 WL 4118234,  at *2-3 (S.D. Fla. Sept. 15, 2011) (finding a fifth-year associate's rate of $255 is reasonable).

With respect to the remaining timekeeper in the case, the appropriate rate for Ms. Kayanan is $375, which reflects her subordinate role in the case (notwithstanding her experience) and Plaintiff's own recognition that she should be awarded a lower hourly rate than Messrs. Marshall and Green.

With these necessary adjustments to the hourly rates that can be claimed in this case, the following summarizes the gross amounts that may be recovered on this motion before consideration of the reasonable number of hours that may be included in the calculation:

Adjusted Hourly Rates

| | | | |
|---|---|---|---|
| Shalini Goel Agarwal | 189.1 | $250 | $47,275.00 |
| James K. Green | 14.7 | $400 | $5,880.00 |
| Maria Kayanan | 35.7 | $375 | $13,387.50 |
| Randall C. Marshall | 54.8 | $400 | $21,920.00 |
| Peter G. Walsh | 421.15 | $350 | $147,402.50 |
| | | | |
| Adjusted Gross Total | | | $235,865.00 |

### 2. *Hours Reasonably Expended*

The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by counsel. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Ga.,* 168 F.3d at 428 (quoting *Norman,* 836 F.2d at 1301). A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action. *Id.* at 427, 432-33. "A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id.* at 427.

At the same time, the party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *Id.* In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman,* 836 F.2d at 1306. The court must consider whether the work done was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 561 (1986). Courts must exclude from this fee calculation hours that were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

AFSCME's motion seeks reimbursement for 715.42 hours expended in the prosecution of the case. The motion claims that counsel have reviewed the time entries and excluded any redundant or excessive hours from the application. Defendant argues, however, that the total number of hours should be significantly reduced through an across-the-board reduction of 30 percent. Our own review of the record shows that a reduction is warranted but not to that extent.

Defendant first complains that the application contains extensive time entries that are not compensable based on block billing. Defendant claims that 87.6 hours in the application should be rejected as improper block billed time entries. The party seeking attorney's fees must produce "meticulous, contemporaneous time records that reveal for each lawyer whose fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Simon v. Leaderscape, LLC*, 565 F. Supp. 2d 1332, 1335 (S.D. Fla. 2008). A movant fails to meet that burden

when it submits "block billing" – i.e., the practice of "lumping together multiple tasks into a single entry of time," *Cardena v. Pacesetter Corp.*, 224 F.3d 1203, 1214 (10th Cir. 2000), "without separating the tasks into individual blocks or elaborating on the amount of time each task took," *Capone v. Aetna Life Insurance Co,* 2010 WL 6029242, at *5 (N.D. Ga. Dec. 22, 2010). Many courts have found block billing to present a significant problem because it makes an attorney's time records "unnecessarily difficult" to review. *See, e.g.*, *Kearney v Auto-Owners Inc.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010); *Machado v. Da Vittorio*, 2010 WL 2949618, at *3-4 (S.D. Fla. July 26, 2010). Block billing also impedes the analysis of whether there was unreasonable duplication of work by attorneys. *See Galvez v. Cuevas*, 2009 WL 1024632, at *4 (S.D. Fla. Apr. 15, 2009).

Courts confronted with significant block billing take that into account to order across-the-board reductions. *See, e.g., Lil' Joe Wein Music Inc. v. Jackson*, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (20 percent reduction); *Blanco v. TransAtlantic Bank*, 2009 WL 2762361, at *4 (S.D. Fla. Aug. 31, 2009) (20 percent reduction); *Bujanowski v. Kocontes*, 2009 WL1564263, at *4 (M.D. Fla. Feb. 2, 2009) (30 percent reduction).

Our review of the supporting materials filed here confirms that there is a material amount of block billing in the application that, at times, makes it difficult to discern whether particular work performed is reasonable and not cumulative. On the other hand, there is enough specificity in the time entries that the Court can usually discern the reasonableness of most of the work performed. Therefore, a significant

reduction in the hours expended in this application is not required just based on block billing.

The same finding can be made with respect to Defendant's complaint that 3.55 hours do not sufficiently describe the nature of the work performed to allow the Court to determine whether the billing was directly and reasonably incurred.  Most of the time entries in the application are reasonably specific.  Only a minor adjustment is required to address time entries that are too vague or non-specific.  The bulk of the legal work necessary to successfully prosecute the case is readily apparent in the application.

Defendant then turns his attention to 69.2 hours that he claims reflect unreasonably duplicative work or time entries that do not adequately demonstrate the distinct contribution of each timekeeping attorney. A fee applicant must show that multiple lawyers in a case were "not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman,* 836 F.2d at 1302. Duplication inevitably occurs when lawyers hold conferences, call each other on the phone, write each other letters and memoranda, or when several lawyers bill for reading the same document received from the defendants or the court.  *See, e.g., Sklar v. Clough,* 2008 WL 5381961, at *2 (N.D. Ga. Dec. 23, 2008).

