UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:11-CV-22026-COOKE/TURNOFF

DR. BERND WOLLSCHLAEGER, *et al.*,

    Plaintiffs,

v.

FRANK FARMER, *et al.*,

    Defendants.

_____/

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR VERIFIED MOTION TO RECOVER ATTORNEYS' FEES AND COSTS

Pending before the Court is Plaintiffs' verified motion to recover reasonable attorneys' fees and costs incurred in litigating the above-captioned matter pursuant to 42 U.S.C. §§ 1983, 1988, Federal Rule of Civil Procedure 54(d)(2), and Local Rule 7.3. Defendants do not contest, nor could they, that Plaintiffs are the prevailing parties entitled to an award of their reasonable attorneys' fees; instead Defendants object to the amount requested. *See* Defendants' Response in Opposition to Plaintiffs' Motion for Attorneys' Fees ("Def. Resp.") (ECF No. 126, at 1).

Defendants ask this Court to impose a **75% reduction** on Plaintiffs' requested fees—a result which is not justified under the facts of this case or under the law. This was a case of first impression on an issue of preeminent importance to the people of the State of Florida and resulted in the imposition of a statewide permanent injunction. Plaintiffs have requested fees calculated at reasonable hourly rates and for a reasonable numbers of hours, as supported by their counsel's thorough time records. Plaintiffs respectfully request the Court to award the full amount requested: $686,299.00 in fees and $284.67 in costs.

I.  **PLAINTIFFS REQUEST A REASONABLE HOURLY RATE.**

As the prevailing parties, Plaintiffs are entitled to recover attorneys' fees calculated at an hourly rate equal to the prevailing market rate in South Florida for "similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988). Plaintiffs have met this standard.

First, Defendants' assertion that "senior partners" Messrs. Manheim, Mullins, and Lowy are entitled to a rate of only $325/hour, Def. Resp. at 3-4, is not reasonable. As Defendants concede in their own papers, the "average partner rate in [South Florida] in 2011 was $482." *See* Def. Resp., Exhibit ("Ex.") 1, at 2 (citing *Golf Clubs Away LLC v. Hostway Corp.*, 2012 WL 2912709 (S.D. Fla. 2012)); *see also* Karen Sloan, *Billing Rates on Rise for Third Year in a Row*, Florida Business Review, Dec. 27, 2011. Given Messrs. Manheim's, Lowy's, and Mullins' credentials and relevant experience, as set forth in the declarations attached to Plaintiffs' verified motion, an almost **$150/hour reduction** from the average partner rate in South Florida is simply unwarranted.[1] Rather, the requested rate of $450/hour is reasonable within the Southern District of Florida for attorneys of comparable skill, reputation, and experience. *See, e.g.*, *Golf Clubs*, 2012 WL 2912709, at *4 (finding $500/hour for partners "reasonable" in South Florida market); *see also Nukote Int'l, Inc. v. Office Depot, Inc.*, 2011 WL 2837466, at *9 (awarding counsel rates as high as $500/hour, even with a "lack of evidence as to the reputation of the attorneys").

---

[1] Despite Defendants' contention otherwise, Plaintiffs have adequately established these attorneys' qualifications and relevant experience. Specifically, Mr. Manheim's declaration asserts that he has engaged extensively in—and been recognized for—work on behalf of pro bono clients and their civil and constitutional rights. *See* Plaintiffs' Verified Motion to Recover Attorneys' Fees and Costs and Accompanying Memorandum of Law ("Pl. Mot."), Ex. A ("Manheim Decl.") ¶¶ 2, 4. Mr. Lowy's career at the Brady Center Legal Action Project revolves solely around defending gun laws under attack in the courts and fighting other harmful gun laws and policies. *See* Pl. Mot., Ex. C ("Lowy Decl.") ¶¶ 2, 7; *see also* Brady Center to Prevent Gun Violence, Legal Action Project, http://www.bradycenter.org/legalaction/. Mr. Mullins' declaration also explicitly states that he is a founding shareholder of the well-recognized Astigarraga firm and has over 22 years of experience "on a variety of commercial litigation matters, *including First Amendment disputes*" like the one at issue here. *See* Pl. Mot., Ex. B. ("Mullins Decl.") ¶ 9 (emphasis added).