The Court agrees that there is some duplication of effort reflected in the time entries but no where near as pervasive as Defendant makes them out to be.  The bulk of the time in the application was Mr. Walsh's work with material support from associate Ms. Agarwal.  Admittedly, certain discrete tasks were duplicated (such as

review of certain pleadings and responses).  And there were the usual number of redundant intra-team conferences that one could expect in litigation like this.   But, again, not to the extent that a substantial reduction is warranted.  The Court's own assessment of the duplicative time entries that should be excluded will be taken into account.

The Defendant next focuses on what he believes to be unnecessary time or tasks.  The bulk of those challenged hours relate to 43.6 hours claimed in connection with the opposition to Defendant's subpoena served on the ACLU that was counsel of record for AFSCME in this case.  The ACLU successfully, for the most part, challenged those subpoenas. Defendant complains, however, that time incurred on the motion to quash were incurred for work on behalf of a non-party that are not compensable here.

The Court finds, however, that Defendant's challenge to the bulk of these hours cannot be sustained.  The subpoena was not served on a traditional non-party witness, whose own opposition to a subpoena would not normally be included in a party's fee petition.  In this case the non-party in effect was the party's law firm and the objection to the subpoena was founded on counsel's status in this case.  Under these unique circumstances, which were occasioned largely by over-reaching by the Defendant, the time incurred on the motion to quash, which the Court granted, is indeed recoverable.

The Court also rejects Defendant's broad challenge to travel time incurred by counsel in the application for client and counsel meetings within the area, appearances in court, and travel for out-of-area depositions.  Defendant takes issue with 19 hours of travel time that purportedly should be reduced because there was no showing that

17

counsel performed any productive work on the case during that travel.  The amount involved is relatively small.  The bulk of that travel is clearly compensable (travel to Tallahassee for depositions).  And though some courts have applied reduced hourly rates for travel under the theory that it is unproductive time, *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990), the issue is largely discretionary.  We choose not to materially reduce the number of hours claimed for travel time given their relatively minor impact on the overall application and the clear necessity for most of the hours claimed.

Moreover, unlike situations like those in *Nitram, Inc. v. Industrial Risk Insurers*, 154 F.R.D. 274 (M.D. Fla. 1994), travel time here was not incurred because out-of-state counsel were retained to litigate a case in this District.  The travel time was necessary even where local counsel was primarily engaged in the litigation.

Finally, the remaining challenges to the hours claimed, for clerical or over-head related hours for instance, are also not compelling enough to warrant material reductions in the hours expended.  They are largely *de minimus* and have been taken into account in the reduction that the Court will apply.

After considering all the objections to the hours included in the fee application, the Court finds that a lesser adjustment is all that is necessary to achieve a reasonable fee award.  Defendant contends that a 20 percent across-the-board reduction is appropriate (followed by an additional 10 percent for limited success).  Defendant is clearly correct that when the number of hours in a fee petition is high a court can conclude that an hour-by-hour analysis is impractical.  *See, e.g., St. Fleur v. City of Fort*

18

*Lauderdale,* 2005 WL 2077742, *4 (11th Cir. Aug. 29, 2005) (given that Plaintiff's counsel claimed over 1,500 hours in compensation, the district court did not abuse its discretion by failing to engage in a more detailed, task-by-task analysis of fees it was disallowing; affirming thirty percent across the board reduction); *Villano v. City of Boynton Beach,* 254 F.3d 1302, 1311 (11th Cir. 2001) (determining that 569.30 hours submitted for compensation "are extensive enough that we do not expect the district court or magistrate judge to conduct an hour-by-hour analysis in this case"; affirming twenty-five percent across the board reduction). A task-by-task reduction is indeed impractical for this fee petition. The Court thus will reduce the number of hours expended by a percentage basis.

We disagree, however, with Defendant as to the amount of reduction necessary to achieve a reasonable fee award. A 20 percent reduction is somewhat excessive and does not adequately account for the reasonable number of hours necessary to achieve a successful outcome in the case. Though some reduction is warranted for block billing and duplicative time, the majority of hours requested are compensable. Only a 15 percent reduction is required to arrive at a reasonable number of hours expended in the litigation.

### 3. Adjustment to the Lodestar

Defendant argues that an adjustment to the lodestar calculation is also required for the limited success that counsel obtained in this case. *See Hensley,* 461 U.S. at 434. Defendant argues that AFSCME did not prevail in two important respects. First, the Complaint asked this Court to declare that "Executive Order 11-58 is quashed" and

"that the Defendant shall immediately direct all agencies and persons affected by Defendant's Executive Order 11-58 to cease *all drug-testing* implemented in compliance with the order." Yet, the Court did not order cessation of "all drug testing," and instead found that "[i]nsofar as an applicant to a covered position is not, at the time of the pre-employment testing, a member of the Union, . . . the Union lacks standing to sue on behalf o[f] these individuals." [D.E. 59 at 11].