Second, Defendants' assertion that Mr. Hallward-Driemeier is a "junior partner" at Ropes & Gray entitled to an hourly rate of $270/hour is unsubstantiated and absurd. While Mr. Hallward-Driemeier may have re-joined Ropes & Gray only three years ago, Defendants entirely ignore his prior 15 years of experience, including at the Department of Justice in the Office of the Solicitor General and Civil Division Appellate Staff. *See* Manheim Decl. ¶ 9. Mr. Hallward-Driemeier heads the firm's Appellate and Supreme Court practice, and he has been recognized in Chambers USA as a leading appellate advocate nationwide. *Id.* With his considerable civil, constitutional, and appellate experience, Mr. Hallward-Driemeier's partnership at Ropes & Gray is anything but "junior," and the requested rate of $450/hour for his services—in line with the other partners on this matter—is entirely reasonable.[2]

Similarly, Mr. Vice was clearly not an "associate" as Defendants suggest.[3] He has 12 years of legal experience since his law school graduation in 1997, and, like Mr. Lowy, Mr. Vice's practice at the Brady Project was centered on litigating gun laws in an effort to prevent gun violence. *See* Lowy Decl. ¶¶ 2, 8; Sloan, *supra* note 1. This experience makes Mr. Vice's requested $400/hour rate reasonable in a case regarding a Florida law aimed solely at restricting the First Amendment rights of physicians to discuss firearm safety with their patients.

Third, Defendants' attempt to lump all associates together as "junior" associates who should be awarded rates of $225/hour to $250/hour is misguided.[4] Def. Resp. at 7. In particular, despite Defendants' contention otherwise, the number of years these associates have spent at Ropes & Gray does not always reflect each associates' level of experience. Rather, as set forth

---

[2] The absurdity of Defendants' position is emphasized by their suggestion that Mr. Hallward-Driemeier, who handled the arguments in this matter, should be awarded rates only $10/hour higher than Mr. Lucas, an attorney with 8 years of experience, yet $55/hour lower than Messrs. Manheim, Lowy, and Mullins. *See* Def. Resp. at 3.
[3] Mr. Vice no longer works for the Brady Project.
[4] Defendants' opposition labels "Mr. Long as a senior associate." Def. Resp. at 7. There is no "Mr. Long" involved in this litigation. Plaintiffs believe Defendants are referring to Mr. Lucas, who is Of Counsel at Astigarraga.

in Mr. Manheim's supporting declaration, many of the associates obtained litigation and other relevant experience prior to joining the firm. For example, Bessie Dewar—who Defendants assert should bill at only $230/hour—clerked for three different federal judges, including Associate Justice Stephen G. Breyer, prior to joining the firm as a senior associate. Manheim Decl. ¶ 10. The experience gained by clerking for a U.S. Supreme Court Justice unquestionably aided Ms. Dewar in litigating the constitutional questions at issue here. Similarly, Ms. O'Connell and Mr. Lemmon also clerked prior to joining Ropes & Gray. Manheim Decl. ¶¶ 13, 14. Given the associates' significant experience, a composite billing rate of $350/hour for each Ropes & Gray associate is reasonable here.[5] *See* Def. Resp., Ex. 1 at 2 (citing *Golf Clubs*, 2012 WL 2912709, at *4 (noting that the average associate rate in South Florida in 2011 was $303/hour, but finding a rate of $350/hour for each associate reasonable)).

Finally, the reasonableness of the requested rates is further evidenced by the fact that each partner, associate, and paralegal at Ropes & Gray already voluntarily and significantly reduced their standard hourly rates normally charged to clients. *See Global Horizons Inc. v. Del Monte Fresh Produce N.A., Inc.*, 2009 WL 855970, at *4 (S.D. Fla. Mar. 31, 2009) (granting reasonable fees of "$475 per hour (partners); (2) $185–310 (associates); and (3) $160 (paralegal work)," where the prevailing party "significantly reduced its attorney's fees" before submitting its request). Ropes & Gray's standard hourly rates range from $805/hour for Mr. Manheim to $215/hour for Ms. Suarez, a paralegal. *See* Manheim Decl. ¶ 24; *see also* Ex. I attached hereto (setting forth Plaintiffs' requested rates, Plaintiffs' actual rates, and Defendants' suggested rates).