Second, the Complaint originally included an individual plaintiff, Mr. Flamm, who was represented by the same attorneys as AFSCME. Defendant concludes that because Mr. Flamm was not an employee of an agency subject to the challenged policy, he dropped out of the lawsuit. Yet because AFSCME's attorneys represented Mr. Flamm and have not separated out the specific tasks performed on his behalf, some deduction is warranted for pre-complaint research and preparations, complaint drafting, and other work associated with the early stages of this case.

We, however, disagree that these matters require any adjustment to the lodestar. AFSCME prevailed on the material issue in the litigation. The Defendant's drug-testing program was found to violate the Fourth Amendment and enjoined. The AFSCME thus clearly prevailed and materially altered the legal relationship between the parties. Therefore, the fact that these two discrete issues were not resolved in its favor does not leave the AFSCME in a less-prevailing position. No adjustment to the lodestar is required. Nor is the time incurred in connection with these issues material to the fee application. Therefore, a further across-the-board reduction is not warranted.

20

### 4. Final Adjusted Fee Calculation

After reducing the requested hourly rates to those rates that are reasonable and compensable in this District, the fee request must be reduced to $235,865.00. After applying the 15 percent across-the-board reduction to that amount to account for only those hours reasonably expended in the case, the total fee that should be awarded to AFSCME is $200,485.25.

### B. *Costs and Expenses*

A prevailing party is entitled to reasonable and necessary expenses "that are normally itemized and billed in addition to the hourly rate" if these expenses are "reasonable in amount" and of the type ordinarily billed to a private client. *Bee v. Graves,* 910 F.2d 686, 690 (10th Cir. 1990). "[W]ith the exception of routine office overhead, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988." *Dowdell,* 698 F.2d at 1191.

Costs must be reasonable in amount and necessary for maintenance of the action. *Fells v. Virginia Dept. of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009). Only reasonable identifiable out-of-pocket expenses are recoverable. *Luessenhop v. Clinton County, N.Y.*, 558 F. Supp. 2d 247, 271 (N.D.N.Y. 2008). Expenses not normally billed to a private client in the local area or that are otherwise unreasonable are not awardable. *Brown v. Gray,* 227 F.3d 1278, 1298 (10th Cir. 2000).

The motion for costs under section 1988 seeks compensation for various litigation expenses, most of which have not been challenged. Defendant does take

21

issue with discrete items, which the Court will sustain for the most part. One expense, a $132 taxi cab ride that Mr. Walsh took from Miami to the Ft. Lauderdale airport and back is excessive and has not been shown to be reasonable. Another charge, $41.75, for federal express delivery of deposition transcripts, shall also be disallowed as no showing was made to its necessity.

Defendant also challenged the charge of $0.35 per page page for photocopies as exorbitant and unreasonable. AFSCME has agreed to reduce its copying request to $0.15 per page, which the Court finds to be a more reasonable amount. *See, e.g., Tarantino v. Ford*, 2011 WL 3294046, at *3 (S.D. Fla. Aug. 1, 2011) (awarding $0.15 per page for copies).

Defendant's challenge to amounts charged for computer research will not be sustained as the amounts requested were reasonable under the circumstances. The Court agrees, however, that the charge of $1 per page for faxes is unreasonable. Only $0.15 per page will be awarded for telecopies as well as the scanning of documents.

The file set up fee is overhead, as Defendant argues, and that charge will be stricken. The same is true for the computer disk included in the application, which is also an overhead expense and not compensable.

Therefore, the expenses claimed under section 1988 must be reduced to $7,559.49 as summarized here:

| Expense Category | Allowable Amount |
|---|---|
| Photocopies | $1,713.45 |
| Computer research | $3,260.37 |
| Faxes | $1.35 |
| Scanning | $21.30 |
| Postage | $40.80 |
| Parking | $18.00 |
| Other Taxable Costs | $2,505.22 |
| **TOTAL** | $7,559.49 |

## III.   CONCLUSION

For the foregoing reasons, the maximum amount of attorneys' fees that may be awarded is $200,485.25.  The amount of litigation expenses and taxable costs that may be awarded is $7,559.49.  The total amount of fees and costs to be awarded on the pending motion is thus $208,044.74.

Accordingly, it is hereby **RECOMMENDED**:

A.    Plaintiff's Motion for Attorneys' Fees and Costs [D.E. 83] should be **GRANTED** in part and **DENIED** in part.  The requested amount for fees and costs should be reduced to $208.044.74 and judgment entered on that amount, pursuant to Fed. R. Civ. P. 58, in favor of AFSCME.

B.    Plaintiff's Motion to Tax Costs [D.E. 63] should be **GRANTED** in part and **DENIED** in part.  The amount awardable under 28 U.S.C. § 1920 is included within the costs awarded on Plaintiff's Motion for Attorneys' Fees and Costs [D.E. 83] and need not be separately awarded.

23

C.     Pursuant to S.D.Fla.Mag.J.R.4(b), the parties have fourteen days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of any finding in this Report and Recommendation and bar the parties from attacking on appeal the findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 14th day of September, 2012.

EDWIN G. TORRES
United States Magistrate Judge