As such, Plaintiffs requested rates are reasonable in light of the prevailing market rates.[6]

---

[5] The two associates from Astigarraga, Mr. Giuliano and Mr. Lucas, have requested rates of $230/hour and $245/hour, respectively. Inexplicably, Defendants contend that a more reasonable rate for Mr. Lucas is $260/hour.
[6] In addition, Plaintiffs submit that the requested rate of $150/hour for paralegals Antzoulatos and Suarez is reasonable. *See, e.g.*, *Global Horizons,* 2009 WL 855970, at *4 (awarding paralegal rates of $160/hour).

## II. PLAINTIFFS REQUEST A REASONABLE NUMBER OF HOURS.

This case involved a novel and complex question of statutory and Constitutional interpretation that has not been considered or resolved by any federal court, and the hours sought are entirely consistent with such a question of first impression. *See Johnson v. GA Highway Exp, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). Defendants now characterize this case as one presenting "a straightforward First Amendment claim." Def. Resp. at 1. Despite their assertion now of a "straightforward" claim, Defendants and their amici invoked numerous doctrines and defenses throughout the litigation, challenging every aspect of Plaintiffs' case, including Plaintiffs' standing to bring the lawsuit, whether the law was "hortatory" or "precatory" (a theory which shifted throughout Defendants' papers), whether the constitutional right implicated by the law was the First or Second Amendment, the scope and impact of the legislative history of the law, whether the case was ripe for review, the applicability of the professional and commercial speech doctrines, and whether the law is analogous to federal anti-discrimination laws.

Not only did the case involve complex issues, but it was hotly contested and prolonged by Defendants at every juncture. For example, after the Court granted Plaintiffs' motion for preliminary injunction, Defendants could have consented to converting it into a permanent injunction and moving ahead to appellate review. Instead, Defendants insisted on full summary judgment briefing, complete with statements of undisputed and disputed facts. Any additional hours expended on the cross-motions for summary judgment, therefore, were a result of Defendants' desire to re-litigate a so-called "straightforward" case they had already lost. As the Court's summary judgment order reflects, this additional round of briefing provided no basis to question the Court's thorough analysis in the preliminary injunction ruling. Defendants also unavailingly moved to strike Plaintiffs' supplemental brief, filed at the invitation of this Court following oral argument. This case was simply not a "straightforward" case.

The Court should also reject Defendants' primary contention that Plaintiffs overstaffed the case, which Defendants contend led to unnecessary duplication. *See* Def. Resp. at 11-14 & Exs. 4, 13. The Eleventh Circuit has made clear that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302; *Kearney v. Auto-Owners Inc. Co.*, 713 F. Supp. 2d 1369, 1378 (M.D. Fla. 2010) ("[C]ourts may award attorney's fees for conferences or meetings that allow attorneys with different strengths to collaborate."). Indeed, "[c]ommunication and coordination are essential to successful litigation." *Kearney*, 713 F. Supp. 2d at 1378.

Here, each group of attorneys added a distinct and unique view necessary to achieve the excellent results in this litigation. Specifically, Ropes & Gray is primary and lead counsel and expended the vast majority of the requested hours. As lead counsel, Ropes & Gray took the first pass at researching and drafting almost every pleading and declaration filed throughout the litigation. Astigarraga is Plaintiffs' local counsel. As this Court is aware, local counsel is necessary in order for Plaintiffs to file in and appear before this Court, and Mr. Mullins' firm was chosen as local counsel because of his substantial federal court experience, his civil and constitutional rights experience, and his firm's willingness to take on this case *pro bono*. Mr. Mullins' firm was involved in all levels of the case including strategy and assisting with the critical legislative history. Obtaining both outside counsel and local counsel is not unreasonable. *See Nukote*, 2011 WL 2837466, at *9-10 (awarding fees for counsel from two non-local firms, as well as fees for counsel from a local firm). Additionally, as discussed above, the attorneys at the

Brady Project specialize in litigating gun laws and policies like the law at issue here, resulting in their unique and distinct contribution to the case on strategy and briefing.[7]

Furthermore, each attorney was used to maximize efficiency and economy, taking the attorney's level of experience into consideration. Plaintiffs appropriately staffed the case so that cost-effective junior associates conducted the majority of research and first-level drafting, with the assistance of and review by a senior associate, and final review by the partners.[8] At each stage of review and revision, Plaintiffs' pleadings and supporting declarations were honed and sharpened to best achieve a favorable result—and Plaintiffs won in every instance. Indeed, partners billed a total of only approximately 480 hours—approximately 25% of the total number of hours billed. The remaining hours were billed by junior and senior associates, Of Counsel, or paralegals. Application of this well-established process of review and refinement is not "redundant." *See Golf Clubs*, 2012 WL 2912709, at *6 (finding no redundancy for fees sought for a single motion and reply when 40% of the time was billed by partners and 60% of the time was billed by associates).

The number of hours Plaintiffs' lawyers collectively spent at each stage of this litigation was also reasonable. In questioning the hours Plaintiffs' counsel expended on various tasks, Defendants ignore the complex legal and factual research, as well as the extensive number of declarations, required to address the issues raised in the various pleadings. For example, in order to obtain the necessary factual allegations in their 26-page Complaint, Plaintiffs' counsel needed to interview the various plaintiffs to gather the relevant facts, as well as conduct extensive research on the key legal arguments and underlying legislative history of the law. Similarly,

---

[7] That the Brady Project did not have the resources or capital to take on a *pro bono* case such as this alone, and thus brought Ropes & Gray in, does not diminish its important contribution or that its input was distinct.

[8] Although the total number of Ropes & Gray associates involved in the case may appear high, that is because, due to conflicting commitments or departures, the associate team evolved over time. Indeed, during some phases of the litigation, certain billing associates expended no, or very little, time on the litigation. *See* Pl. Mot., Ex G.

along with their motion for preliminary injunction, amended complaint, and reply in support of their motion, Plaintiffs filed fifteen Plaintiff declarations, all of which required separate (and sometimes multiple) interviews of each Plaintiff to ensure accuracy.[9] Each of Plaintiffs' briefs also required new research in order to address Defendants' ever-changing legal and factual theories. Thus, Defendants' attempt to tie the reasonableness of a task to the length of the document alone is unavailing.[10] *See* Def. Resp. at 12-13 & Ex. 20. Plaintiffs' "well-prepared fee petition . . . include[s] a summary, grouping the time entries by the nature of the activity or stage of the case," *see Am. Fed'n of State, County, & Municipal Emps. Council 79 v. Scott*, No. 11-21976-CV-UNGARO/TORRES, at 13 (S.D. Fla. Sept. 14, 2012) (Report and Recommendation on Plaintiff's Motion for Attorneys' Fees) (citation omitted),[11] and explains the aspects of the underlying tasks for the Court's consideration. *See* Pl. Mot. at 14-17. There is no duplication that would warrant a substantial reduction, if any.[12] *See Am. Fed'n*, No. 11-21976-CV, at 16-17.

Finally, Defendants' minimization of the time and labor necessary to litigate this case entirely disregards the fact that Plaintiffs prevailed on each and every aspect of their claims, at every stage in the proceeding. Ultimately, the Court permanently enjoined provisions of a law

---

[9] Plaintiffs' supplemental memorandum filed at the request of the Court also required four additional declarations in order to address the Court's concerns.

[10] Indeed, though highlighting this as an example of excessiveness, Defendants are entirely wrong in stating that it took Ms. O'Connell two hours to write an unopposed motion for enlargement of time. Def. Resp. at 20. First, Ms. O'Connell spent only 1.5 hours on the entire task, which also included correspondence with Defendants' attorney, revising the motion to address comments from both Defendants and Plaintiffs, and preparing the motion for filing. *See* Def. Resp. Ex. 20 (O'Connell, 10/25/2011 entries totaling 1.5 hours).

[11] Attached as Exhibit 2 to Defendants' Response.

[12] Furthermore, while Defendants claim that Plaintiffs' "fee request should have never come to this court in its present shape," Def. Resp. at 14, Defendants' calculations and assertions throughout their opposition are inaccurate. For example, they conclude that Plaintiffs' counsel spent 423.3 hours on "emails, calls, meetings, and conferences," but their own exhibit illustrates the inaccuracy of this number; Defendants impermissibly include many non-internal communications within their calculation. *See, e.g.*, Def. Resp., Ex. 4 at 1 (Lowy, 5/11/2011 and Goetz, 5/13/2011), 3 (Ripa, 5/20/2011), 6 (Lowy, 5/31/2011, Dewar, 5/31/2011), 8 (Goetz, 6/6/2011, Manheim 6/6/2011), 11 (Lewis, 6/11/2011), 18 (Manheim, 6/27/2011)). This list is by no means exhaustive. Similarly, Defendants' examples of "days attorneys billed a significant portion of the day just in communications with other members" of the team are inaccurate. *See, e.g.,* Def. Resp. at 12 & Ex. 4 at 17 (misrepresenting the request as seeking 2 hours of conferences for Manheim on 6/23/2011 rather than 1.25, as actually requested, and 2.7 hours for Manheim on 6/27/2011 instead of only 0.5 hours for "conferences" on that date); *see also supra* note 9.

that would have prevented physicians from inquiring about the presence of firearms in the home in an effort to prevent injury and death by firearms—the leading cause of death among children, adolescents, and young adults. "If the result was excellent, then the court should compensate for all hours reasonably expended." *Norman*, 836 F.2d at 1302; *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("The result is what matters.")

### III. DEFENDANTS' SPECIFIC OBJECTIONS TO TASKS AND TIME ARE WITHOUT MERIT.

Defendants' objections to specific tasks and time are without merit. Plaintiffs' counsel use block-billing minimally and appropriately, provide adequate details, and do not bill for unnecessary tasks.[13] *See* Def. Resp. at 15-19 & Exs. 15-17.

**Block Billing.** Plaintiffs' counsel did not engage in "block-billing" such that a reduction is warranted. "Courts confronted with significant block billing take that into account to order across-the-board deductions." *Am. Fed'n*, No. 11-21976-CV, at 15. However, despite Defendants' erroneous contention that "more than half the billed time is block billed," Def. Resp. at 16, the 73.5 hours Defendants identified as "block-billing" amount to only 4% percent of the total hours claimed.[14] This is not "significant." *Am. Fed'n*, No. 11-21976-CV, at 15. Moreover, Plaintiffs submit that "there is enough specificity in the time entries that the Court can usually discern the reasonableness of most of the work performed," *id.*, and therefore a review of the entries is not "unnecessarily difficult." *Kearney*, 713 F. Supp. 2d at 1377-78. If the Court can "assess the time claimed for each activity," a reduction is not necessary. *See Norman*, 836 F.2d at 1303.

---

[13] Plaintiffs also disagree that each of the entries Defendants identified as "clerical" or "overhead" are in fact clerical or "overhead." Def. Resp. at 19-20 & Exs. 19, 20. For example, researching service issues, cite-checking and bluebooking, revising briefs and declarations, and conducting case law research are all "work traditionally done by an attorney" and are thus compensable. *Nukote*, 2011 WL 2837466, at *10-11.

[14] Plaintiffs contest that many of the entries identified as "block" entries are in fact "block-billing," as they relate to the same subject matter and task. *See, e.g.*, Def. Resp. Ex. 15, at 1 (Ripa, 5/18/2011, Antzoulatos, 5/27/2011, and Vice, 6/29/2011), 2 (Vice, 7/1/2011, Lewis, 7/14/11).

**Insufficient Detail.** Plaintiffs' entries are also sufficiently detailed. As the U.S. Supreme Court has made clear, Plaintiffs' counsel need only "identify the general subject matter of his time expenditures," and are "not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Defendants claim that certain of Plaintiffs' time entries are not sufficiently detailed is based primarily on their contention that Plaintiffs' counsel must identify the plaintiff, client, or declarant *by name* each time the attorney reviewed a declaration or interviewed a plaintiff. *See, e.g.*, Def. Resp., Ex. 16, at 7 (claiming that Ms. Dewar should have identified each declarant in her 7/19/2011 entry for emails regarding "additional edits to declarations").[15] Defendants offer no explanation why the particular identity of the declarant is necessary for the Court to determine the reasonableness of the time expended, and Plaintiffs submit that Defendants' proclaimed level of detail is indeed unnecessary.

**Unnecessary Time/Tasks.** Contrary to Defendants' objections, the time Plaintiffs' counsel spent researching issues or otherwise engaging in activities that were not ultimately a part of the litigation was not "unnecessary to the litigation." *See* Def. Resp. at 19, Ex. 17 (asserting lack of necessity for researching state law claims, engaging in fact development, researching HIPAA restrictions, etc.). Even where, for example, research into a subject matter reveals that such a theory or fact is not compelling and thus should not be included in Plaintiffs' litigation strategy, the research is not for that reason "unnecessary." Exploring potential legal and factual theories is part of an attorney's job in advocating on behalf of the client, and would be "properly billed" to all clients. *Hensley*, 461 U.S. at 436; *see also Nukote*, 2011 WL 2837466, at *6 (allowing fee award for time spent drafting a motion that was never filed).

---

[15] Defendants also contend that descriptions such as "follow-up", "focus" or "worked with" is not sufficient to identify the task, though these same entries clearly set forth the "general subject matter" of what was being followed-up on, worked on, or focused on. *See, e.g.*, Def. Resp., Ex. 16, at 9-10.

## IV. PLAINTIFFS ARE ENTITLED TO THE REQUESTED COSTS AND EXPENSES.

Plaintiffs are also entitled to recover the $284.67 in postage and courier costs their counsel incurred in litigating this matter under the law of this district. For example, in *Managed Care Solutions v. Essent Healthcare, Inc.*, the Court awarded $10,387.15 in postage and $1,802.36 in courier services. No. 09-60351-CIV, 2011 WL 2535258, at *11-12 (S.D. Fla. June 27, 2011). The "majority of [the postage] charges were incurred by using commercial shipping compan[ies] such as Federal Express and UPS," and, like here, were mostly between Plaintiffs' lead counsel, Plaintiffs' local counsel, and Plaintiffs themselves. *Id.* at *11; *see also* Pl. Mot., Ex. H. Likewise, as in *Managed Care*, the reasonable courier costs here were incurred in delivering documents to the court. *Id.*; *see also* Pl. Mot., Ex. H. In light of *Managed Care*, therefore, Defendants' single citation to a case from the District of Connecticut in 2003 for the proposition that Plaintiffs cannot recover their costs is simply unavailing. *See* Def. Resp. at 21 (citing *Cartier Int'l B.V. v. Gorski*, 3:01-CV-01948-PCD, 2003 WL 25739624, at *4 (D. Conn. Apr. 30, 2003)). Plaintiffs' requested costs are reasonable and recoverable under the law.

## CONCLUSION

As the prevailing party and based on the foregoing, Plaintiffs respectfully request that this Court award attorneys' fees in the amount of $686,299.00 and costs and expenses in the amount of $284.67, as set forth above and in the Verified Motion to Recover Attorneys' Fees and Costs.

CASE NO.: 1:11-CV-22026-COOKE/TURNOFF

Dated: February 7, 2013  Respectfully submitted,

Bruce S. Manheim, Jr.*
Bruce.manheim@ropesgray.com
Douglas H. Hallward-Driemeier*
Douglas.hallward@ropesgray.com
Ropes & Gray LLP
700 12th Street NW, Suite 900
Washington D.C. 20005

*/s/ Edward M. Mullins*
Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131-2847

Jonathan E. Lowy*
jlowy@bradymail.org
Brady Center To Prevent Gun Violence
1225 Eye Street NW, Suite 1100
Washington, DC 20005
Tel.: (202) 289-7319 / Fax: (202) 898-0059

*Admitted pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2013, the foregoing document and its attachment were served via ECF to counsel for Defendants, Jason Vail, Assistant Attorney General, Office of the Attorney General, PL-01, The Capitol, Tallahassee, Florida 32399-1050, Jay.vail@myfloridalegal.com.

By: */s/ Edward M. Mullins*
Edward M. Mullins